UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF MONTANA

| | | |
|---|---|---|
| INCREDIBLE AUTO SALES, LLC, | ) | Bankruptcy No.06-60855-RBK |
| | ) | |
| Debtor. | ) | |
| | ) | |

## ORDER ALLOWING USE OF CASH COLLATERAL

This matter comes before the Court on cross-motions filed by the parties. The Debtor, Incredible Auto Sales LLC, has filed an "Emergency Motion as to Use Cash Collateral Pursuant to 11 U.S.C. § 363 of the Bankruptcy Code and as to Offer of Adequate Protection to Hyundai Motor Finance Company." Objections to Debtor's Motion were filed by Hyundai Motor Finance Company ("HMFC"), Manheim Services Corporation, dba South Seattle Auto Auction, Auto Auction Associates of Montana, Inc., and Steve's Auto Sales, Inc. HMFC has filed an "Emergency Motion to Prohibit or Condition Use, Sale or Lease of Inventory and/or Cash Collateral." Objections to HMFC's Motion were filed by Debtor and Auto Auction Associates of Montana, Inc. On November 6-7, the Court held a hearing and took testimony on these Motions. During the hearing, the parties agreed to the basic terms and conditions under which the Debtor would be permitted to use cash collateral for a 45-day period.

By Order dated November 7, 2006, the Court ordered that the parties reduce their stipulation to a written agreement to be filed with the Court no later than Monday, November 13, 2006. The Court further ordered that the Debtor be permitted to "use up to $35,000.00 to pay its payroll obligations and $6,000.00 to pay its present insurance obligations." Until such time as



the Court enters an Order approving the parties' Stipulation or otherwise permitting use of cash collateral, this Court's Order dated November 1, 2006, remains in effect. The November 1 Order requires, among other relief, that "Debtor shall, until further order of this Court, deposit the proceeds of the sales of all inventory of new and used motor vehicles and parts in trust accounts established at Stockman Bank."

Despite their agreement to terms during the November 7 hearing, the parties have been unable to reach agreement on a written stipulation for implementing those terms. HMFC has filed a proposed Order implementing the agreed upon terms together with a motion.

## BACKGROUND

A. On the 17th day of October, 2006 (the "Date of Bankruptcy"), Debtor filed a Voluntary Petition for Relief under Chapter 11 of Title 11 of the United States Bankruptcy Code, and has operated its automobile dealership business as a debtor-in-possession during the pendency of the above-captioned bankruptcy case (this "Case").

B. HMFC claims a debt of approximately $2,275,375.82 as of the Date of Bankruptcy, including a principal balance of $2,243,608.81 and accrued interest of $31,767.01 (the "Indebtedness"). HMFC claims that the Indebtedness continues to accrue post-petition interest at the rates set forth in the Addendum (defined below).

C. HMFC's claim is evidenced by, *inter alia*, the following instruments, copies of which have been provided to counsel for the Debtor:

| Date | Instrument |
| --- | --- |
| July 27, 2005 | Inventory Loan and Security Agreement (the "Loan Agreement") |
| July 27, 2005 | Interest Rate and Charges Addendum (the "Addendum") |
| July 26, 2005 | Financing Statement No. 83548795 |

        August 25, 2005        Financing Statement No. 83946575

        October 6, 2006        Financing Statement No. 89380937

Each of these documents was admitted at the November 6 hearing by stipulation as HMFC's Exhibits 1-5.

    D.    Debtor acknowledges, and argued at the hearing, that HMFC has a valid and perfected security interest in all inventory, equipment, fixtures, accounts and general intangibles of the Debtor pursuant to the Loan Agreement. HMFC's security interests include, but are not limited to, (i) all inventory of new and used motor vehicles, whether or not financed by HMFC, and parts (collectively, the "Inventory") as of the Date of Bankruptcy, as well as all proceeds of the sales of such collateral, (ii) Debtor's interests created by virtue of the franchise agreement with Kia Motors America, Inc. ("KMA"), a subsidiary of Kia Motors Corporation (the "Franchise"), and (iii) amounts due Debtor from United Car Care, Inc. under the Dealer Agreement dated January 24, 2001, as amended (the "Dealer Agreement").

