William L. Needler
William L. Needler and Associates
555 Skokie Blvd. Suite 500
Northbrook, IL 60062
(847) 559-8330 ph
(847) 559-8331 fax
Bar ID 02025248
Email: WilliamLNeedler@aol.com

Attorney for the Debtor
    Incredible Auto Sales, LLC

Clarke B. Rice
Clarke B. Rice, P.C.
2951 King Avenue West
Billings, Montana 59102
(406) 254-2500 office
(406) 294-2525 fax
Montana ID #1289
Email: clarkerice@imt.net

Co-Counsel for the Debtor
    Incredible Auto Sales, L.L.C.

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| IN RE: | ) |
| | ) |
| INCREDIBLE AUTO SALES, L.L.C. | ) Case No.: 06-60855-RBK |
| | ) |
| | ) Judge Ralph B. Kirscher |
| | ) |
| Debtor | ) A Chapter 11 Proceedings |
| | ) For Reorganization |
| | ) |

## STIPULATION AS TO THE USE OF COLLATERAL UNDER 11 U.S.C. SECTION 363 AND ADEQUATE PROTECTION UNDER 11 U.S.C. SECTION 361 OF THE BANKRUPTCY CODE  (Revised 11/15/06)

The parties to this matter and the hearings as to use of cash collateral before this Court in hearings on November 6 and November 7, 2006 were as follows:

1. The Debtor, Incredible Auto Sales, L.L.C.

2. Hyundai Motor Finance Company

3. Auto Auction Associates of Montana, Inc. d/b/a Auto Auction of Montana

4. Manheim Services Corporation d/b/a South Seattle Auto Auction.

5. Steve's Auto Sales, Inc.

These parties having appeared in Court and each party have appeared and consulted to the terms specifically, and the Court having approved the use of cash collateral on the following terms:

1. That the Debtor shall be granted authority to use cash collateral in substantial conformance with budgeted expenses for the months of November and December 2006 as set forth in the Proforma and Budget, Debtor's Exhibit 4, page 7 attached. These are specifically $166,194 for November and $170,493 for December 2006.

2. That the Cash Collateral Stipulation and Order as revised shall have an expiration or duration for a period of 45 days from this date November 6, 2007 to

December 21, 2006 unless specifically continued either by agreement of the parties or by further Court order.

3.  That since the Debtor's Proforma and Budget did not have any budgeted items for the 14 days in the month of October 2006 and this Chapter 11 case was filed on October 17, 2006 the Debtor may budget for November 2006 and December 2006 for the time period October 17, 2006 to December 21, 2006 in such amounts as are in substantial conformance with the Proformas.

4.  That unless consent is granted by the parties and/or a future order of the Court is issued the use of cash collateral will automatically cease on December 21, 2006, unless renewed at that time, if no consent is reached, the Debtor may re-notice a request for an additional Emergency Hearing on an expedited basis.

5.  That the deposit of funds in the established trust accounts A, B, C, D and E shall continue as described previously in the hearings, the exhibits and the pleadings filed with the Court.

6.  That Debtor's profit as shall be transferred from Trust Accounts A, B, C, or back to Debtor-in-Possession Account –two times per week.  Factory receivables shall reimburse Account A or Account C when received.  Profit shall be defined as the difference between the total sales proceeds (cash, loan and/or trade-in) received for each vehicle transaction less the particular October 17, 2006 inventory valuation

and any additional cost associated with the sale of the vehicle.  Moneys received by the Debtor from Dealer incentives, co-ops and other receivables shall be deposited in the D.I.P. Account.

      7.      That Hyundai Motor Finance (hereinafter "Hyundai") shall be paid as soon as this Stipulation is executed and approved by the Court the sum of $99,000.00 to apply to the claims of $2,163,000.00 thus reducing its claim to $2,064,000.00 from the following sources:

      A.      The monies held by KIA Motors America for receivables up to September 30, 2006 which are alleged to be $49,000.00 shall be paid to Hyundai. (If these pre-petition receivables prove to be in excess of this amount, for this period up to September 30, 2006, any excess shall also be paid to Hyundai. Receivables due after September 30, 2006 shall be collected by the Debtor and deposited into the Debtor-in-Possession Account ;)

      B.      Funds held by Hyundai as of the filing date from the Debtor's pre-petition consumer funding (Martens) in the amount of $23,551.00 shall be applied to the debt by Hyundai, as part of this $99,000 amount.

