UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>    **INCREDIBLE AUTO SALES, LLC,**<br><br>    Debtor. | Case No. **06-60855-11** |

ORDER ALLOWING
USE OF CASH COLLATERAL
THROUGH DECEMBER 21, 2006

At Butte in said District this 8th day of December, 2006.

In this Chapter 11 bankruptcy, a hearing was held in Billings on November 6, 2006, and November 7, 2006, on Debtor's "Emergency Motion as to Use Cash Collateral Pursuant to 11 U.S.C. Section 363 of the Bankruptcy Code and as to Offer of Adequate Protection to Hyundai Motor Finance Company" (filed at Docket No. 17 and hereinafter referred to as "Debtor's Cash Collateral Motion"), together with the objections thereto by Manheim Services Corporation, Auto Auction of Montana, Hyundai Motor Finance Company ("Hyundai") and Steve's Auto Sales, Inc.; and on Hyundai's "Emergency Motion to Prohibit or Condition Use, Sale or Lease of Inventory and/or Cash Collateral" (filed at Docket No. 18 and hereinafter referred to as "Hyundai's Cash Collateral Motion"), together with the objections thereto filed by Debtor and Auto Auction of Montana. Debtor was represented at the hearing by attorneys William L. Needler of Northbrook, Illinois and Clarke B. Rice of Billings, Montana. Additionally, Hyundai was represented by attorney Shane Coleman of Billings, Montana; Manheim Services

1

Corporation, d/b/a South Seattle Auto Auction was represented by attorney Christopher Birkle of Billings, Montana; Auto Auction of Montana was represented by attorney Bruce F. Fain of Billings, Montana; and Steve's Auto Sales, Inc. was represented by attorney James A. Patten of Billings, Montana.

The Court heard testimony from Nick Gutierrez, William J. O'Connor II, and Dale Ueno. Debtor's Exhibits 1, 2, 3, 4, 5, 6, page 3 only of Exhibit 7, and Exhibit 8, along with Hyundai's Exhibits 1 through 6 were admitted into evidence. At the conclusion of the hearing, the parties agreed to enter into a stipulation providing for Debtor's use of cash collateral for a period of 45 days. The attorneys for the parties and the parties or their representatives attending the hearing verbally stated on the record their consent to the stipulation read into the record. The parties further agreed that until the stipulation was filed and approved, the Court could enter an interim order allowing for the limited use of cash collateral. In particular, Debtor could use $35,000.00 to pay past due payroll and could use $6,000.00 to pay insurance. The Court thus entered an Order on November 8, 2006, giving Debtor, Hyundai, Manheim Services Corporation, d/b/a South Seattle Auto Auction, Auto Auction of Montana, and Steve's Auto Sales, Inc. through Monday, November 13, 2006, to submit a written stipulation, and proposed order, fully resolving Debtor's and Hyundai's Cash Collateral Motions.

Subsequently, Hyundai filed a "Motion for Entry of Order Allowing Use of Cash Collateral" (filed at Docket No. 60 and hereinafter referred to as "Hyundai's second Cash Collateral Motion") on November 13, 2006. Hyundai's Motion reads in part:

> Despite their agreement to terms during the November 7 hearing, the parties have been unable to reach agreement on a written stipulation for implementing those terms. Debtor has failed to negotiate the written terms in

> good faith. Debtor's initial draft of a Stipulation as well as the draft provided to [Hyundai's] counsel Saturday failed to include even the most basic agreed upon terms, such as [Hyundai's] replacement lien in Debtor's proposed new motor vehicle inventory or even a budget for use of cash collateral. [Hyundai] has noted these patent deficiencies to Debtor's counsel, but Debtor has failed or refused to make even the most basic changes. [Hyundai] presented Debtor with a comprehensive Stipulation that would govern the handling of cash collateral and replacement inventory, which draft included features suggested by Debtor. In particular, proposed Exhibits A and B to the Proposed Order, establishing procedures for use of trust accounts and for handling replacement collateral, were obtained from Debtor's motion and from Debtor's local counsel, respectively.

