James A. Patten (I.D. No. 1191)
**PATTEN, PETERMAN, BEKKEDAHL & GREEN, P.L.L.C.**
2817 Second Ave. North, Suite 300
Billings, MT  59101
Telephone (406) 252-8500
Facsimile: (406) 294-9500
Email:japatten@ppbglaw.com

Attorney for Steve's Auto Sales, Inc.

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| IN RE: | ) Case No. 06-60855 |
| | ) |
| INCREDIBLE AUTO SALES, LLC | ) **MEMORANDUM OF STEVE'S** |
| | ) **AUTO SALES IN SUPPORT OF MOTION** |
| Debtor. | ) **FOR RELIEF FROM THE STAY** |
| _____) | _____ |

## INTRODUCTION

STEVE'S AUTO SALES, INC. ("Steve's Auto") has moved this Court for relief from the automatic stay to enable it to recover automobiles from Incredible Auto Sales ("Incredible Auto") for which no payment was tendered by Incredible Auto.  It is Steve's Auto's contention that in the absence of a payment no sale occurred and that Steve's Auto remains the owner of the vehicles and is entitled to recover them from Incredible Auto.  Incredible Auto does not object to the relief but its flooring financier, Hyundai Motor Finance Co. ("Hyundai"), does.   Hyundai asserts that a sale occurred when possession of the vehicles was delivered to Incredible Auto.

The evidence in support of Steve's Auto's motion was received by this Court through a transcript of the deposition of Steve Marks, the owner of Steve's Auto.

**STATEMENT OF THE FACTS**

Because the only evidence received by the Court in connection with the motion was Steve Mark's deposition transcript, Steve's Auto contends that there is no dispute of fact as all facts come from Steve Marks.

Steve's Auto is in the business of selling automobiles on both a wholesale and retail basis. Mark's Depo. Tr. p. 4 ll. 6 though 8. Steve Marks has been selling automobiles in Billings for 26 years. Depo. Tr. p. 4 ll. 4 through 11.

Steve Marks goes to the Billings Auto Auction every week unless he is at a different auto auction that week. Depo. Tr. p. 5 ll. 25 through p. 6 l. 11. Marks goes to Phoenix, Las Vegas, Denver, and Boise to attend auto auctions. Depo. Tr. p. 6 ll.12 through l. 15. Marks estimates that he has purchased between 300 and 350 automobiles in the past year at the Billings Auto Auction. Depo Tr. p. 6 ll.19 through 25.

Steve's Auto also sells cars through the Auto Auction. Depo. Tr. p. 7 ll. 4 through 8.

Steve's Auto finances its automobile purchases through flooring arrangements with either Automotive Finance Corporation or Dealers Services Corporation. Depo. Tr. p. 9 ll. 5 though 16. Both flooring companies have an office in Billings located within the Auto Auction facilities. Depo. Tr. p.9 ll. 20 through 24.

All of the auto auctions, including the Billings Auto Auction, have the same procedure with respect to payment of the purchase price and the receipt of the title work for the automobile. Depo. Tr. p. 9 l. 25 through p. 10 l. 11. A car purchased at the auction can be returned within up to 14 days if there is misrepresentation about the milage or the damage to the car. Depo. Tr. p. 12 l. 2 through 5. However, when a car is purchased at the auction, the buyer is required to immediately present

payment for the car and if the title is present at the auction, the buyer receives the title work. Depo. Tr. p. 12 l. 6 through 17. If the auction does not have the title work, in the case of out of state dealers or out of state companies, the title is delivered to the auction the day or the day after the auction. Depo.Tr. p. 12 ll. 10 through 20. Once the auction receives the title work then that title work is delivered either to the buyer or, in the case of Steve's Auto, to his flooring company. Depo. Tr. p. 12 ll. 21 through p. 13 l. 3. The purchase price is paid to the Auto Auction which retains its fees and then remits the balance to the seller. Depo. Tr. p. 13 l. 16 through p. 14 l. 1.

