William L. Needler
William L. Needler and Associates
555 Skokie Blvd Ste 500
Northbrook, IL 60062
(847) 559-8330 ph
(847) 559-8331 fax
Bar ID 02025248
E-Mail: WilliamLNeedler@aol.com

Attorneys for the Debtor
    Incredible Auto Sales LLC

Clarke B. Rice
Clarke B. Rice P.C.
2951 King Avenue West
Billings, Montana 59102
(406) 254-2500 ofc phone
(406) 294-2525 fax
Montana ID # 1289
E-Mail: CLarkerice@imt.net

Co-Counsel for the Debtor
    Incredible Auto Sales LLC

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA**

| | |
|---|---|
| **IN RE:**<br><br>INCREDIBLE AUTO SALES L.L.C.<br><br>                            Debtor | Case No. 06-60855-RBK<br><br>Judge Ralph B Kirscher<br><br>A Chapter 11 Proceedings<br>For Reorganization |

### DEBTOR'S REPLY TO

### HYUNDAI MOTOR FINANCE'S OBJECTION TO THE

### DEBTOR'S CONTINUED USE OF CASH COLLATERAL

NOW COMES the Debtor, Incredible Auto Sales L.L.C. and Replies to the charges filed herein by this Secured Lender (hereinafter "Hyundai") under a pleading entitled Objection to Debtor's Motion for Continued Use of Collateral.

The Debtor believes that most of these charges contained therein are false and all relate to pre petition period and do not involve present management.

The Debtor, in support of this Cash Collateral Motion which seeks the continuation for the remainder of December 2006 and for January and February 2007 of approved Cash Collateral Usage pursuant to Budgets previously put into evidence.

IN SUPPORT of this Reply this Debtor states as follows:

1.) The Debtor has been in Chapter 11 since October 17, 2006, but has only had limited Use of Cash Collateral since December 8, 2006.

2.) Charges of a lack of profitability of this Debtor to date can be traced to the "bad faith" of Hyundai and actions by Hyundai.

3.) It is inconceivable that a consented to Cash collateral proposal agreed to before this Court on November 6 and November 7, 2006 could take until December 8, 2006 to be formalized, some 31 days later.

4.) The damage done to the Debtor's D.I.P. operations by Hyundai by these continued resistances has been intentional on its part.

5.) The Debtor filed its Financial Report for the period of October 17, 2006 and December 13, 2006 on December 18, 2006 with the Court. It is again attached hereto as <u>Exhibit 6</u>, which is attached hereto and adopted herein.

6.) The loss reflected there of $60,717 under the circumstances that the Debtor had to operate under during this period, the Debtor's new management team should be commended and not chastised. (See <u>Exhibit 6</u> attached.)

7.) Contrary to all allegations by Hyundai herein, Hyundai is more than adequately protected.

8.) The Debtor's current Asset List was also submitted to the Court yesterday, showing the current equity cushion over Hyundai's claim as $1,216,716.01, which included the Auction Vehicles. (See Debtor's Revised <u>Exhibit 3</u>.)

9.) At Hyundai's insistence and as part of the original consents to Use of Collateral, the Debtor had agreed with Hyundai to change and revamp the management of the Debtor. This action was taken even in spite of Hyundai's attempt to revoke its prior consents in Court.

10.) The Debtor-in-Possession is now under the direct management of Ken Cornelison as General Manager and member of the L.L.C. and a 10% owner of the L.L.C. He is now being assisted by Zfaneece Guitirrez, who is a 2% owner. She has regularly assigned duties and works 40 hours per week.

11.) Her husband, Nick Gutierrez, and 78% owner of the L.L.C. no longer has any management say in the Debtor.

12.) The pre petition management of the Debtor is no longer making decisions in the management and direction of the Debtor.

13.) Current management has been guilty of no valid questionable post petition actions as alleged. This new management has zealously undertaken its Trustee position and responsibilities.

14.) The Debtor herein Replies to the continued false and inflated charges by Hyundai as follows:

    A.) <u>Post petition transactions</u>, yes it is true that Nick Gutierrez owns the largest equity interest in the Debtor. The Debtor represented at the last hearing that his equity interest had been assigned to his wife. This was true at the time, but this transaction had to be rescinded and un-wound because Nick Gutierrez is the named person on the Kia Franchise. Change of ownership on any Auto Dealer Franchise must and can only be approved by the manufacturer. The intentions of the Debtor to show a "new ownership face" had to be rescinded "so as to protect this valuable franchise asset. The new face of the management, however, going back to the original Cash Collateral hearing is however real.

