UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**INCREDIBLE AUTO SALES, LLC**,

Debtor.

Case No. **06-60855-11**

**ORDER ALLOWING
USE OF CASH COLLATERAL
THROUGH JANUARY 31, 2007**

At Butte in said District this 21st day of December, 2006.

In this Chapter 11 bankruptcy, a hearing was held in Billings on December 19, 2006, on Debtor's additional motion that the cash collateral usage be extended to include the budgeted expenditures through February 28, 2007 (doc. # 106), and the objection thereto filed by Hyundai Motor Finance Co. ("Hyundai")(doc. # 137), and its response to the motion (doc. # 139). The Court further heard Debtor's Application to Employ Southwest Brokerage Company (Broker) of Arlington, Texas, pursuant to 11 U.S.C. § 327 (a) (doc. # 110) involving Jappy Dickson, and the objection thereto filed by Hyundai (doc. # 140), and by separate Order (doc. # 151) the Court has denied approval of the employment of Southwest Brokerage Company, with leave to refile. William L. Needler of Northbrook, Illinois and Clarke B. Rice of Billings, Montana represented

1

Debtor at the hearing. Additionally, Shane Coleman of Billings, Montana represented Hyundai; Christopher Birkle of Billings, Montana appeared on behalf of Manheim Services Corporation, d/b/a South Seattle Auto Auction; and Jeffery A. Hunnes appeared for Ernie Dutton.

The Court heard testimony from Ken Cornelison. Debtor's Exhibits 1, 2, 4, 5, and 6 were admitted over objection. Hyundai's Exhibits 6, 15, 21, 18, and 22 (admitted in a prior hearing) were admitted in this hearing. Debtor's Exhibit 3 was offered, an objection to the introduction of this exhibit occurred based upon inaccuracies in the exhibit and the late filing of an amendment, and the Court sustained the objection to admission.

Mr. Cornelison, as general manager, testified as to the current operations of Debtor and the current management of Debtor. He corrected testimony from the hearing on December 5, 2006, by stating the Nick Gutierrez still retained an interest in Debtor to avoid violations of the KIA franchise agreement, but that Mr. Gutierriz did not participate in management. Mr. Cornelison also testified that Debtor was entering the year-end sales period that typically was one of Debtor's better selling periods. Exhibit 1 shows new car inventory as of December 12, 2005, at $365,533.00, based on invoiced value. Exhibit 2 shows used car inventory at $1,073,466. Exhibit 5 shows cash accounts as of December 13, 2006, at $241,798.56. Exhibit 6 shows a loss for the period of October 18, 2006, through December 12, 2006, of $60,717, with gross profit for the October 17, 2006, through December 12, 2006, period of $108,222.55. Mr. Cornelison testified that based on his review of Debtor's financial condition that Debtor owns assets of approximately $1,000,000 in excess of the approximate $2.2 million debt to Hyundai. This testimony was not rebutted.

Mr. Needler, on behalf of Debtor, also informed the Court that Debtor would file a

2

disclosure statement and a plan of reorganization within 30 days of the date of this hearing. The Court understands such disclosure statement and plan will be filed on or before January 18, 2007. Mr. Needler further informed the Court that he would file an employment application on behalf of Clarke B. Rice, whose employment is still not approved after this case has been pending for over 60 days. The Court further informed Mr. Needler that he needs to comply with Mont. LBR 9013 concerning notice periods and the procedure for filing a response and requesting a hearing. He further needs to review the Court's local rules concerning filing exhibits and other documents prior to hearings and needs to further generally review this Court's local rules for other procedures that may affect the administration of this case.

Upon considering the testimony, the admitted exhibits and the record, the Court finds the decision on Debtor's motion to extend the cash collateral agreement to be a close one. The Court will extend the cash collateral agreement until January 31, 2007, and further requires Debtor to file a motion to extend such cash collateral agreement into February 2007 on or before January 16, 2007, so any objections to such motion can be heard on Tuesday, January 23, 2007, at 10:00 a.m. or as soon thereafter as counsel may be heard in the 5TH FLOOR COURTROOM, FEDERAL BUILDING, 316 NORTH 26TH, BILLINGS, MONTANA.

