1   Doug James (#2237)
    MOULTON, BELLINGHAM, LONGO
2     & MATHER, P.C.
    27 North 27th Street, Ste 1900
3   P. O. Box 2559
    Billings, Montana 59103-2559
4   Telephone (406) 248-7731

5         Attorneys for United Car Care, Inc.

6                   IN THE UNITED STATES BANKRUPTCY COURT
7                        FOR THE DISTRICT OF MONTANA

8   IN RE                          |          No. 06-60855-RBK-11
9                                  |              (Chapter 11)
    INCREDIBLE AUTO SALES, LLC     |
10                                 |          **UNITED CAR CARE'S**
                          Debtor.  |       **WITNESS AND EXHIBIT LIST**
11                                 |

12        Creditor United Car Care, Inc. may call the following witnesses and present the

13   following exhibits at the hearing on the above-referenced matter now set for February 26,

14   2007, at 9 o'clock a.m. on United Car Care, Inc.'s Motion for relief from the automatic stay.

15   **WITNESSES**

16        1.    William J. O'Connor, II, O'Connor and O'COnnor, P.C., 208 North Broadway,

17              Suite 412, Billings, MT 59101

18        2.    R. Nick Gutierrez

19   **EXHIBITS**

| Exh. No. | Date Submitted | Date Admitted | Legal Ground for Objection | Description |
|----------|----------------|---------------|----------------------------|-------------|
| 1        |                |               |                            | Incredible Auto Sales, LLC Complaint dated May 23, 2005 |

| 2 | | | | United Car Care's Amended Answer, Counterclaim and Third Party Claim |
|---|---|---|---|---|
| 3 | | | | *Pro hac vice* Order admitting Mark C. Willis of Kutak, Rock LLP of Denver, CO to represent Incredible Auto Sales, LLC and Incredible Chevrolet |

Grounds for Objection

| | | | |
|---|---|---|---|
| 1 | No objection: admissibility stipulated | 6. | Insufficient Foundation (revelancy, personal knowledge, authenticity) |
| 2. | Irrelevant | 7. | Unduly time consuming, prejudicial, confusing or misleading |
| 3. | Hearsay | 8. | Other (specify) |
| 4. | Best evidence | | |
| 5. | Inadmissible opinion | | |

DATED this 21st day of February, 2007.


MOULTON, BELLINGHAM, LONGO
& MATHER, P.C.


By /s/ *Doug James*
       DOUG JAMES
Attorneys for United Car Care, Inc.

2

COPY

CLERK OF THE
DISTRICT COURT
LAURA A. BRENT

2005 MAY 23 PM 2 28

FILED

BY _____ €

DEPUTY

WILLIAM J. O'CONNOR II
O'CONNOR & O'CONNOR, P.C.
208 North Broadway, Suite 412
Billings, MT 59101
406-252-7127
Attorney for Plaintiffs

## MONTANA THIRTEENTH JUDICIAL DISTRICT
## YELLOWSTONE COUNTY

| IN RE THE MATTER OF: | CAUSE NO. DV 05-0575 |
|---|---|
| INCREDIBLE AUTO SALES, LLC and INCREDIBLE CHEVROLET, Plaintiffs, | JUDGE G. TODD BAUGH |
| | COMPLAINT |
| vs. | |
| UNITED CAR CARE, INC., a Colorado Corporation, Defendant. | |

Comes now Incredible Auto Sales, LLC., a Montana Limited Liability

Company, (Incredible Auto) and Incredible Chevrolet, Plaintiffs, and for their

complaint against United Car Care, Inc. (United), Defendant, states as follows:

1. That Incredible Auto Sales, LLC is a Montana Limited Liability
   Company, and Incredible Chevrolet is a registered business name, both
   doing business in Yellowstone County Montana.

2. That on January 24, 2001, Incredible Auto entered into a "Dealer
   Agreement" with Defendant, United.

- 1 -


EXHIBIT ___/___

3. That on February 1, 2002, Incredible Chevrolet entered into a "Dealer Agreement" with United.

4. That on January 24, 2001, Incredible Auto entered into an "Amendment to Dealer Agreement" with United.

5. That each of these agreements was negotiated and signed in Billings, Yellowstone County, Montana.

6. That pursuant to the above agreements, Incredible Auto and Incredible Chevrolet sold, on behalf of United, service plans for automobiles. and United was to pay to both Incredible Auto and Incredible Chevrolet, a contingent commission of "100% of net earned underwriting profits, and 100% of investment income on net reserves" for Incredible Auto's previous 12 months service contract business, also referred to as "retrocession commissions."