    E.    The Debtor's post-petition sale of Inventory in the ordinary course of its business and/or use of the proceeds of such Inventory will diminish the value of the Inventory and proceeds and, therefore, diminish the value of HMFC's security interest in the property of the Debtor's estate during the pendency of this Case.

    F.    Sales of Inventory since the Date of Bankruptcy have generated proceeds totaling $170,267.05, now held in the Trust Accounts as that term and related terms are defined in Exhibit A to this Order.

## ORDER

NOW, THEREFORE, the Court orders that Debtor may use cash collateral on the following terms:

1. Use of Cash Collateral; Termination Date. Debtor may use the proceeds generated in the ordinary course of its business from the sale of Inventory, through and including December 21, 2006 (the "Termination Date"), only for the following purposes:

(a) To purchase new and used motor vehicle and parts inventory ("Replacements") to replace Inventory sold in the ordinary course of Debtor's business but only as permitted under the terms and conditions of this Order; and

(b) To pay the expenses of operating Debtor's business, including the payment of existing liens on vehicles taken in trade in connection with the sale of vehicle Inventory and Replacements ("Trade-ins"), and such other expenses as may arise in the ordinary course of its business but only as set forth in the budget (the "Budget"), which Debtor shall file with the Court within five (5) days of this Order.

2. Trust Accounts. Debtor shall deposit all proceeds of the sales of Inventory into Trust Accounts A, B and C, and all proceeds of accounts receivable into Trust Account D in accordance with the Procedure for Debtor's Use of Cash Collateral (the "Procedure") attached hereto as Exhibit A and incorporated herein by this reference. Proceeds deposited into the Trust Accounts shall be transferred to the debtor-in-possession account established in accordance with the requirements of the Office of U.S. Trustee (the "DIP Account") and disbursed from the DIP Account only as provided in the Budget and permitted by the Procedure.

3. Post-Petition Security Interest. HMFC has and shall continue to have a security interest in all inventory, equipment, fixtures, accounts and general intangibles and the proceeds thereof, acquired by Debtor during the pendency of this Case, including, without limitation, all Inventory, all Replacements, all Trade-ins, the Dealer Agreement, the proceeds of sale of Debtor's interest in the Franchise, and Trust Accounts A, B, C and D, which security interest

shall be effective from and after the Date of Bankruptcy. The security interest granted herein shall be identical to and shall enjoy the same priority as that security interest granted to HMFC under the terms of the Loan Agreement and shall be evidenced by this Order and the Loan Agreement; provided, that the Debtor shall execute and HMFC may file such motions, notices, additional security agreements, control agreements and financing statements as HMFC deems necessary to fully comply with 11 U.S.C. § 552(b) and Mont. Code Ann. § 30-9-101, *et seq.*, during the pendency of this Case.

    4.    Adequate Protection Payment. Debtor shall immediately pay to HMFC the full sum of approximately $99,000 in the following manner:

    (a)    Setoff of the net proceeds of the sale of the 2006 Kia Optima to James Martens in the amount of $23,551.14;

    (b)    Collection of all amounts due the Debtor from KMA, which are believed to be in an approximate amount of $49,000; and

    (c)    $27,000 cash payment from Trust Account A.

    5.    Insurance. Debtor shall immediately provide to HMFC proof of insurance for all risks as provided in paragraph 7 of the Loan Agreement. The Debtor shall maintain such coverage throughout the pendency of this Case.

    6.    Information; Inspections. Debtor shall provide to HMFC each of the following items of information and reports during the pendency of this Case:

    (a)    When HMFC deems it necessary, in its sole discretion and without prior notice, Debtor shall provide access to Debtor's places of business in Billings, Montana, at any time during normal business hours during the pendency of this Case, (i) for physical inventories of HMFC's collateral and (ii) for review of all "deal jackets", sources and

amounts of funding and other information as permitted by the Loan Agreement. Nothing herein shall obligate HMFC to conduct any inspection and/or audit of such inventory and/or documents.