      C.      After the removal of the Debtor's profit from Trust Account A on November 5, 2006 estimated at $10,000.00, the remainder sum shall be paid over and transferred to the Debtor-in-Possession Account and the balance treated as follows:

          1)      $23,000.00 to pay off additional lien on Martens transaction and

          2)      the remainder of Trust Account A at estimated at $62,000.00 less $10,000.00 as stated above and $23,000.00 in paragraph (1) above will be paid to Hyundai, or $27,000.00 for a total of $99,000.00.

      8.      Additionally as ordered by the Court, the approximate estimated amount of $10,000.00 profit in Trust Account B shall be removed and transferred to the Debtor-in-Possession Account to fund the previously approved November 5, 2006 payroll estimated at $35,000.00 and the insurance estimated at $6,000.00. These payroll reimbursement amounts shall be included in the November 2006 and December 2006 budgeted amounts and are not in addition to the budgeted amounts.

      9.      After the above transactions are completed, Trust Account A and Trust Account B shall continue to be operated to purchase replacement inventory as previously described in the Hearings, the Exhibits and Pleadings filed with the Court.

10. Post-Petition Security Interest, Hyundai has and shall continue to have a security interest in all inventory, equipment, fixtures, accounts and general intangibles and the proceeds thereof, acquired by Debtor during the pendency of this Case, including, without limitation, all Inventory, all Replacements, all Trade-ins, the Dealer Agreement, the proceeds of sale of Debtor's interest in the Franchise, and Trust Accounts A, B, C and D, which security interest shall be effective from and after the date of Bankruptcy. The security interest granted herein shall be identical to and shall enjoy the same priority as that security interest granted to Hyundai under the terms of the Loan Agreement and shall be evidenced by this Order and the Loan Agreement; provided, that the Debtor shall execute and Hyundai may file such motions, notices, additional security agreements, control agreements and financing statements as Hyundai deems necessary to fully comply with 11 U.S.C. section 552(b) and Mont. Code Ann. Section 30-9-11, *et seq.,* during the pendency of this Case.

11. Additionally, the Profits as previously defined in paragraph (6) above shall continue to be transferred and deposited as previously outlined.

12. All Trust Accounts shall have the signatories only of Kenneth C. Cornelison and Zsaneece Gutierrez who shall also sign all Debtor-in-Possession checks for the Debtor-in-Possession approved expenses.

13. Transfer of Title, certificates of title and MSOs for all vehicle Inventory, including Trade-ins, Replacements, shall be delivered to and held in trust by Debtor's Local Counsel, Clarke B. Rice ("Local Counsel"). Debtor shall provide Hyundai with such information regarding each proposed sale of vehicle Inventory, Trade-ins and Replacements as may require, including, without limitation, a completed deal sheet in form filed with the Court and Hyundai and evidence that the purchase price has been actually received and has been deposited in good funds in the Trust Account designed for receipt of such proceeds as set forth in the Procedure sheet as attached. Such information shall be transmitted by facsimile or electronic mail to Mr. Dale Ueno at (714) 965-7012 or dueno@hmausa.com4 or, in his absence, Mr. Caleb Cottam at (714) 965-3374 or ccottam@hmausa.com. Alternatively, such documents may be hand-delivered to Mr. Ueno or Mr. Cottam. Local Counsel is authorized to release titles or MSOs in connection wit proposed sales only upon Hyundai's written approval thereof which Hyundai shall use its best efforts to transmit to the Manager by facsimile or electronic mail within four (4) business hours of receipt of Debtor's request.

14. Debtor shall provide Hyundai each of the following items of information and reports during the pendency of this Case.

    A. When Hyundai deems it necessary, in its sole discretion and without prior notice, Debtor shall provide access to Debtor's places of business in billings, Montana, at any time during

        normal business hours during the pendency of this Case, (i) for physical inventories of Hyundai's collateral, and (ii) for review of all "deal jackets", sources, amounts of funding and other information as permitted by the Loan Agreement. Nothing herein shall obligate Hyundai to conduct any inspection and/or audit of such inventory and/or documents.