Hyundai's second Cash Collateral Motion was accompanied by a proposed order, attached as Exhibit 1 to Hyundai's second Cash Collateral Motion, which proposed order granted Debtor use of cash collateral.

Later on November 13, 2006, Debtor, through counsel, filed a "Stipulation as to the Use of Collateral Under 11 U.S.C. Section 363 and Adequate Protection Under 11 U.S.C. Section 361 of the Bankruptcy Code" that was signed only by Debtor's counsel, William L. Needler and Clarke B. Rice. Thereafter, on November 17, 2006, counsel for Steve's Auto Sales, Inc. filed a "Status Report", indicating that Steve's Auto Sales, Inc. was not necessarily agreeable to the previously proposed settlement of Debtor's and Hyundai's Cash Collateral Motions.

Contemporaneously therewith, Steve's Auto Sales, Inc. filed a Motion to Modify Stay on November 17, 2006. Also on that date, Debtor filed an "Emergency Motion to Enter Order Approving Cash Collateral Stipulation" (filed at Docket No. 66 and hereinafter referred to as Debtor's "Motion to Approve Cash Collateral Stipulation"), which was accompanied by a "Stipulation as to the Use of Collateral Under 11 U.S.C. Section 363 and Adequate Protection Under 11 U.S.C. Section 361 of the Bankruptcy Code (Revised 11/15/06)" that was signed by all parties except Hyundai. The Revised Stipulation filed November 17, 2006, Exhibit A to Docket

3

No. 66, presumably supersedes the "Stipulation as to the Use of Collateral Under 11 U.S.C. Section 363 and Adequate Protection Under 11 U.S.C. Section 361 of the Bankruptcy Code" filed November 13, 2006, Docket No. 61, and signed only by Debtor's counsel, William L. Needler and Clarke B. Rice.

Counsel for Hyundai promptly filed a response to Debtor' Motion to Approve Cash Collateral Stipulation and the Revised Stipulation, Docket No. 68, setting the matter for hearing on December 12, 2006.[1] Hyundai's above response provides, in part:

> [Hyundai] does not object to Debtors' alternative motion [for] use of cash collateral for the purpose of making its payroll due today to its current employees, provided, however that Debtor submits a budget for such payments within five (5) days. The only budget that the Debtor has ever provided is its actual expenditures from last year. The amounts on Debtor's last year's budget do not reflect Debtor's current cash flow needs. Last year's salary budget is particularly inaccurate, because the Debtor has admitted that it now operates on a skeletal staff, compared to previously [sic] years. [Hyundai] and the other creditors in this case are entitled to know exactly how the cash is currently being spent on employee salaries and other expenses.
>
> [Hyundai] objects to the remainder of the Debtor's Motion. Particularly, [Hyundai] denies the self-serving allegations that it has not cooperated with the other parties in connection with the cash collateral issue. [Hyundai] has provided Debtor very modest comments and revisions on Debtor's revised draft Stipulation, but Debtor has provided no response at all to [Hyundai]. Among other problems with Debtor's draft Stipulation is the Debtor's insistence that [Hyundai] stipulate to an incorrect amount of the debt owed to [Hyundai].

Hyundai's response was followed on that same date by Hyundai's "Expedited Motion to Modify Stay, Alternative Motion for Appointment of Trustee" (Docket No. 69). The same Motion appears to have been filed again at Docket No. 70 on November 20, 2006.

In response to the above pleadings, the Court entered an Order on November 20, 2006,

---

[1] By Order entered November 20, 2006, the Court moved the hearing scheduled for December 12, 2006, in Billings to December 5, 2006, in Butte.