Importantly, the Auto Auction will not remit the balance to the seller until a title is delivered to the Auto Auction and similarly the Auto Auction will not deliver the title until the buyer has paid for the vehicle. Depo. Tr. p. 14 ll.2 through 7. The Auto Auction is an intermediary that collects both the money and the title before forwarding the title to the buyer and the purchase price to the seller. Depo. Tr. p. 14 ll. 8 through 20. Marks described the Auto Auction as like a title company that closes a real estate sale. Depo. Tr. p. 14 ll. 12 through 23.

The proprietor of Incredible Auto, Nick Gutierrez approached Marks at church about purchasing cars from Steve's Auto. Tr. p. 16 ll. 5 through 25. Gutierrez later told Marks that he was low on inventory and wanted to purchase cars from Steve's Auto. Depo. Tr. p. 17 l. 11 through 23. Later that week, Gutierrez and Marks looked at the cars, many of which were in body shops or other repair facilities, and they negotiated a price. Depo. Tr. p. 19 l. 16 through p. 20 l. 14. All of the cars that Gutierrez looked at and agreed to buy were floored through Steve's Auto's finance companies. Depo. Tr. p. 21 l. 8 through 13. Steve's Auto did not have the title work, its lenders did. Depo. Tr. p. 21 ll. 19 through 21.

The arrangement between Steve's Auto and Incredible Auto was that Incredible Auto expressly wanted the vehicles purchased through the Billings Auto Auction. Depo. Tr. p. 22 ll. 7 through 20. Steve's Auto did substantial of business with the Auto Auction in comparable situations. *Id.* The Auto Auction was to act in this respect like a real estate closing company. Depo. Tr. p. 22 ll. 21 through p. 23. l. 1. Incredible Auto made the arrangements with the Auto Auction and Marks was simply informed by Auto Auction that "we are going to take care of the paperwork for you and Nick on this set of vehicles." Depo. Tr. p. 23 ll. 10 through 15. This arrangement was made before Incredible Auto took possession of the vehicles. Depo. Tr. p. 12 ll. 16 through 23. Marks was told that the Auto Auction had spoken to Nick, that they had come to an agreement on the commissions, and that Marks was to bring in the VIN numbers, colors, makes, and models and the Auto Auction would do the paperwork including invoices. Depo. Tr p. 24 ll. 6 through 16. Marks notified his flooring company that the vehicles were being sold to Incredible Auto. Depo. Tr. p. 24 l. 23 through p. 25 l. 1.

Incredible Auto then delivered payment to the Auto Auction for some but not all of the vehicles and the Auto Auction delivered the title work on those vehicles to Incredible Auto. Depo. Tr. p. 24 ll. 6 through 13. Steve's Auto received the sale proceeds from the Auto Auction for those same vehicles (which vehicles are not the subject of this motion). Depo. Tr. p. 25 ll. 20 through 23. No payment was presented with respect to the other vehicles, which are the subject of this motion. Depo. Tr. p. 25 l. 24 through p. 26 l. 1.

As is customary, because no payment was tendered, the titles remain in possession of Steve's Auto's finance company for the eight vehicles. Depo. Tr. p. 26 ll. 4 through 12. Indeed, these titles, which are Exhibits 1 through 8 of the deposition, are currently either in the name of Steve's Auto

or Steve's Auto is identified as the transferee. None of the titles have been transferred to Incredible Auto.

Ironically, Steve's Auto, at the same time, purchased three vehicles from Incredible Auto which were also done through the Auto Auction. Depo. Tr. p. 44 l. 12 through p. 45 l. 3. Payment for the three purchased from Incredible Auto was made to the Auto Auction and the title work for the vehicles was delivered to Steve's Auto by the Auto Auction. Depo. Tr. p. 45 ll. 8 through 17.

The parties had an explicit agreement to sell the vehicles through the Auto Auction.