        In the original hearing, the Debtor agreed to change management and did so immediately as of that November 7th date.

        The Debtor believes that it is false pleading on Hyundai's part to "grab at straws" on these alleged wholesale sales to Graham Stanton. Wholesale sales with the industry happen all the time Hyundai knows this. This Court should remember that the Debtor has now agreed to discontinue future wholesale transactions.

The sales to Incredible Chevrolet as alleged were not part of "a scheme" as charged. Why shouldn't Incredible Chevrolet "pocket" the profit – it was its sale- sold by its employees – closed by its employees – Hyundai knows this "insider sale" was not a scheme – <u>the false charges continue.</u>

The transfer of the lease on the other King Avenue property was not "part of a scheme" either – Prior to filing the lease of this premises was avoided since the new Debtor-in-Possession could not afford the expense of this overhead and expense. The notice of this transaction was not hidden – it was discussed loudly and clearly and was explained in the Statement of Affairs filed in this case.

Testimony showed the rents as this location to be $6,100 per month, while advertising was $10,000 per month and employees $12,000 per month. This $28,100 payment per month could not be afforded in the Chapter 11.

Yes, all the employees at this location were transferred for economic reasons – <u>this was no "scheme".</u>

Ms Davis appeared on the payroll temporarily because she was an experienced financial person she substituted for a short time to fill in a void – she has valuable experience, which the Debtor needed. Since then she is no longer on the payroll.

There is no "transparent scheme" as Hyundai's charges are bogus and inflated.

B.) <u>Blue Sky</u> - The charge by Hyundai that the "Blue Sky Franchise" as valued is over stated at $800,000 is also bogus.

The resistance of Hyundai is designed to deny operational funds to the Debtor. This could have a damaging affect on the Franchise Sale and the Franchise Value. It makes no sense for Hyundai to damage its own asset. Hyundai's efforts with third parties to damage the Franchise value of this Debtor are really sanctionable.

Hyundai does not have a clew with regards to the counter-offer of the local Chrysler Dealer. This buyer is, in the Debtor's opinion, a pure and simple "bottom fisher".

The counter-offer given to this person was as follows:

(a) Give us a firm offer at $575,000; and

(b) This would include $50,000 in good parts, the Kia display and the special Kia tools, Nothing else.

By the way, no response to this Counter-offer has been received from this local dealer – a proper evaluation of this Counter-offer would be as follows:

(a) Blue Sky with inclusions $575,000;

(b) This would leave the Debtor with over $103,000 in remaining parts to be sold or returned.

(c) Signage of $25,000;

(d) Machinery and Fixtures of over $42,000; and

(e) The other assets, supplies, furniture and fixtures and receivables as listed; and

(f) The assumption of the car inventory and its secured debt by any buyer.

Obviously the Debtor cannot speculate on the potential value, since no firm offer exists.

The Debtor, however, through its Broker is vigorously pursuing all leads and is making extensive direct mailings together with an ad in Automotive News.

The Debtor has promised this Court to vigorously pursue a sale and it is doing so.

The Debtor values the support of this Court and will do nothing to evade its solemn responsibilities as a Debtor-in-Possession caretaker and Trustee.

Today's discussions with this same buyer have proceeded to a proposed offer to be received from the Buyer's Attorney tomorrow.

In short all the vehicles would be transferred shortly with Court and Hyundai approval at current auction values on used and invoice on all 06's.

The Franchise price together with the vehicles and with the remaining assets kept by the Debtor, such total will more than pay off the Hyundai claims.

C.) <u>Law suit Receivables</u>

This value is the Debtor's best estimate and best assessment as with all such intangible, obviously the "proof is in the pudding".

The Debtor's estimated of the Franchise Value, it believes will prove out unless intentional efforts continue to damage its value.

The testimony of Local Counsel Bill O'Connor, we agree was not conclusive, but he was the only one available outside of the Debtor to directly testify.

Actually, the lead counsel of this law suit is the law firm of Kutak Rock of Omaha, Nebraska and they attest to this value.

D.) <u>Unpaid Liens</u>

The current list of unpaid pre petition liens has been given to Hyundai and creditors.