IT IS ORDERED:

1. That the Debtor shall be granted authority to use cash collateral in substantial conformance with the categories and amounts budgeted for the remainder of December 2006 and for the month of January 2007 as set forth in the Revised Budget filed by Debtor on December 3, 2006, and admitted into evidence as Debtor's Exhibit 11, at the December 5, 2006 hearing and attached as Exhibit 1 to this Court's Order, dated December 8, 2006 (doc. # 124) that is identical

to Exhibit 4 admitted into evidence on December 19, 2006.

2.  This Order Allowing Use of Cash Collateral shall automatically expire on January 31, 2007, unless specifically continued either by agreement of the parties or by further Court order. As set forth above Debtor shall file a motion to extend the cash collateral agreement through February 2007 on or before January 16, 2007, and a hearing on such motion and any objections thereto shall be held on **Tuesday, January 23, 2007, at 10:00 a.m.**, in the 5TH FLOOR COURTROOM, FEDERAL BUILDING, 316 NORTH 26TH, BILLINGS, MONTANA.

3.  Hyundai has and shall continue to have a security interest in all inventory, equipment, fixtures, accounts and general intangibles and the proceeds thereof, acquired by Debtor during the pendency of this Case, including, without limitation, all Inventory, all Replacements, all Trade-ins, the Dealer Agreement, the proceeds of sale of Debtor's interest in the Franchise, and Trust Accounts A, B, C and D, which security interest shall be effective from and after the Date of Bankruptcy. The security interest granted herein shall be identical to and shall enjoy the same priority as that security interest granted to Hyundai under the terms of the Loan Agreement and shall be evidenced by this Order and the Loan Agreement; provided, that the Debtor shall execute and Hyundai may file such motions, notices, additional security agreements, control agreements and financing statements as Hyundai deems necessary to fully comply with 11 U.S.C. § 552(b) and Mont. Code Ann. § 30-9-101, *et seq.*, during the pendency of this Case. This provision does not alter or prejudice the rights of any auction entities alleging reclamation claims involving any auction vehicles, which claims are subject or may be subject to adversary proceedings and which will be determined by subsequent order of this Court.

4. That the deposit of funds in the established trust accounts A, B, C, D and E shall

continue as described previously in the hearings, the exhibits and the pleadings filed with the Court, including Debtor's Exhibit 5 admitted into evidence, and attached as Exhibit 2 to this Court's Order dated December 8, 2006.

    5. That Debtor's profit shall be transferred from Trust Accounts A, B, C, or back to Debtor-in-Possession Account –two times per week.  Factory receivables shall reimburse Account A or Account C when received.  Profit shall be defined as the difference between the total sales proceeds (cash, loan and/or trade-in) received for each vehicle transaction less the particular October 17, 2006, inventory valuation, List A and List B as admitted as Exhibits 1 and 2 at the hearing held on November 6, 2006, and any additional cost associated with the sale of the vehicle.  Moneys received by the Debtor from the Debtor from Dealer incentives, co-ops and other receivables shall be deposited in the D.I.P. Account.

    6. After the above transactions are completed, Trust Account A and Trust Account B shall continue to be operated to purchase replacement inventory as previously described in the Hearings, the Exhibits and Pleadings filed with the Court.

    7. Additionally, the Profits as previously defined in paragraph (5) above shall continue to be transferred and deposited as previously outlined.

    8. All Trust Accounts shall have the signatories only of Kenneth C. Cornelison and Zsaneece L. Gutierrez, who shall also sign all Debtor-in-Possession checks for the Debtor-in-Possession approved expenses.

    9. Transfer of Title, certificates of title and MSOs for all vehicle Inventory, including Trade-ins, Replacements, shall be delivered to and held in trust by Debtor's Local Counsel, Clarke B. Rice ("Local Counsel"). Debtor shall provide Hyundai with such information regarding each proposed sale of vehicle Inventory, Trade-ins and Replacements as may require,

including, without limitation, a completed deal sheet in form filed with the Court and Hyundai and evidence that the purchase price has been actually received and has been deposited in good funds in the Trust Account designed for receipt of such proceeds as set forth in the Procedure sheet as attached as Exhibit A. Such information shall be transmitted by facsimile or electronic mail to

Mr. Dale Ueno at (714) 965-7012 or dueno@hmausa.com4 or, in his absence, Mr. Caleb Cottam at (714) 965-3374 or ccottam@hmausa.com. Alternatively, such documents may be hand-delivered to Mr. Ueno or Mr. Cottam. Local Counsel is authorized to release titles or MSOs in connection with proposed sales only upon Hyundai's written approval thereof which Hyundai shall use its best efforts to transmit to the Manager by facsimile or electronic mail within four (4) business hours of receipt of Debtor's request.