7. That pursuant to the above agreement United advanced funds against these "retrocession commissions" both due and owing and future commissions.

8. That Incredible Auto sold such service plans to third parties, and did receive payment from United certain funds in payment of its Retrocession Commissions, but additional funds are due and payable by United to Incredible Auto, which have not been paid, in the approximate amounts of Six Hundred Twenty Thousand, Eight Hundred Fifty Seven Dollars and 47 cents.

9. That on December 17, 2004 the parties entered into an agreement acknowledging the above agreements and reaffirming the agreement between the parties, as well as continuing the arrangement into the future.

10. That United has, and continues to refuse to make the payments to Incredible Auto and Incredible Chevrolet required under the agreements and is in breach thereof.

WHEREFORE, Incredible Auto, LLC and Incredible Chevrolet. request

judgment of this court against United Car Care as follows:

1. A full accounting of funds which were transmitted pursuant to the Agreement.

2. For Judgment in an amount of Six Hundred Twenty Thousand, Eight Hundred and Fifty Seven Dollars and 47 Cents.

Dated this 23rd day of May 2005.

William J. O'Connor II
Attorney for Plaintiffs

- 3 -

COPY

CLERK OF THE
DISTRICT COURT
LAURA A. BRENT

2006 JUN 22 PM 4 29

FILED

BY _____
DEPUTY

1  | SCOTT D. SWEENEY, ESQ.
   | Oster Martin & Faber, LLC
2  | 370 17th Street, Suite 4400
   | Denver, CO 80202
3  |
   | DOUG JAMES
4  | Moulton, Bellingham, Longo
   |   & Mather, P.C.
5  | Suite 1900, Sheraton Plaza
   | P.O. Box 2559
6  | Billings, MT 59103-2559
   | Telephone (406) 248-7731
7  |
8  |     Attorneys for United Car Care, Inc.

9

10  MONTANA THIRTEENTH JUDICIAL DISTRICT COURT, YELLOWSTONE COUNTY

11  INCREDIBLE AUTO SALES, LLC and                 Cause No. DV-05-0575
12  INCREDIBLE CHEVROLET,
                                                    Judge G. Todd Baugh
13                            Plaintiffs,

14            -vs-                                  AMENDED ANSWER,
                                                    COUNTERCLAIMS
15  UNITED CAR CARE, INC.,                          AND THIRD PARTY CLAIMS
    a Colorado corporation,
16
                              Defendant,
17
              -vs-
18
    R. NICK GUTIERREZ,
19
                          Third Party Defendant.
20

21      Defendant United Car Care, Inc., through its attorneys of record Moulton,

22  Bellingham, Longo and Mather, P.C., and Oster Martin & Faber, LLC, hereby amends its

23  answer previously filed and asserts counterclaims and third party claims as follows:

24      1.      Defendant is without sufficient information or knowledge to form a belief as

25  to the truth of the allegations contained in paragraph 1 and therefore denies the same.

        2.      Admit.

EXHIBIT  2

MOULTON, BELLINGHAM, LONGO & MATHER, P.C.

3.      Admit.

4.      Defendant admits that on one or more occasions Incredible Auto and UCC entered into Amendments to the Dealer Agreement but denies that one was entered into on January 24, 2001.

5.      Defendant is without sufficient information or knowledge to form a belief as to the truth of the allegations contained in paragraph 5 as it pertains to Plaintiffs, and therefore denies that portion of paragraph 5, but for their part Defendant negotiated and signed the Agreements in Arapahoe County, Colorado.

6.      Defendant admits that Plaintiffs sold service plans for automobiles on behalf of UCC, but denies the remainder of the allegations in paragraph 6.

7.      Defendant admits that funds were advanced to Plaintiffs, but denies the remainder of the allegations in paragraph 7.

8.      Defendant admits that Plaintiff sold UCC service plans to third parties and was given credit for a portion of those sales as payment against outstanding debt arising out of the funds advanced to Plaintiffs by Defendant.  Defendant denies the remainder of the allegations in paragraph 8.

9.      Defendant admits that on December 17, 2004 it entered into an agreement with Incredible Auto Sales Inc. and Incredible Chevrolet (collectively, the "Incredible Group").  The remainder of the allegation in paragraph 9 is vague in that it does not specifically enumerate what Plaintiff is referring to by alleging that the parties were "continuing the arrangement into the future," and as such, the remainder of the allegations in paragraph 9 are denied.

2

10.    Denied.

Defendant denies every allegation, averment, or statement or conclusion of law to which a response is required which is not expressly admitted above.

### AFFIRMATIVE DEFENSES

11.    Plaintiffs' Complaint fails to state a cause of action against Defendant upon which relief may be granted.

12.    Plaintiffs' claims are barred by the applicable statute of limitations.

13.    Plaintiff has breached its contractual obligations owed to Defendant, and as such, is not entitled to recover damages.

### COUNTERCLAIMS AND THIRD PARTY CLAIMS

### PARTIES

1.    United Car Care Inc. ("UCC") is a Colorado corporation with its principal place of business located in Greenwood Village, Colorado.  Among other things, UCC is in the business of issuing various repair and service protection plans to vehicle purchasers.  The plans are referred to as Vehicle Service Contracts ("VSC's") and are distributed through a network of independent contractors to auto dealerships.

2.    Incredible Auto Sales, Inc. is a Montana corporation with its principal place of business located in Billings, Montana.

3.    Incredible Chevrolet is a Montana automobile dealership with its principal place of business located in Billings, Montana.

4.    R. Nick Gutierrez ("Gutierrez") is an individual who resides in Billings, Montana.  Gutierrez is the owner, the principal officer, director and sole member and/or

3

shareholder of Incredible Auto Sales, Inc. (also referred to by Gutierrez as "Incredible Auto Sales, LLC") and Incredible Chevrolet. Collectively, those entities are referred to hereafter as "Incredible" or "IG".

## FACTUAL ALLEGATIONS

5.     In 2001, Incredible began marketing UCC VSC's to its customers pursuant to a series of written agreements between UCC and Incredible.

6.     In December, 2004, UCC and Incredible entered into two related agreements, similar to previous contracts, whereby Incredible would sell UCC VSC's to its automobile purchasing customers.  On December 17, 2004, UCC and Incredible signed a Dealer Agreement (the "Agreement"), *attached hereto as Exhibit A,* and on December 22, 2004, they signed an Amendment to Dealer Agreement ("Amended Agreement"), *attached hereto as Exhibit B*.  The Agreement and the Amended Agreement are collectively referred hereafter to as the "Agreements."

7.     In the Agreement, Incredible agreed that it would sell four hundred (400) net VSC's between February 1, 2005 and January 31, 2006.  The term "net" is defined as the total number of VSC's minus those that are written and later cancelled.  The term "net" also excludes "Certified Plan VSC's".

8.     As consideration for the promise to sell four hundred (400) net VSC's between February 1, 2005 and January 31, 2006, Incredible received several benefits and incentives.  Paragraph 1 of the Agreement provided that UCC, as creditor, would loan $144,000.00 to Incredible (the "Loan").  Interest on the Loan accrued at a rate equal to the "Overnight Rate" as published by the Wall Street Journal, plus 1.5% compounded monthly.

4

9.     Consistent with prior dealings, upon selling a VSC, Incredible would remit the proceeds to UCC, less its commission earned.  Paragraph 2 specified that Incredible would pay UCC an additional $150.00 per VSC sold until the entire Loan balance and interest were repaid.

10.     Paragraph 3 of the Agreement provided that UCC would sign Incredible to a Profit Enhancement Agreement ("PEA") which would become effective as of January 1, 2005, with a minimum production requirement of 250 net VSC's.  The PEA would allow Incredible the opportunity to share in underwriting profits earned after January 1, 2005 provided that the minimum number of VSC's were sold.

11.     Pursuant to paragraph 5 of the Agreement, if Incredible sold 400 net VSC's between February 1, 2005 and January 31, 2006, its entitlement to share in underwriting profits would be retroactive to include underwriting profits earned in 2001, 2002, 2003, and 2004.

12.     While Incredible was entitled to participate in the underwriting profit sharing each year beginning in 2005 upon reaching 250 VSC's sold, paragraph 3 in no way modified or altered Incredible's obligation to sell 400 VSC's between February 1, 2005 and January 31, 2006.

13.     As part of that PEA, paragraph 4 of the Agreement provided that UCC would advance $56,000.00 to Incredible (the "Advance") to be recouped against future underwriting profit sharing payouts as defined in the Agreement.

14.     On or about December 22, 2004, the parties signed the Amended Agreement

5

captioned "Amendment to Dealer Agreement (Profit Enhancement Agreement)," and UCC delivered $200,000.00 to Gutierrez (the $144,000 loaned pursuant to paragraph 1 of the Agreement, and $56,000 advanced pursuant to paragraph 4 of the Agreement). The Loan and the Advance are jointly referred to hereafter as the "Debt".

15.     Paragraph 6 of the Agreement stated that if for any reason less than 400 net VSC's were written and paid for by Incredible to UCC between February 1, 2005 and January 31, 2006, that there would be no retroactive underwriting profit sharing agreement among the parties, and the $56,000.00 Advance would be deemed an advance on underwriting profit sharing for the year 2005 and beyond.

16.     Paragraph 6 of the Agreement stated that if Incredible failed to sell 400 net VSC's between February 1, 2005 and January 31, 2006, that the net Loan balance including accrued interest was to be paid to UCC on February 28, 2006.

17.     Pursuant to paragraph 1 of the Agreement, Gutierrez personally guaranteed payment on the Loan.

18.     Incredible did not sell 400 VSC's between February 1, 2005 and January 31, 2006.

19.     After January 31, 2006, the business relationship between UCC and Incredible ended.

20.     By letter to counsel for Incredible dated February 20, 2006 UCC reminded Incredible that it had not met the 400 VSC minimum sales requirement and that repayment on the outstanding Loan was due February 28, 2006.

21.     Incredible did not repay the Loan by February 28, 2006.

6

22.     To date, both the money given as an Advance and the money given as a Loan remain outstanding and Incredible has refused to refund that money.

23.     By virtue of Gutierrez' personal guaranty, Gutierrez is herein named as Third Party Defendant, and is personally liable to UCC for Incredible's breach of its obligations under the terms of the Agreements.

### FIRST COUNTERCLAIM FOR RELIEF
### (Breach of Contract)

24.     UCC incorporates by reference herein the allegations in paragraphs 1 through 23 above.

25.     UCC loaned $144,000 to Incredible in exchange for Incredible's promise to sell 400 VSC's.

26.     UCC advanced $56,000 to Incredible to be recouped against future underwriting profits.

27.     Incredible failed to sell the number of VSC's it was required to sell under the Agreement.

28.     In light of Incredible's failure to sell the required number of VSC's, Incredible was required to pay back the Loan plus interest by February 28, 2006. Incredible failed to pay back the Loan.

29.     Incredible retains possession of $56,000 given as an advance on future underwriting profits.

30.     Given the termination of the Agreement between the parties, the $56,000 cannot be recovered against future underwriting profits.

31.     Incredible has failed to return the money advanced.

7

32.     By virtue of the foregoing conduct, Incredible has breached the Agreement and is liable to UCC for the Debt.

33.     All conditions precedent have been performed, have occurred, or have been waived.

34.     Incredible's actions caused UCC to suffer damages and as a direct and proximate result thereof, UCC suffered substantial loss in an amount to be proven at trial.

**FIRST CLAIM FOR RELIEF AGAINST THIRD PARTY DEFENDANT**
**(Breach of Personal Guaranty)**

35.     UCC incorporates by reference herein the allegations in paragraphs 1 through 34 above.

36.     By virtue of the foregoing conduct, Incredible breached the Agreement and is liable to UCC for the Debt.

37.     Incredible failed to repay the Debt as indicated above.

38.     By personally guaranteeing Incredible's performance under the Agreements, Gutierrez is personally liable to UCC for the Debt.

39.     Gutierrez has failed to repay the Debt as the personal guarantor.

40.     By failing to repay the Debt, Gutierrez has breached his obligation as the personal guarantor.

41.     All conditions precedent have been performed, have occurred, or have been waived.

42.     As a direct and proximate consequence of Gutierrez' breach, UCC has suffered damages and substantial loss in an amount to be proven at trial.

WHEREFORE, Defendant UCC hereby prays for Judgment in its favor and against

8

1  Plaintiff Incredible and Third Party Defendant Gutierrez for all damages established at trial,

2  together with all pre- and post-judgment interest as permitted by law, costs of this litigation

3  including attorney's fees, and such other and further relief as the Court deems just and

4  proper in the circumstances.

5       Dated this 22nd day of June, 2006.

6

7                                MOULTON, BELLINGHAM, LONGO
8                                & MATHER, P.C.

9

10                           By _____
11                                DOUG JAMES

12

13

14               **CERTIFICATE OF SERVICE**

15

16       This is to certify that on this 22 day of June, 2006, a copy of the foregoing  was
    served upon the following by depositing a true and correct copy thereof in the United
17  State mail, postage prepaid, addressed to:

18       William J. O'Connor, II
         O'Connor & O'Connor, PC
19       208 N. Broadway, Suite 412
         Billings, MT 59101
20

21

22                           _____
                                  DOUG JAMES
23

    F:\Users\MJensen\United Car Care\Pleadings\amend answer.wpd
24

25

                                9



This Agreement is entered into on this 17TH day of DECEMBER _____, 2004, between Incredible Auto Sales, Inc. 1832 King Avenue West, Billings MT 59101, Incredible Chevrolet, 16 West 3rd Street, Hardin MT 59034, collectively referred to as the Incredible Group ("IG"), and United Car Care, Inc., 6501 S. Fiddlers Green Circle, Suite 610, Greenwood Village CO, 80111 ("UCC")

Effective the 17th day of DECEMBER _____, 2004, UCC and IG agree to the following:

In return for IG's agreement that it will sell a minimum of four hundred (400) net UCC Vehicle Service Contracts ("VSC's"), between February 1, 2005 and January 31, 2006 (net UCC VSC's shall be defined as VSC's, excluding Certified Plan VCS's, written and paid for to UCC minus VSC cancellations),

1.  UCC ("Creditor") will Loan one hundred forty four thousand dollars ($144,000.00) to IG. Interest on the Loan will accrue and be due UCC based upon the Wall Street Journal Overnight Rate plus 1.5%, compounded monthly. All owners of IG ("Guarantor") unconditionally, both corporately and personally, guarantee payment of the Loan plus accrued interest ("Indebtedness"), including in the event of dissolution, insolvency or business failure, or any assignment for benefit of creditors by, or commencement of any bankruptcy, reorganization, arrangement, moratorium of other debtor relief proceeding by or against Creditor or Guarantor, or by the appointment of a receiver for, or the attachment, restraint of or levying of any order of court or legal process affecting the property of Creditor of Guarantor.

2.  IG will continue to over-remit one hundred fifty dollars ($150.00) per UCC VSC to UCC. UCC will directly apply these funds to the outstanding IG Loan balance due until the entire Loan, plus interest, has been completely paid.

3.  UCC will sign IG to a Profit Enhancement Agreement ("PEA") effective January 1, 2005, with a minimum production requirement of two hundred fifty (250) net UCC VCS's to qualify for "OPTION A".

4.  Prior to January 1, 2005, UCC will Advance fifty six thousand dollars ($56,000.00) to IG against future PEA payouts defined in #5 and #6 below.

EXHIBIT
A

IG Intials _____

Page 1 of 3

UCC Initials _____



5. Provided four hundred (400) or more net UCC VSC's are written and paid for by IG to UCC between February 1, 2005 and January 31, 2006,

   a. UCC will retroactively sign IG to a Profit Enhancement Agreement ("PEA") and will honor the agreement based upon a signup date of January 1st, 2001. For the years 2001, 2002, 2003, and 2004, UCC will waive the minimum production requirements under the PEA, and will consider IG to have qualified for the "OPTION A" payout in 2001, 2002, 2003, and 2004. It is understood, and agreed, that the retrocession commission of fifty five thousand one hundred seventy nine and 69/100 dollars ($55,179.69), already paid to IG, and the fifty six thousand dollars ($56,000.00) Advance defined in #4 above, will be considered payouts made under "OPTION A" of the PEA.

   b. UCC will apply future retrocession commission payouts to the outstanding IG Loan balance due until the entire Loan, plus interest, have been completely paid, at which time any excess payout amounts, if any, and all subsequent PEA payouts, if any, will be paid to IG.

   c. The net Loan balance due UCC (should one exist), will be carried forward to the next year.

6. If, for any reason, less than four hundred (400) net UCC VSC's are written and paid for by IG to UCC between February 1, 2005 and January 31, 2006,

   a. It is understood, and agreed, that there is no PEA in place covering any period prior to January 1, 2005, and as such, no PEA payments covering that period have been, nor will be, made. It is further understood, and agreed, that under these conditions, the Advance defined in #4 above is an advance on PEA payments covering year 2005 and beyond.

   b. UCC will apply future retrocession commission PEA payouts for year 2005 and beyond, to repay the Advance defined in #4 above. Any excess payout amounts, if any, will be paid to IG.

   c. By February 28, 2006, IG will repay the net Loan balance, including accrued interest, due UCC (should one exist).

7. Except for the specifically stated terms of this Agreement, all other terms and conditions of the DEALER AGREEMENT and PEA remain fixed and as stated therein.

IG Initials

UCC Initials



By signing below, I confirm that I have the authority to act on behalf of the parties to this Agreement and that I have read and agree to all of the terms and conditions of this Agreement.

IG (On behalf of all dealerships stated above)        UNITED CAR CARE, INC.

By: _____                By: _____
            (Signature)                                      (Signature)

_____                    Daniel J. McNellis, President
      CEO
     (Print name and Title)

_____                    _____
      12-21-04                                   12.17.04
          (Date)                                     (Date)



### Amendment To Dealer Agreement
### (Profit Enhancement Agreement)

Referencing the Dealer Agreement, ("DEALER AGREEMENT") dated the _____ day of _1/24/2001 + 2/1/2002_, 200___, entered into by and between UNITED CAR CARE, INC., 6501 S. Fiddlers Green Circle, Suite 610, Greenwood Village, CO 80111, OR (Previous address) 3131 S. Vaughn Way, Suite 410, Aurora, CO ("ADMINISTRATOR") and _INCREDIBLE AUTO SALES + INCREDIBLE CHEVROLET_ ("DEALER"), Effective _1/1/2005_ ADMINISTRATOR and DEALER agree that the DEALER AGREEMENT is hereby changed and amended as follows:

**ADDITIONAL OBLIGATIONS:**

1. *Contingent Commission:* Notwithstanding anything in the DEALER AGREEMENT to the contrary, as long as the DEALER AGREEMENT continues in force, and subject to the sales quota requirement as provided herein below;

2. ADMINISTRATOR agrees to pay DEALER eligible contingent commission based upon DEALER election of Option A or Option B as listed below on net written (after cancellation) ADMINISTRATOR service contract business (Certified Plan service contracts excluded) for that year only. Once the election is made, it is binding and irrevocable by DEALER and ADMINISTRATOR for the duration of all contracts written during that 12 month period. For each 12 months of written business, DEALER will make an election (subject to the established net written service contract minimum) of either Option A or Option B. ADMINISTRATOR will notify DEALER within 90 days following the end of each 12 month period of DEALER's responsibility to provide written notification to ADMINISTRATOR of their election of either Option A or Option B. Once notification is received from DEALER, a check will be generated within 10 business days.

#### OPTION A

ADMINISTRATOR agrees to pay DEALER 100% of net earned underwriting profits, and 100% of Investment income on net reserves for DEALER's previous 12 month's service contract business. Earned loss ratio must not exceed 100% using ADMINISTRATOR'S method of earning reserves in accordance with industry-accepted standards to receive either underwriting profit or investment income. Said 12 month service contract business will continue to pay out as outlined above until all contracts are fully earned. If DEALER ceases writing ADMINISTRATOR contracts for a period of 60 days, or if the Dealer Agreement is canceled by either party, all earned underwriting profits and investment income will then be held by ADMINISTRATOR until all contracts are fully earned, then only all unconsumed earned underwriting profits will be paid in full to DEALER. A minimum of 250 net vehicle service contracts (Certified Plan service contracts excluded) must be written during the 12 month period to elect this option.

#### OPTION B

ADMINISTRATOR agrees to pay DEALER after a 12 month period, an amount determined by net written ADMINISTRATOR service contract business (see net written/amount below) provided DEALER's net loss ratio does not exceed 125% and DEALER's gross loss ratio does not exceed 30% at the end of that 12 month period. Election of this option irrevocably waives all DEALER rights to all underwriting profits and investment income on the business written for that year. A minimum of 150 net service contracts (Certified Plan service contracts excluded) must be written during the 12 month period to elect this option.

| 12 Month Net Written | Amount |
|---|---|
| 150 - 300  Administrator Net Service Contracts | $ 15 Paid Per Service Contract |
| 301 - 500  Administrator Net Service Contracts | $ 25 Paid Per Service Contract |
| 501 - 1000 Administrator Net Service Contracts | $ 40 Paid Per Service Contract |
| 1001 - 1500 Administrator Net Service Contracts | $ 55 Paid Per Service Contract |
| 1501 - 2000 Administrator Net Service Contracts | $ 70 Paid Per Service Contract |
| 2001 - 2500 Administrator Net Service Contracts | $ 85 Paid Per Service Contract |
| 2501 – UP Administrator Net Service Contracts | $100 Paid Per Service Contract |

3. ADMINISTRATOR reserves the right to suspend, modify or terminate this Profit Enhancement Program at any time. All commitments as stated herein, made prior to suspension, modification or termination of this program will be honored in their entirety.

4. Except as expressly amended by this Agreement, all of the other terms and conditions of the DEALER AGREEMENT shall be and remain as fixed and stated therein.

DEALER:

_INCREDIBLE AUTO SALES · INCREDIBLE CHEVROLET_

By: _____
(Signature)

Title: _CEO_

Date: _____

ADMINISTRATOR:

UNITED CAR CARE, INC.

By: _____
(Signature)

Title: ____President____

Date: _12·22·04_

**EXHIBIT**
**B**



## Oster Martin & Faber, LLC

Attorneys and Counselors at Law

SCOTT D. SWEENEY

E-mail: ssweeney@omf-law.com

February 20, 2006

***Via Facsimile 406-252-7059***
William J. O'Connor, II
O'Connor & O'Connor PC
208 N. Broadway, Suite 412
Billings, MT 59101

Re:    Incredible Auto Sales v. United Car Care, Inc.

Dear Mr. O'Connor:

This correspondence is in reference to the contract entered into on December 17, 2004 between the Incredible Group ("Incredible") and United Car Care Inc. ("UCC") and the amendment to that agreement done December 22, 2004.

As you are aware UCC loaned Incredible $144,000.00 with interest accruing based upon the Wall Street Journal overnight rate plus 1 ½ % compounded monthly, and also advanced Incredible $56,000.00 against future profit enhancement agreement payouts as defined in the contract. Pursuant to the terms of the contract, if for any reason, fewer than 400 net UCC vehicle contracts were written and paid for by Incredible to UCC between February 1, 2005 and January 31, 2006, Incredible was to repay to UCC both the profit enhancement agreement advance of $56,000.00 and the net loan balance by February 28, 2006.

Records indicate that Incredible wrote 14 vehicle service contracts between February 1, 2005 and January 31, 2006. As such, the balance due on the loans by February 28, 2006 is $213,809.45. Attached for your review is a spreadsheet which outlines your client's obligation to repay the loans. Accordingly please assure that your client remits that payment to UCC by February 28, 2006.

If you have any questions please do not hesitate to call.

Very truly yours,

OSTER MARTIN & FABER, LLC

Scott D. Sweeney
SDS/cjc

EXHIBIT
C

717 Seventeenth Street       •       Suite 1475       •       Denver, CO 80302

William J. O'Connor, ...
February 20, 2006
Page 2

Cc:    Doug James
        Bernie Radochonski
        Dan McNellis
        Dave Matthews

9:09 AM, 2/20/2006, BSR

**UCC**
**Auto Pro, WSJ + 1.5%**

|  | Principal | Interest | Payments | Total Paid | Int. Bal. | Payment Date |
|---|---|---|---|---|---|---|
| 12/31/04 | 200,000.00 | - | 4,492.96 | 4,492.96 | 195,507.04 | 1-Jan |
| 01/31/05 | 195,507.04 | 1,162.33 | 641.26 | 1,803.59 | 194,865.78 | 1-Feb |
| 02/28/05 | 194,865.78 | 1,083.77 | (606.41) | 477.36 | 195,472.19 | 1-Mar |
| 03/31/05 | 195,472.19 | 1,203.63 | 447.34 | 1,650.97 | 195,024.85 | 1-Apr |
| 04/30/05 | 195,024.85 | 1,202.21 | (1,140.91) | 61.30 | 196,165.76 | 1-May |
| 05/31/05 | 196,165.76 | 1,249.55 | (1,249.55) | - | 197,415.31 | 1-Jun |
| 06/30/05 | 197,415.31 | 1,257.51 | (1,257.51) | - | 198,672.82 | 1-Jul |
| 07/31/05 | 198,672.82 | 1,307.70 | (1,307.70) | - | 199,980.52 | 1-Aug |
| 08/31/05 | 199,980.52 | 1,358.77 | (1,358.77) | - | 201,339.29 | 1-Sep |
| 09/30/05 | 201,339.29 | 1,323.87 | (1,323.87) | - | 202,663.16 | 1-Oct |
| 10/31/05 | 202,663.16 | 1,463.06 | (1,463.06) | - | 204,126.23 | 1-Nov |
| 11/30/05 | 204,126.23 | 1,426.09 | (1,426.09) | - | 205,552.31 | 1-Dec |
| 12/31/05 | 209,222.18 | 1,554.84 | (1,554.84) | - | 210,777.02 | 1-Jan |
| 01/31/06 | 210,777.02 | 1,566.39 | (1,566.39) | - | 212,343.41 | 1-Feb |
| 02/28/06 | 212,343.41 | 1,466.04 | (1,466.04) | - | 213,809.45 | 1-Mar |

|  |  |  |  |  |
|---|---|---|---|---|
| | $ 18,625.76 | $ (10,139.58) | $ 8,486.18 | |

| | Total Paid | | | |
|---|---|---|---|---|
| 12/31/04 | 4,492.96 | | | |
| 01/31/05 | 1,803.59 | $56,473.45 2004 UWP | $ | 56,473.45 |
| 02/28/05 | 477.36 | | | |
| 03/31/05 | 1,650.97 | | | |
| 04/30/05 | 61.30 | | | |
| 05/31/05 | - | | | |
| 06/30/05 | - | | | |
| 07/31/05 | - | | | |
| 08/31/05 | - | | | |
| 09/30/05 | - | | | |
| 10/31/05 | - | | | |
| 11/30/05 | - | | | |
| 12/31/05 | - | | | |
| 01/31/06 | - | | | |
| 02/28/06 | - | | | |

| Amount Paid | $ 8,486.18 |
|---|---|

MONTANA THIRTEENTH JUDICIAL DISTRICT COURT
YELLOWSTONE COUNTY

| | |
|---|---|
| IN RE THE MATTER OF: <br> INCREDIBLE AUTO SALES, LLC and <br> INCREDIBLE CHEVROLET, <br> Plaintiffs, <br><br> vs. <br> UNITED CAR CARE, INC., a Colorado <br> Corporation, <br> Defendant. | Cause No. DV 05-0575 <br> Judge G. Todd Baugh <br><br><br><br><br> **ORDER GRANTING MOTION** <br> **FOR ADMISSION PRO HAC VICE** |

This matter having come to be heard upon motion of Plaintiffs Incredible
Auto Sales, LLC and Incredible Chevrolet,

IT IS HEREBY ORDERED that Mark C. Willis of the law firm of Kutak
Rock LLP, 1801 California Street, Suite 3100, Denver, Colorado 80202, 303-297-
2400, is admitted before this Court *pro hac vice*, for the purpose of participating in
the above captioned matter.

So ordered this _15th_ day of _September_, 2006.

*G. Todd Baugh*
DISTRICT COURT JUDGE

cc:   Mark C. Willis, Esq.
      William J. O'Connor, II, Esq.
      Scott D. Sweeney, Esq.
      Doug James, Esq.

**EXHIBIT** _3_