(b)  Debtor shall provide HMFC daily by electronic mail with records of its sales, bank deposits and cash payments and with such additional records as may be reasonably requested by HMFC in writing, or orally, whether in person or by telephone.

(c)  Debtor shall provide HMFC, during the pendency of this Case, with copies of all financial reports and/or statements required to be filed with the Court or served on any creditor, including but not limited to, all income and expense or profit and loss statements, all balance sheets, all statements of changes in inventory, all listings and/or aging of account receivable and/or accounts payable, including, without limitation, any prior liens and amounts owed on sold vehicles or Trade-ins, and all statements relating to employee compensation and/or payroll taxes paid or held.

(d)  Debtor shall promptly upon receipt provide to HMFC copies of all offers to purchase the Debtor or Debtor's assets outside the ordinary course of business.

(e)  HMFC shall have the right to inspect, as it deems necessary and upon reasonable notice to Debtor, all of Debtor's accounting records to verify the accuracy of Debtor's accounting information and practices, and not to harass or confound Debtor.

(f)  Debtor shall immediately provide to HMFC information on all unpaid liens on Trade-ins, including the names of the buyers and lienholders and the amounts of the unpaid liens.

7.  Management. Ken C. Cornelison ("Manager") shall serve as general manager of the Debtor. Manager and Zsaneece L. Gutierrez shall be the only persons authorized to sign

checks on behalf of the Debtor during the pendency of this Case. R. Nick Gutierrez shall not participate in the management of the Debtor during the pendency of this Case except with regard to assessment of offers to purchase the Debtor or its assets outside the ordinary course of business.

8. Transfer of Title. Certificates of title and MSOs for all vehicle Inventory, including Trade-ins, Replacements, shall be delivered to and held in trust by Debtor's local counsel, Clarke B. Rice ("Local Counsel"). Debtor shall provide HMFC with such information regarding each proposed sale of vehicle Inventory, Trade-ins and Replacements as HMFC may require, including, without limitation, a completed deal sheet in form acceptable to HMFC and evidence that the purchase price has been actually received and has been deposited in good funds in the Trust Account designated for receipt of such proceeds in the Procedure. Such information shall be transmitted by facsimile or electronic mail to Mr. Dale Ueno at (714) 965-7012 or dueno@hmausa.com or, in his absence, Mr. Caleb Cottam at (714) 965-3374 or ccottam@hmausa.com. Alternatively, such documents may be hand-delivered to Mr. Ueno or Mr. Cottam. Local Counsel is authorized to release titles or MSOs in connection with proposed sales only upon HMFC's written approval thereof which HMFC shall use its best efforts to transmit to the Manager by facsimile or electronic mail within four (4) business hours of receipt of Debtor's request.

9. Termination. This Order shall terminate at the close of business on the Termination Date unless specifically extended by a subsequent Order or agreement of the parties approved by the Court. Nothing herein shall prevent any party from seeking an emergency order of this Court amending, modifying or vacating, in whole or in part, the terms of this Order.

10. Adversary Proceedings. The vehicles claimed by Auto Auction Associates of Montana, Inc., Manheim Services, Inc., dba South Seattle Auto Auction, and Steve's Auto Sales, Inc., will continue to be segregated from the Debtor's remaining inventory and not subject to sale, transfer or encumbrance in the absence of a settlement agreement between the parties or an order of the Court issued in the appropriate adversary proceeding. Nothing herein shall be deemed to vary the terms of the stipulations entered into by Debtor and/or HMFC with Auto Auction Associates of Montana, Inc. and Manheim Services Corporation, dba South Seattle Auto Auction in Adversary Proceedings Nos. 06-0019 and 06-0020, respectively, or deemed an admission by any party in any proceeding under 11 U.S.C. § 546(c).

DATED this _____ day of November, 2006

BY THE COURT

_____
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

## **EXHIBIT A**

**Procedure for Debtor's Use of Cash Collateral**

I.

STEP 1

The Debtor has established and shall maintain the following labeled "Trust Accounts" at Stockman Bank, 800 Main Street, Billings, MT 59105, into which all proceeds of Inventory secured by HMFC have been and are being deposited since filing:

| Name | Account # | Purpose |
|---|---|---|
| Trust Account A | _____ | Proceeds of sales of all new car inventory. |
| Trust Account B | _____ | Proceeds of sales of all used car inventory. |
| Trust Account C | _____ | Proceeds of sales of all service sales and/or repair or parts sales. |
| Trust Account D | _____ | Proceeds of receivable collections of all kinds. |
| Trust Account E | _____ | Proceeds of all Taxes collected by Debtor. |

Into these Trust Accounts have been or will be placed all cash collateral and all proceeds from the sale of HMFC's collateral by the specific category.

II.

STEP 2

The Debtor, acting solely through the Manager, will bi-weekly transfer to its DIP Account the "profit" on the sales of vehicles inventory deposited in the Trust Accounts A and B. "Profit" shall be defined as the difference between the total of the cash and loan proceeds and the net sales price proceeds received for each vehicle less the amount advanced by HMFC to purchase the subject vehicle (the "Advance Amount") or, in the case of Replacements and Trade-ins, the amount paid for such vehicle by the Debtor or the trade-in allowance for such vehicle,

respectively. The Advance Amount and all other amounts received from the sale of Replacements and Trade-ins shall remain in the applicable Trust Account and may be used solely to purchase Replacements, whether new vehicles or used. All used vehicle Replacements shall conform to HMFC requirements for used vehicle collateral, including without limitation vehicle age and mileage limits. In addition, Debtor shall provide HMFC with such documentation on all Replacements as HMFC may request, including, for used vehicles, all documents required by the Procedure for Tracking Used Replacement Vehicles attached hereto as Exhibit B and incorporated herein by this reference.

III.

STEP 3

All sales from parts and service shall be deposited daily in Trust Account C. Profit on vehicle service performed by Debtor will be deposited in the DIP Account. "Profit" on service will be determined by deducting the cost of parts purchased from Inventory from the sales price received by the Debtor. The recovery of all labor charges is included within the definition of "profit".

The remainder, which represents the cost of Inventory used for service and parts sales shall remain in Trust Account C.

IV.

STEP 4

Proceeds of all receivable collections, whether they be warranty receivables incentives, hold-backs and/or otherwise, whether pre-petition or post-petition will be deposited into Trust Account D. These shall be periodically transferred to the DIP Account for use in paying normal and necessary expenses.

2

V.

## STEP 5

Post-petition taxes shall be paid from Trust Account E when due.

## **EXHIBIT B**

### Procedure For Tracking Replacement Vehicles

Debtor shall promptly furnish to HMFC the documents shown below for each Replacement.

I. Verification from Sources of the Purchase of Vehicles

    A. Auction Vehicles

        1) Provide a copy of the auction slip showing the sales price paid, VIN, and the description of the vehicle and features, including the make, model, year, and mileage.

        2) Provide a Kelly bookout sheet for value.

        3) Documentation of disbursement (check and bank record)

    B. Wholesaler purchases

        1) Provide a copy of the wholesaler slip showing the sales price paid, VIN and the description of vehicle and features, including the make, model, year, and mileage.

        2) Provide a Kelly bookout sheet for value.

        3) Documentation of disbursement (check and bank record)

    C. Trade In purchases

        1) Provide a copy of the Bill of Sale showing the VIN and trade-in allowance.

        2) Provide an appraisal sheet with the description of vehicle and features, including the make, model, year, and mileage.

        3) Provide a Kelly bookout sheet for value.

        4) Verification of lien release, including copy of check and signed release of lienholder

II. Spreadsheet Accounting Procedure

    A. Provide an inventory of List B vehicles on a spreadsheet formatted as HMFC's flooring inventory sheet.

    B. Note on spreadsheet

        1) Date of Sale and Customer Information for sold vehicles.

        2) Add replacement vehicle information on spreadsheet with the same formatted information.

III. Copies of motor vehicle titles faxed to Hyundai on same day of receipt of title by Local Counsel.

3631665_1.DOC