B.     Debtor shall provide Hyundai daily by electronic mail with records of its sales, bank deposits slips and cash payments and with such additional records as may be reasonably requested by Hyundai in writing, or orally, whether in person or by telephone.

C.     Debtor shall provide Hyundai, during the pendency of this Case, with copies of all financial reports and/or statements required to be filed with the Court or served on any creditor, including but not limited to, all income and expense or profit and loss statements, all balance sheets, updated monthly inventories, all listings of account receivable and/or accounts payable as listed on page (1) of the Debtor's Financial Statement, including, without limitation, any prior liens and amounts owed on sold vehicles or Trade-ins, and all statements relating to employee

    compensation and/or payroll, taxes paid or held as listed on page (2) of the Debtor's Financial Statement.

  D. Debtor shall promptly upon receipt provide to Hyundai copies of all bonafide offers to purchase the Debtor or Debtor's assets outside the ordinary course of business.

  E. Hyundai shall have the right to inspect, as it deems necessary and upon reasonable notice to Debtor and with the capability of the Debtor's personnel, all of Debtor's accounting records to verify the accuracy of Debtor's accounting information and practices, and not to harass or confound Debtor.

  F. Debtor shall immediately provide to Hyundai information on all per petition and post petition and unpaid liens on Trade-ins, as of November 6 and November 7, 2006 including the names of the buyers and lien holders and the amounts of the unpaid liens.

15. Ken C. Cornelison ("Manager") shall serve as general manager of the Debtor. Manager and Zsaneece L. Gutierrez shall be the only persons authorized to sign checks on behalf of the Debtor during the pendency of this Case. R. Nick Gutierrez shall not participate in the management of the Debtor during the

pendency of this Case except with regard to assessment of offers to purchase the Debtor or its assets outside the ordinary course of business.  This includes the right to accept or reject such purchase offers.  This provision shall not prevent the continued payment of Nick Gutierrez's salary and/or benefits.

16. Additionally, Hyundai shall have reasonable access to the deal jackets and to be able to do flooring checks on a reasonable basis.

17 . Every month approximately on the 15th day, a printed recap of the monthly expenses for that previous period shall also be forwarded to Hyundai and to the auction creditors.

18. The auction cars which are on List B (some 24 vehicles) shall continue to be held segregated and not sold, transferred or further encumbered as provided for in the prior stipulations subject to a separate agreement of the parties hereto or sale as ordered by the Court in the appropriate adversary proceeding. The replacement lien or additional rights granted to Hyundai under this stipulation or any cash collateral order shall not apply to the auction cars.

19. The Court shall set a hearing date for cash collateral status or continued hearing for a December date closely before December 21, 2006 so that approved cash payments are not unduly interrupted.

APPROVED by the parties this __ day of November, 2006.

| | |
|---|---|
| WILLIAM L. NEEDLER and ASSOCIATES | HOLLAND & HART, LLP |
| By: /s/ William L. Needler<br>WILLIAM L. NEEDLER<br>Attorney for Debtor | By: _____<br>SHANE COLEMAN<br><br>Attorney for Hyundai Motor Finance Company |
| CLARKE B. RICE, P.C. | |
| By: /s/ Clarke B. Rice<br>CLARKE B. RICE<br>Co-Counsel for Debtor<br>(406) 254-2500 phone<br>(406) 294-2524 fax | |
| MURPHY, KIRKPATRICK & FAIN, P.L.L.P. | PATTEN, PETERMAN, BEKKEDAHL & GREEN, P.L.L.P |
| By: /s/ Bruce F. Faim<br>BRUCE F. FAIN<br>Attorney for Auto Auction Associates Sales, of Montana, Inc.<br>(406) 256-9700 phone<br>(406) 256-9755 fax | By: /s/ James A. Patten<br>JAMES A. PATTEN<br>Attorney for Steve's Auto Inc.<br>(406) 252-8500 phone<br>(406) 294-9500 fax |
| LOVELL LAW FIRM, P.C. | |
| By: /s/ Christopher P. Birkle<br>CHRISTOPHER P. BIRKLE<br>Attorney for Manheim Services Corporation d/b/a South Seattle Auto Auction<br>(406) 256-9300 phone<br>(406) 256-9301 fax | |