4

granting Debtor's Emergency Motion to Enter Order Approving Cash Collateral Stipulation to the limited extent that Debtor was authorized to use Hyundai's cash collateral for the sole purpose of making the payroll that was due to Debtor's current employees as of Friday, November 17, 2006, subject to the condition that Debtor must submit a budget for such payments to the Court and all parties in interest within five days of the November 20, 2006, Order. Debtor proceeded to file an objection to Hyundai's November 13, 2006, second Cash Collateral Motion on November 23, 2006. Interestingly, Debtor's November 23, 2006, objection addresses not one substantive issue with respect to Hyundai's second Cash Collateral Motion. Rather, Debtor's objection takes issue with one of Hyundai's attorneys and asserts that "Hyundai is guilty of false charges, bad faith and intentional efforts to 'weasel out' of legitimate findings and consents by this Court." Debtor proceeds to respond, resist and object to "the false motion filed by Hyundai Motor Finance" and to request that the Court "pursuant to Bankruptcy Rule 9011 provide for a hearing on sanction and a hearing on this Motion at the next hearing date."

Debtor filed yet another "Stipulation as to the Use of Collateral Under 11 U.S.C. section 363 and Adequate Protection Under 11 U.S.C. Section 361 of the Bankruptcy Code (Revised 11/15/06 and 12/6/06)" on December 7, 2006, at Docket No. 119. This Stipulation is signed only by Debtor's counsel, William L. Needler and Clarke B. Rice, and supersedes the stipulations previously filed November 13, 2006, and November 17, 2006.

After due notice, a hearing on Debtor's and Hyundai's Cash Collateral Motions and on Hyundai's "Expedited Motion to Modify Stay, Alternative Motion for Appointment of Trustee"

was held in Butte on December 5, 2006.[2] Derrick Stevens, Dale Ueno and Ken Cornelison testified and Hyundai's Exhibits 1 through 23 and Debtor's Exhibits 1, 2, 3, 4, 5, 6, page 3 only of Exhibit 7, and Exhibits 10, 11 and 12 were admitted into evidence. At the conclusion of the hearing, the Court agreed to enter an order on the pending cash collateral motions. The Court will also take under advisement Hyundai's Expedited Motion to Modify Stay, Alternative Motion for Appointment of Trustee.

Upon considering the testimony and the stipulated agreement recited into the record and the consents to the agreement by the attorneys and the parties present at the hearing conducted on November 7, 2006, and the testimony and statements made by the attorneys at the hearing conducted on December 5, 2006,

IT IS ORDERED Hyundai's "Expedited Motion to Modify Stay, Alternative Motion for Appointment of Trustee" is deemed submitted and under advisement.

IT IS FURTHER ORDERED:

1. That the Debtor shall be granted authority to use cash collateral in substantial conformance with the categories and amounts budgeted for the months of November and December 2006 as set forth in the Revised Budget filed by Debtor on December 3, 2006, and admitted into evidence as Debtor's Exhibit 11, and attached hereto as Exhibit 1.

2. This Order Allowing Use of Cash Collateral shall automatically expire on December 21, 2006, unless specifically continued either by agreement of the parties or by further Court order. As set forth by separate Order of this Court, a hearing on Debtor's Additional Motion to

---

[2] The Court considered other matters at the hearing as well, but those matters are being addressed by separate orders of this Court.

be Extended to Request that the Stipulation as to Use of Cash Collateral Previously Filed with the Court be Approved and Cash Usage Include Budgeted Expenditures through February 28, 2006 (Docket No. 106), shall be held **Tuesday, December 19, 2006, at 09:00 a.m.** in the 5TH FLOOR COURTROOM, FEDERAL BUILDING, 316 NORTH 26TH, BILLINGS, MONTANA.

    3. Hyundai has and shall continue to have a security interest in all inventory, equipment, fixtures, accounts and general intangibles and the proceeds thereof, acquired by Debtor during the pendency of this Case, including, without limitation, all Inventory, all Replacements, all Trade-ins, the Dealer Agreement, the proceeds of sale of Debtor's interest in the Franchise, and Trust Accounts A, B, C and D, which security interest shall be effective from and after the Date of Bankruptcy. The security interest granted herein shall be identical to and shall enjoy the same priority as that security interest granted to Hyundai under the terms of the Loan Agreement and shall be evidenced by this Order and the Loan Agreement; provided, that the Debtor shall execute and Hyundai may file such motions, notices, additional security agreements, control agreements and financing statements as Hyundai deems necessary to fully comply with 11 U.S.C. § 552(b) and Mont. Code Ann. § 30-9-101, *et seq.*, during the pendency of this Case. This provision does not alter or prejudice the rights of any auction entities alleging reclamation claims involving any auction vehicles, which claims are subject or may be subject to adversary proceedings and which will be determined by subsequent order of this Court.

    4. That the deposit of funds in the established trust accounts A, B, C, D and E shall continue as described previously in the hearings, the exhibits and the pleadings filed with the Court, including Debtor's Exhibit 5 admitted into evidence, and attached hereto as Exhibit 2.

    5. That Debtor's profit shall be transferred from Trust Accounts A, B, C, or back to

Debtor-in-Possession Account –two times per week. Factory receivables shall reimburse Account A or Account C when received. Profit shall be defined as the difference between the total sales proceeds (cash, loan and/or trade-in) received for each vehicle transaction less the particular October 17, 2006, inventory valuation, List A and List B as admitted as Exhibits 1 and 2 at the hearing held on November 6, 2006, and any additional cost associated with the sale of the vehicle. Moneys received by the Debtor from the Debtor from Dealer incentives, co-ops and other receivables shall be deposited in the D.I.P. Account.

6. That Hyundai shall be paid the sum of $99,000.00, if not already paid, as soon as this Order is entered by Court, to apply to the claims of $2,275,375.82 thus reducing its claim to $2,176,375.82 from the following sources:

> A. The monies held by KIA Motors America for receivables up to September 30, 2006, which are alleged to be $49,000.00 shall be paid to Hyundai. (If these pre-petition receivables prove to be in excess of this amount, for this period up to September 30, 2006, any excess shall also be paid to Hyundai. Receivables due after September 30, 2006, shall be collected by the Debtor and deposited into the Debtor-in-Possession Account).
> 
> B. Funds held by Hyundai as of the filing date from the Debtor's pre-petition consumer funding (Martens) in the amount of $23,551.00 shall be applied to the debt by Hyundai, as part of this $99,000 amount.
> 
> C. After the removal of the Debtor's profit from Trust Account A on November 5, 2006, estimated at $10,000.00, the remainder sum shall be paid over and transferred to the Debtor-in-Possession Account and the balance treated as

8

follows:

    1) $23,000.00 to pay off additional lien on Martens transaction and

    2) the remainder of Trust Account A as estimated at $62,000.00 less $10,000.00 as stated above and $23,000.00 in paragraph (1) above will be paid to Hyundai, or $27,000.00 for a total of $99,000.00.

7. Additionally as ordered by the Court, the approximate estimated amount of $10,000.00 profit in Trust Account B shall be removed and transferred to the Debtor-in-Possession Account to fund the previously approved November 5, 2006, payroll estimated at $35,000.00 and the insurance estimated at $6,000.00. These payroll reimbursement amounts shall be included in the November 2006 and December 2006 budgeted amounts and are not in addition to the budgeted amounts. ($2_{nd}$ payroll, November 8, 2006, $34,483.82 gross, $3_{rd}$ payroll, $29,000, estimated gross, December 6, 2006.)

8. After the above transactions are completed, Trust Account A and Trust Account B shall continue to be operated to purchase replacement inventory as previously described in the Hearings, the Exhibits and Pleadings filed with the Court.

9. Additionally, the Profits as previously defined in paragraph (5) above shall continue to be transferred and deposited as previously outlined.

10. All Trust Accounts shall have the signatories only of Kenneth C. Cornelison and Zsaneece L. Gutierrez, who shall also sign all Debtor-in-Possession checks for the Debtor-in-Possession approved expenses.

11. Transfer of Title, certificates of title and MSOs for all vehicle Inventory, including Trade-ins, Replacements, shall be delivered to and held in trust by Debtor's Local Counsel,

Clarke B. Rice ("Local Counsel"). Debtor shall provide Hyundai with such information regarding each proposed sale of vehicle Inventory, Trade-ins and Replacements as may require, including, without limitation, a completed deal sheet in form filed with the Court and Hyundai and evidence that the purchase price has been actually received and has been deposited in good funds in the Trust Account designed for receipt of such proceeds as set forth in the Procedure sheet as attached as Exhibit A. Such information shall be transmitted by facsimile or electronic mail to Mr. Dale Ueno at (714) 965-7012 or dueno@hmausa.com4 or, in his absence, Mr. Caleb Cottam at (714) 965-3374 or ccottam@hmausa.com. Alternatively, such documents may be hand-delivered to Mr. Ueno or Mr. Cottam. Local Counsel is authorized to release titles or MSOs in connection with proposed sales only upon Hyundai's written approval thereof which Hyundai shall use its best efforts to transmit to the Manager by facsimile or electronic mail within four (4) business hours of receipt of Debtor's request.

12. Debtor shall provide Hyundai each of the following items of information and reports during the pendency of this Case.

> A. When Hyundai deems it necessary, in its sole discretion and without prior notice, Debtor shall provide access to Debtor's places of business in Billings, Montana, at any time during normal business hours during the pendency of this Case, (I) for physical inventories of Hyundai's collateral, and (ii) for review of all "deal jackets", sources, amounts of funding and other information as permitted by the Loan Agreement. Nothing herein shall obligate Hyundai to conduct any inspection and/or audit of such inventory and/or documents.
>
> B. Debtor shall provide Hyundai daily by electronic mail with records of its sales,

bank deposits slips and cash payments and with such additional records as may be reasonably requested by Hyundai in writing, or orally, whether in person or by telephone.

C. Debtor shall provide Hyundai, during the pendency of this Case, with copies of all financial reports and/or statements required to be filed with the Court or served on any creditor, including but not limited to, all income and expense or profit and loss statements, all balance sheets, updated monthly inventories, all listings of account receivable and/or accounts payable as listed on page (1) of the Debtor's Financial Statement, including, without limitation, any prior liens and amounts owed on sold vehicles or Trade-ins, and all statements relating to employee compensation and/or payroll, taxes paid or held as listed on page (2) of the Debtor's Financial Statement.

D. Debtor shall promptly upon receipt provide to Hyundai copies of all bonafide offers to purchase the Debtor or Debtor's assets outside the ordinary course of business.

E. Hyundai shall have the right to inspect, as it deems necessary and upon reasonable notice to Debtor and with the capability of the Debtor's personnel, all of Debtor's accounting records to verify the accuracy of Debtor's accounting information and practices, and not to harass or confound Debtor. In the event any dispute arises as to what is reasonable notice, the Court is to be contacted for an emergency hearing and the Court will determine what is reasonable.

F. Debtor shall immediately provide to Hyundai information on all prepetition and

postpetition sales and unpaid liens on Trade-ins, as of November 6 and November 7, 2006, including the names of the buyers and lien holders and the amounts of the unpaid liens.

13. Ken C. Cornelison ("Manager") shall serve as general manager of the Debtor. Manager and Zsaneece L. Gutierrez shall be the only persons authorized to sign checks on behalf of the Debtor during the pendency of this case. R. Nick Gutierrez shall not participate in the management of the Debtor during the pendency of this case. R. Nick Gutierrez shall not receive any salary and benefits from and after the date he conveyed his interests in Debtor to his wife, Zsaneece L. Gutierrez, except as may be authorized by Court Order after notice and hearing.

14. Every month, approximately on the 15th day, a printed recap of actual monthly expenses for the previous month, prepared in conformance with Exhibit 1 attached hereto, shall also be forwarded to Hyundai and any other auction creditors requesting recap. The first printed recap of actual monthly expenses from the date of filing this case until December 1, 2006, shall be forwarded to Hyundai and any other auction creditors requesting it on or before December 15, 2006. The January 15th printed recap shall cover the period of time from December 1, 2006, through December 31, 2006. Debtor shall provide to the United States Trustee all required reports pursuant to the time periods established by that office.

15. The auction cars which are on List B (some 24 vehicles) shall be returned to the respective auction entities pursuant to separate Orders issued by this Court, so sales may occur with any sale proceeds being segregated in a separate account and no distributions shall be made from such funds, except as approved by subsequent or other Orders of this Court, or except as may be agreed upon between the parties and approved by this Court, and the remaining proceeds

of sale shall be held until this Court issues distribution orders after all interested parties have had the opportunity to submit claims for reimbursement of any expenses or other monies.

16. Debtor shall provide to Hyundai and the auction entities all information requested by such entities regarding outstanding liens on any trade-in vehicles and any payments made on such liens and any other pertinent information. The Court expects that such information has already been voluntarily exchanged from Debtor to Hyundai and the auction entities.

17. Except as modified herein, all prior stipulations arising in this case and in all adversary proceedings involving Debtor, signed by the parties and approved by this Court are fully enforceable.

BY THE COURT

*/s/ Ralph B. Kirscher*
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

## Incredible Auto Sales LLC
## Revised Budget

| | | Nov-06 | | Dec-06 | |
|---|---|---:|---|---:|---|
| Gross Profit | | $ 94,469 | | $ 162,600 | |
| | 6500 | | | | |
| Sales Comp (Front Gross Only+ C6) | 7000 | $ 4,069 | 1 | $ 14,705 | |
| Supervision Comp (Total Sales Gross+ C7 ) | 7010 | $ 10,174 | 1 | $ 10,500 | |
| Delivery Exp | 7020 | | | $ - | |
| Finance Mgr Comp (Back End Gross Only) | 7030 | $ 1,428 | 1 | $ 2,780 | |
| Advertising (New & Used) | 7040 | $ 5,000 | | $ 30,750 | 2 |
| flooring | 7050 | | | | |
| **TTL Selling Expenses** | | $ 20,671 | | $ 58,735 | |
| Policy Adjustment | 7110 | | | $ 240 | |
| Claims Adjustment | 7120 | | | | |
| Company Vehicles | 7140 | $ 1,500 | | $ 2,000 | |
| Inventory Maintenance | 7150 | $ - | | $ - | |
| Personnel Maintenance | 7160 | $ 500 | | $ 1,500 | |
| Outside Services | 7170 | $ 2,500 | | | |
| Freight | 7180 | $ 500 | | $ 300 | |
| Small Tools | 7190 | $ - | | $ 250 | |
| Laundry & Uniforms | 7200 | $ 500 | | $ 500 | |
| Depr. Equipment & Veh | 7210 | $ - | | | |
| Equip Maint, Repair Rental | 7220 | $ 500 | | $ 110 | |
| Miscellaneous Expenses | 7230 | $ - | | | |
| Salaries & Wages | 7250 | $ 1,296 | 1 | $ 1,500 | |
| Clerical Salaries | 7260 | $ 4,294 | 1 | $ 4,300 | |
| Vacation & Time off | 7270 | $ - | | $ - | |
| **Operating Expenses** | | $ 11,590 | | $ 10,700 | |
| Rent | 7400 | $ 17,000 | | $ 17,000 | |
| Admin, General Salary & Wages | 7410 | $ 2,756 | 1 | $ 4,200 | |
| Owner's Salary (2) | 7420 | $ 15,000 | 1 | $ 15,000 | |
| Payroll Taxes | 7430 | $ 10,727 | 1 | $ 11,500 | |
| Employee Benefits | 7440 | $ 9,665 | 1 | $ 10,500 | |
| Profit Sharing | 7450 | | | | |
| Advertising General | 7460 | $ 500 | | $ 500 | |
| Office Supplies | 7470 | $ 350 | | $ 350 | |
| Data Processing Services | 7480 | $ 6,180 | | $ 6,180 | |
| Outside Service | 7490 | $ 4,000 | | $ 4,000 | |
| Company Vehicles Admin | 7500 | | | $ - | |
| Contributions | 7510 | $ - | | $ - | |
| Dues & Subscriptions | 7520 | $ - | | $ - | |
| Telephone | 7530 | $ 2,500 | | $ 2,500 | |
| Legal & Auditing (US Trustee) | 7540 | | | $ 1,500 | |
| Postage | 7550 | $ 1,200 | | $ 1,200 | |
| Travel & Entertainment | 7560 | $ - | | $ 1,000 | |
| Heat, Light, Power & Water | 7570 | $ 3,200 | | $ 3,200 | |
| Fixture Repair and Maint. | 7580 | | | $ - | |
| Deprecation: Fixtures, Furniture etc. | 7590 | | | $ - | |
| Insurance (other than Building) | 7600 | $ 5,000 | 1 | $ 5,000 | |
| Taxes (other than Real Estate & payroll) | 7610 | $ 1,350 | | $ 1,350 | |
| Interest (other than Flooring) | 7620 | | | $ - | |
| **Total Overhead Expenses** | | $ 79,428 | | $ 84,980 | |
| Simi Fixed | | $ 11,590 | | $ 10,700 | |
| Variable | | $ 20,671 | | $ 58,735 | |
| Total | | $ 111,689 | | $ 154,415 | |
| **Amount Spent** | | $ 63,113 | | | |
| 1= amount paid | | $ 48,576 | | | |
| 2=Advertising after Dec 21st ($25000) | Profit / Loss | $ (17,200) | | $ 8,085 | |

EXHIBIT 1

## Incredible Auto Sales LLC
## Revised Budget

| Total Units | | January-07 44 | | February-07 45 | |
|---|---|---|---|---|---|
| Total Gross | | 197,856 | | 167,255 | |
| Sales Comp (Front Gross Only+ C6) | 7000 | 16,915 | 17% | 14,841 | 17% |
| Supervision Comp (Total Sales Gross+ C7 ) | 7010 | 12,500 | 6% | 12,500 | 8% |
| Delivery Exp | 7020 | - | | - | |
| Finance Mgr Comp (Back End Gross Only) | 7030 | 5,382 | 18% | 5,508 | 18% |
| Advertising (New & Used) | 7040 | 27,000 | | 27,000 | |
| flooring | 7050 | | | | |
| **TTL Selling Expenses** | | **61,797** | **45%** | **59,849** | **36%** |
| Policy Adjustment | 7110 | 240 | | 240 | |
| Claims Adjustment | 7120 | | | | |
| Company Vehicles | 7140 | 2,500 | | 2,500 | |
| Inventory Maintenance | 7150 | - | | - | |
| Personnel Maintenance | 7160 | | | | |
| Outside Services | 7170 | | | | |
| Freight | 7180 | 300 | | 300 | |
| Small Tools | 7190 | 250 | | 250 | |
| Laundry & Uniforms | 7200 | 500 | | 500 | |
| Depr. Equipment & Veh | 7210 | | | | |
| Equip Maint. Repair Rental | 7220 | 110 | | 110 | |
| Miscellaneous Expenses | 7230 | 250 | | 250 | |
| Salaries & Wages | 7250 | 1,500 | | 1,500 | |
| Clerical Salaries | 7260 | 6,300 | | 6,300 | |
| Vacation & Time off | 7270 | 400 | | 400 | |
| **Operating Expenses** | | **12,350** | **7%** | **12,350** | **8%** |
| Rent | 7400 | 17,000 | | 17,000 | |
| Admin, General Salary & Wages | 7410 | 5,100 | | 5,100 | |
| Owner's Salary (2) | 7420 | 15,000 | | 15,000 | |
| Payroll Taxes | 7430 | 12,500 | | 12,500 | |
| Employee Benefits | 7440 | 5,000 | | 5,000 | |
| Profit Sharing | 7450 | | | | |
| Advertising General | 7460 | 500 | | 500 | |
| Office Supplies | 7470 | 1,000 | | 1,000 | |
| Data Processing Services | 7480 | 6,180 | | 6,180 | |
| Outside Service | 7490 | 9,500 | | 9,500 | |
| Company Vehicles Admin | 7500 | | | | |
| Contributions | 7510 | - | | - | |
| Dues & Subscriptions | 7520 | 540 | | 540 | |
| Telephone | 7530 | 3,500 | | 3,500 | |
| Legal & Auditing | 7540 | 1,500 | | 1,500 | |
| Postage | 7550 | 1,200 | | 1,200 | |
| Travel & Entertainment | 7560 | - | | - | |
| Heat, Light, Power & Water | 7570 | 3,200 | | 3,200 | |
| Fixture Repair and Maint. | 7580 | 1,500 | | 1,500 | |
| Deprecation: Fixtures, Furniture etc. | 7590 | | | | |
| Insurance (other than Building) | 7600 | 5,000 | | 5,000 | |
| Taxes (other than Real Estate& payroll) | 7610 | 1,350 | | 1,350 | |
| Interest (other than Flooring) | 7620 | | | | |
| **Total Overhead Expenses** | | **89,570** | **46%** | **89,570** | **50%** |
| Simi Fixed | | 61,797 | 7% | 59,849 | 8% |
| Variable | | 12,350 | 45% | 12,350 | 36% |
| Total | | 163,717 | 93% | 161,769 | 93% |
| **Operating Profit** | | **14,343** | | **12,638** | |

## PROCEDURE FOR MANAGEMENT OF
## TRUST ACCOUNTS A, B, C, D AND E

1. All funds received shall be deposited into the DIP account. (All electronic funding is collected into the D.I.P. account since institutions funding sales will not fund to multiple accounts based on new or used sales.) The funds shall then be transferred in the correct accounts based on what type of sale. (A – Proceeds of New Vehicles, B – Proceeds of Used Vehicles, C – Proceeds of Service Sales in the Service Department, D – Tax Deposits and E – For Proceeds From All Receivables both Pre-Petition and Post-Petition.)

2. Profit shall be transferred from the accounts A, B, C or E back to DIP account every few days. Factory receivables shall reimburse Account A or Account C when received. Profit shall be defined as the difference between the total sales proceeds (cash, loan and/or trade in) received for each vehicle transaction less the particular October 17, 2006 inventory valuation and any additional cost associated with the sale of the vehicle.

3. All factory receivables (incentives, rebates, holdback & warranty) shall be deposited into the DIP account and transferred to the correct A or C account as received.

4. A Recap Sheet (See: attached example) will be prepared for each transaction showing complete breakdown of cost, profit, funding dates and receivables due which shall be made available to Hyundai Motor Finance.

5. Trade payoffs shall be paid from the A or B accounts based on what type of vehicle sold.

6. Trade-in values on new vehicle transactions shall be added to Used Vehicle Inventory (List B) and the value transferred from the Used Vehicle Account B to the New Vehicle Account A ( See: attached Recap Sheet)

7. Used vehicle reconditioning costs shall be deducted from Account B and then deposited in Account C as repairs are completed. This reconditioning will increase the value of the vehicles on List B.