## ARGUMENT

The facts of this case show that the vehicles subject to this motion were to be sold through the Auto Auction; further the facts are that a sale at the Auto Auction occurs when payment is given and when the title work is delivered to the Auto Auction. Until there can be a contemporaneous delivery of title to the buyer and payment to the seller, there is no sale. This is the procedure used not only at the Billings Auto Auction but every other auto auction that Steve Marks attends. The undisputed testimony is that this is the custom in the trade for the purchase of vehicles through an auto auction.

A motor vehicles is a"good" within the meaning of the Uniform Commercial Code. *Safeco Insurance Co. v. Lapp* (1985), 215 Mont. 196 199, 695 P.2d 1310, 1313. The Uniform Commercial Code applies in resolving this dispute.

The procedure identified by Marks is the "course of performance" within the meaning of §30-1-205 M.C.A. and should be considered in ascertaining the parties' agreement. §30-1-205(4) M.C.A.   Here, the Auto Auction procedures were known and followed.  For example, when Incredible Auto tendered payment for those vehicles not involved in this motion, it received the title

work to those vehicles; similarly when Steve's Auto tendered payment to the Auto Auction for the three vehicles it purchased, Steve's Auto received the title work. As a further example, until Incredible Auto offered the checks, later returned NSF for the cars not involved in this motion it did not receive the title to those cars. This is how the Auto Auction functions and this is what the parties' intended when they explicitly agreed to have the Auto Auction handle the transaction.

Section 30-2-401 M.C.A. provides that: "Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes performance with reference to the delivery of the goods, despite any reservation of a security interest and even through a document of title is to be delivered at a different time or place . . ." §30-2-401(2) M.C.A.

Hyundai will argue that under this provision, title passed to Incredible Auto at the time the vehicles were delivered to Incredible Auto. In making this argument, however, Hyundai is ignoring the clause, "unless otherwise explicitly agreed." Here, the evidence shows there was an explicit agreement between Incredible Auto and Steve's Auto that the vehicles would be sold through the Auto Auction. In accordance with the course of performance, when a vehicle is sold through the Auto Auction there is no sale unless the buyer pays the purchase price to the Auto Auction and unless the seller delivers the title work to the Auto Auction. Until both occur there is no sale. By explicitly agreeing to selling through the Auto Auction, the parties also explicitly agreed to the custom and practice routinely followed by the Auto Auction.

As there was an explicit agreement between the parties, the delivery of possession in and of itself did not constitute a sale of the vehicles under §30-2-401(2). Because there was no sale of the vehicles, Steve's Auto Sales retains ownership and Incredible Auto has simple possession only.

A case involving similar but distinguishable facts ironically involving the Auto Auction is *Dinkel Enterprises d/b/a Billings Auto Auction v. Colvern* (*In re Bailey Pontiac, Inc.*), 139 B.R. 629

(D.C. ND Tex. 1992), wherein the payments made for the vehicles purchased by Bailey Pontiac from the Billings Auto Auction were not honored. Billings Auto Auction sued the Chapter 7 Trustee to recover the vehicles for which the drafts received as payment were not honored. However, in that case the buyer, in the ordinary course of performance, tendered drafts and took possession of the vehicles. The presentation of drafts was usual and customary so the buyers could operate on the "float." *Id*. at 635. That is distinguishable here because the parties did not, as a matter of custom and practice, operate on the "float." Further, a payment was tendered in the *Dinkel Enterprises* case whereas no payment was tendered here.

The undisputed fact is that in the present case until payment is offered and the titles delivered, there is no sale.

As the owner of the vehicles, Steve's Auto is entitled to recover possession. The automatic stay should be lifted so that possession can be recovered.

## CONCLUSION

WHEREFORE the foregoing reasons, Steve's Auto Sales, Inc. respectfully requests this Court to lift the automatic stay and allow Steve's Auto Sales to recover possession of the vehicles and to sell the vehicles retaining the sales proceeds.

DATED this 19st day of December, 2006.

                **PATTEN, PETERMAN, BEKKEDAHL & GREEN, P.L.L.C.**

                By: */s/ J.A. Patten*
                      **JAMES A. PATTEN**
                      Attorney for Steve's Auto Sales, Inc.