This Court should recall the testimony of the Debtor that Hyundai shut off the Debtor's pre petition floor plan for over 20 days without prior notice. Any thoughtful person would and could conclude that this unpaid pre petition lien list was certainly caused proximately by the unlawful curtailment of floor financing without notice.

The sinister hand s of Hyundai certainly played a big part in this.

Obviously for those customers with vehicles no longer in inventory, these amounts due are all pre petition unsecured claims.

A recent Amendment to the Debtor's Schedules reflects that all these claimants have now have been fully notified.

Any prior understatement of pre petition liens was not intentional, but inadvertent.

Every automotive case that this Debtor's Attorney has bad namely some 37 of them, all these had out of trust vehicles and unpaid pre petition and post petition liens.

As to the signing of photo copy titles, the Debtor can show that Hyundai was totally aware of this practice and has testified to Hyundai's full knowledge.

Vince Wright of the Kalispel Auction would it was proposed testify as to the acceptance of this practice except he was unavailable for trial on December 19th.

This practice has of course been discontinued since there is no more flooring and all titles are held by Co-counsel Clarke B. Rice.

E.)   <u>Misuse of Inventory</u>

The Debtor has represented to this Court that the personal use vehicle was given pursuant to a pre petition contract to the Debtor's in-house Agency.

The Debtor has agreed to get this vehicle back in the inventory.

No prior Hyundai demand has ever been issued.

F.) <u>FIB Repossessions</u>

The vehicles in question had little or no net value to the Debtor, so the Debtor agreed to not oppose the Bank's Motion for Relief.

Hyundai offered no objection to this Motion.

G.) <u>Incomplete Vehicle Listing</u>

The Diawoo referred to herein was sold prior to the Bankruptcy. It was not on the inventory list because it was not property of the estate on 10/17/06.

H.) <u>Valley FCV Repossessions</u>

These vehicles were stolen off the Debtor's lot and in total violation of Section 362 (h) and Debtor will seek return plus damages.

I.) <u>Steve Auto Repossessions</u>

These vehicles were part of the post petition inventory.

Steve's Auto just violated the Stay by taking these estate property vehicles from the repair shop.

These vehicles were previously seen by Hyundai.

J.) <u>Auto Auction Claims</u>

These Auto Auction vehicles are claimed by Hyundai.

On filing they were all property of this estate.

They are still included on the Debtor's B list since they remain collateral securing the Hyundai claim of $2,176,000 due by the Debtor.

K.) <u>Phantom Flooring</u>

The vehicles in the body shop were seen and touched by Dale Ueno. These were property of the estate and seen and counted by Hyundai.

There was no phantom flooring as testified to by Ken Cornelison on the stand.

L.)  Forged Titles

This practice of using copies is not out of the ordinary in the vehicle business as testified to by Ken Cornelison.

This pre petition action has nothing to do with the Debtor-in-Possession period.

This practice was fully known by Hyundai personnel.

These were not falsified as charged.

M.)  Misstated Profit

The profits as stated in the Proforma Operating Results for this Debtor are not misstated.

The cost basis for this profit has used as agreed to, the inventories of List A and List B from the October 17, 2006 filing date.

This definition of profit was agreed to by Hyundai before the Court on November 7, 2006 – election day.

N.)  Owner's Draw

There is no owners draw any more since Nick Gutierrez is no longer a managing officer of the Debtor.

The store is under the direct management of Ken Cornelison assisted by Nick Gutierrez's wife who has considerable background in the car business.

        With the slow Cash Collateral approval and the lack of advertising dollars- valuable employees have left.

        The management team have their work cut out for them filling vacancies created.

O.)    <u>Post Petition Transfers</u>

        These were wholesale sales to Graham Stanton. They all had wholesale profit in them.

        The Debtor has agreed – no more inside sales since this issue has now been raised.

P.)    <u>Diminished Values</u>

        As testified to in various hearings in this case, management has detailed carefully and accurately how the inventory was valued using auction values on October 17, 2006, the filing date.

        The Debtor used actual values as Hyundai consented to.

        The Debtor used current values – not "pie in the sky" invoice values.

        This procedure consented to in the Cash collateral Stipulation and consents were not objected to in the November 6, and November 7th hearings and consents.

Q.)    <u>Incomplete Records</u>

        Hyundai has access to all post petition records.

        They receive a deal sheet on each vehicle sale - they get copies of bank account and daily deposits.

        No demands or objection to daily procedures have been conveyed by Hyundai to management.

  R.) <u>Non Compliance with Trust Account Procedures</u>

   No non compliance has existed after Cash Collateral Order was finally entered.

  S.) <u>Unfilled Cash Collateral Terms</u>

   Debtor does owe $13,000 plus as part of the $99,000 up front settlement.

   As soon as the Order is entered, this will be disbursed.

15.) The Debtor is following all agreed to procedures.

  Allegation to the contrary are totally false.

16.) The Debtor will sell the Franchise, but can't do so without continuing Use of Cash Collateral.


 WHEREFORE for all the reasons stated including those on the record, the Cash Collateral requests should be granted.


December 20, 2006


       <u>/s/ William L. Needler</u>
       Attorney for
       Incredible Auto Sales L.L.C

William L. Needler
William L. Needler and Associates
555 Skokie Blvd Ste 500
Northbrook, IL 60062
(847) 559-8330 ph
(847) 559-8331 fax
Bar ID 02025248
E-Mail: WilliamLNeedler@aol.com

Attorneys for the Debtor
    Incredible Auto Sales LLC

Clarke B. Rice
Clarke B. Rice P.C.
2951 King Avenue West
Billings, Montana 59102
(406) 254-2500 ofc phone
(406) 294-2525 fax
Montana ID # 1289
E-Mail: CLarkerice@imt.net

Co-Counsel for the Debtor
    Incredible Auto Sales LLC

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| **IN RE:**<br><br>INCREDIBLE AUTO SALES L.L.C.<br><br>                     Debtor | Case No. 06-60855-RBK<br><br>Judge Ralph B Kirscher<br><br>A Chapter 11 Proceedings<br>For Reorganization |

**NOTICE OF RESPONSE**

     PLEASE TAKE NOTICE, that on Wednesday December 20, 2006 as the attached Debtor's Reply to the Objection of Hyundai Finance as to the Granting of Continued Use of Collateral on December 19, 2006 was filed with the Clerk of the Court as attached.

/s/ William L. Needler
William L. Needler
William L. Needler and Associates
555 Skokie Blvd.
Suite 500
Northbrook, IL 60062
Bar ID# 2025248
(847) 559-8330
(847) 559-8331 - FAX

**PROOF OF SERVICE**

William L. Needler, an attorney, certifies that he filed this Reply on December 20, 2006 with the Clerk of the above Court via CM/ECF electronic filing and the persons listed by the Court were served electronically.

CHRISTOPHER P BIRKLE    lovellaw@hotmail.com
ALAN C. BRYAN    abryan@crowleylaw.com
SHANE P. COLEMAN    spcoleman@hollandhart.com,
bbowler@hollandhart.com;vhenry@hollandhart.com;intaketeam@hollandhart.com
BRUCE F. FAIN    bruce@murphkirk.com, pam@murphkirk.com;amy@murphkirk.com
CHARLES W. HINGLE    chingle@hollandhart.com,
bbowler@hollandhart.com,mhauck@hollandhart.com,jritchie@hollandhart.com,pmoritz@hollandhart.com,lsawatzke@hollandhart.com
DOUG JAMES    james@moultonlawfirm.com, smarble@moultonlawfirm.com
NEAL G. JENSEN    Neal.G.Jensen@usdoj.gov
WILLIAM L NEEDLER    williamlneedler@aol.com
OFFICE OF THE U.S. TRUSTEE    ustpregion18.gf.ecf@usdoj.gov
JAMES A. PATTEN    japatten@ppbglaw.com, aschueler@ppbglaw.com;ESchoemer@ppbglaw.com


     This Attorney also certifies that he also caused to be served, a copy of the above Reply and Notice as attached hereto, to the persons listed below served by Facsimile Service from the Attorneys offices on December 21, 2005.

/s/ William L. Needler
William L. Needler

Incredible Auto Sales
Ken Cornelison
1832 King Avenue West
Billings, MT  59102
(406) 294-2525 fax

Clarke B Rice
2951 King Avenue West
Billings, MT 59102
(406) 294-2525 fax

Jill Smith
Kia Motors of America
9801 Muirlands Blvd.
PO Box 52410
Irvine CA 92619-2410
(949)595-5805 fax

Cort Jenson
State of Montana
Attorney General's Office
215 North Sanders
Helena, MT 59620
(406) 444-5439 ph
(406) 444-3549 fax