10. Debtor shall provide Hyundai each of the following items of information and reports during the pendency of this Case.

> A. When Hyundai deems it necessary, in its sole discretion and without prior notice, Debtor shall provide access to Debtor's places of business in Billings, Montana, at any time during normal business hours during the pendency of this Case, (I) for physical inventories of Hyundai's collateral, and (ii) for review of all "deal jackets", sources, amounts of funding and other information as permitted by the Loan Agreement. Nothing herein shall obligate Hyundai to conduct any inspection and/or audit of such inventory and/or documents.
>
> B. Debtor shall provide Hyundai daily by electronic mail with records of its sales, bank deposits slips and cash payments and with such additional records as may be reasonably requested by Hyundai in writing, or orally, whether in person or by

telephone.

C. Debtor shall provide Hyundai, during the pendency of this Case, with copies of all financial reports and/or statements required to be filed with the Court or served on any creditor, including but not limited to, all income and expense or profit and loss statements, all balance sheets, updated monthly inventories, all listings of account receivable and/or accounts payable as listed on page (1) of the Debtor's Financial Statement, including, without limitation, any prior liens and amounts owed on sold vehicles or Trade-ins, and all statements relating to employee compensation and/or payroll, taxes paid or held as listed on page (2) of the Debtor's Financial Statement.

D. Debtor shall promptly upon receipt provide to Hyundai copies of all bonafide offers to purchase the Debtor or Debtor's assets outside the ordinary course of business.

E. Hyundai shall have the right to inspect, as it deems necessary and upon reasonable notice to Debtor and with the capability of the Debtor's personnel, all of Debtor's accounting records to verify the accuracy of Debtor's accounting information and practices, and not to harass or confound Debtor. In the event any dispute arises as to what is reasonable notice, the Court is to be contacted for an emergency hearing and the Court will determine what is reasonable.

F. Debtor shall immediately provide to Hyundai information on all prepetition and postpetition sales and unpaid liens on Trade-ins, as of November 6 and November 7, 2006, including the names of the buyers and lien holders and the amounts of the unpaid liens.

11. Ken C. Cornelison ("Manager") shall serve as general manager of the Debtor. Manager and Zsaneece L. Gutierrez shall be the only persons authorized to sign checks on behalf of the Debtor during the pendency of this case. R. Nick Gutierrez shall not participate in the management of the Debtor during the pendency of this case. R. Nick Gutierrez shall not receive any salary and benefits from and after the date he conveyed his interests in Debtor to his wife, Zsaneece L. Gutierrez, except as may be authorized by Court Order after notice and hearing.

12. Every month, approximately on the 15th day, a printed recap of actual monthly expenses for the previous month, prepared in conformance with Exhibit 1 attached hereto, shall also be forwarded to Hyundai and any other auction creditors requesting recap. The first printed recap of actual monthly expenses from the date of filing this case until December 1, 2006, shall be forwarded to Hyundai and any other auction creditors requesting it on or before December 15, 2006. The January 15th printed recap shall cover the period of time from December 1, 2006, through December 31, 2006. Debtor shall provide to the United States Trustee all required reports pursuant to the time periods established by that office.

13. Debtor shall provide to Hyundai and the auction entities all information requested by such entities regarding outstanding liens on any trade-in vehicles and any payments made on such liens and any other pertinent information. The Court expects that such information has already been voluntarily exchanged from Debtor to Hyundai and the auction entities.

14. Except as modified herein, all prior stipulations arising in this case and in all adversary proceedings involving Debtor, signed by the parties and approved by this Court are fully enforceable.

BY THE COURT

*Ralph B. Kirscher*
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana