UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**INCREDIBLE AUTO SALES LLC**,

Debtor.

Case No. **06-60855-11**

# O R D E R

At Butte in said District this 21st day of March, 2007.

In this Chapter 11 bankruptcy, after due notice, a hearing was held March 20, 2007, in Billings on: (1) on the Motion to Convert this bankruptcy to Chapter 7 of the Bankruptcy Code filed by the United States Trustee ("UST") on December 28, 2006, docket entry no. 167, together with the joinder in said Motion filed by Hyundai Motor Finance Company ("Hyundai") on January 4, 2007, docket entry no. 170; (2) Debtor's Emergency Motion to Approve the Contract for the Sale of Assets Pursuant to 11 USC Section 363 of the Bankruptcy Code and to Provide for Upset Bids filed January 7, 2007, docket entry no. 176, together with the objection thereto filed by Kia Motors America, Inc. ("KMA"); (3) conditional approval of Debtor's Amended Disclosure Statement filed March 19, 2007; and (4) the Motion by Debtor Requesting this Court to Surcharge the Two Auto Auctions for the Debtor's Expenses Paid on Auto Auction Vehicles filed February 22, 2007.  No appearance was made at the hearing on behalf of Debtor, but Hyundai was represented by attorney Shane Coleman of Billings, Montana; Auto Auction Associates of Montana, Inc., d/b/a Auto Auction of Montana, a.k.a. Auto Auction of Billings ("Auto Auction") was represented by attorney Bruce F. Fain of Billings, Montana; KMA was

1

represented by attorney Alan C. Bryan of Billings, Montana; the UST was represented by attorney Daniel P. McKay of Great Falls, Montana; and attorney Gary Deschenes of Great Falls, Montana appeared on behalf of Nick Gutierrez, the majority shareholder of Debtor. The Court heard statements from counsel, but no testimony was heard and no exhibits were offered into evidence.

First, on March 10, 2007, Debtor, through counsel, filed a motion to continue the hearing on the UST's motion to convert. Counsel for the UST originally indicated to counsel for the Debtor that the UST would not oppose Debtor's request for a continuance. However, upon learning that business records of the Debtor had been inappropriately removed from Debtor's business premises, the UST promptly filed an objection to Debtor's request for continuance. Based upon the serious allegation of missing business records, the Court denied Debtor's request for a continuance. Although no appearance was made at the hearing on behalf of Debtor, counsel for the UST indicated that he was not opposed to continuing the hearing on his motion for a short period of time. Counsel for the UST stated that he was satisfied that the United States Attorney's Office had the records it needed to further its investigation.[1] Additionally, counsel for the UST recognized that conversion of this case to Chapter 7 may derail the pending sale of Debtor's Kia franchise to Rimrock Chrysler, Inc. ("Rimrock").

Similarly, counsel for KMA requested that the Court continue the final hearing on Debtor's Emergency Motion to Approve the Contract for the Sale of Assets Pursuant to 11 USC Section 363 of the Bankruptcy Code and to Provide for Upset Bids. Counsel for KMA

---

[1] Counsel for the UST filed a Report to the Court shortly after the hearing on March 20, 2007, indicating "that there are certain electronic and paper records of the Debtor at the Debtor's place of business that are not in the custody and control of the U.S. Department of Justice."

represented that KMA was waiting for the final execution of documents necessary for closing the sale of many of Debtor's assets to Rimrock. Counsel was hopeful that the sale would close within days, and like counsel for the UST, acknowledged that conversion of this case to Chapter 7 could possibly terminate Debtor's franchise agreement with KMA. Counsel for Hyundai reiterated the concerns of counsel for the UST and KMA, stating that Hyundai was allowing Debtor to maintain skeletal business operations for the purpose of maintaining Debtor's Kia franchise. Counsel for KMA filed a Status Report shortly after the March 20, 2007, hearing stating that he "was informed that closing is currently set for Wednesday, March 21, 2007, at 2:00 o'clock p.m., in the offices of Chicago Title Insurance Company".

This case cries for conversion. The prior Orders entered by this Court delineate many of the fraudulent activities that occurred in Debtor's operation pre-petition. The recent disappearance of business records appears to this Court to be nothing more than a continuance of Debtor's pre-petition activities. A trustee or some similar person needs to be brought into this case to preserve the few assets that appear to remain and to protect the interests of the creditors.[2] Nevertheless, the Court also appreciates the effort that various creditors are making in an attempt to salvage the potential sales value left in Debtor's assets. Therefore, the Court will continue the hearing on the UST's request for conversion and on Debtor's emergency motion to sell assets. However, the Court reserves the right to schedule the hearing on such matter at any time and on shortened notice, but under no circumstance will such continued hearing be held later than

---

[2] In an Emergency Motion to Use Cash Collateral filed by Debtor on October 26, 2006, Debtor claimed that Hyundai was oversecured by approximately $616,620.42, and Debtor has consistently maintained throughout the pendency of this case that Hyundai was oversecured. In striking contrast, Debtor's Amended Disclosure Statement filed March 19, 2007, more accurately shows that Hyundai is grossly undersecured.

Tuesday, April 3, 2007.

The Court next considered approval of Debtor's Amended Disclosure Statement. Counsel for the Auto Auction indicated that Debtor's counsel had done nothing in Debtor's Amended Disclosure Statement to address his major concerns as outlined in Auto Auction's Objection to Disclosure Statement filed February 21, 2007. The UST likened this case to a rudderless ship and described Debtor's Amended Disclosure Statement as "grossly deficient". The UST did acknowledge that Debtor's Amended Disclosure Statement was a substantial improvement over Debtor's original Disclosure Statement because Debtor's Amended Disclosure provides that creditors can vote on Debtor's plan of liquidation. However, outside of that, the UST proceeded to argue that parts of Debtor's Amended Chapter 11 Plan were completely off the mark. For instance, Debtor provides no detail as to how its remaining assets, after consummation of the sale to Rimrock, will be liquidated. Likewise, Debtor's Amended Disclosure Statement fails to identify how creditors will be paid or if paid, how.

This Court agrees that Debtor's Amended Disclosure Statement is woefully inadequate. With regard to approval of Disclosure Statements:

> Case law under § 1125 of the Bankruptcy Code has produced a list of factors disclosure of which may be mandatory, under the facts and circumstances of a particular case, to meet the statutory requirement of adequate information. Disclosure of all factors is not necessary in every case. Conversely, the list is not exhaustive, and a case may arise in which disclosure of all these enumerated factors is still not sufficient to provide adequate information for the creditors to evaluate the plan.
>
> * * *
>
> Relevant factors for evaluating the adequacy of a disclosure statement may include:
>
> (1) the events which led to the filing of a bankruptcy petition;

(2) a description of the available assets and their value;
(3) the anticipated future of the company;
(4) the source of information stated in the disclosure statement;
(5) a disclaimer;
(6) the present condition of the debtor while in Chapter 11;
(7) the scheduled claims;
(8) the estimated return to creditors under a Chapter 7 liquidation;
(9) the accounting method utilized to produce financial information and the name of the accountants responsible for such information;
(10) the future management of debtor;
(11) the Chapter 11 plan or a summary thereof;
(12) the estimated administrative expenses, including attorneys' and accountant's fees;
(13) the collectibility of accounts receivable;
(14) financial information, data, valuations or projections relevant to the creditors' decision to accept of reject the Chapter 11 plan;
(15) information relevant to the risks posed to creditors under the plan;
(16) the actual or projected realizable value from recovery of preferential or otherwise voidable transfers;
(17) litigation likely to arise in a nonbankruptcy context;
(18) tax attributes of the Debtor; and
(19) the relationship of the debtor with affiliates.

*In re Reilly*, 4 Mont. B.R. 150, 153-54, 71 B.R. 132 (Bankr. D. Mont. 1987)(quoting *In re Metrocraft Pub. Services, Inc.*, 39 B.R. 567, 568 (Bankr. N.D.Ga. 1984)). See also, *In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170-71 (Bankr. S.D. 1988).

In the instant case, the Court finds that Debtor's Amended Disclosure Statement doe not contain "all those factors presently known to the plan proponent that bear upon the success of failure of the proposals contained in the plan." *In re Stanley Hotel, Inc.*, 13 B.R. 926, 929 (Bankr. D.Colo. 1981). Thus, pursuant to 11 U.S.C. § 1125(a)(1), Debtor has failed to provide "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant

class to make an informed judgment about the plan." Accordingly, approval of Debtor's Amended Disclosure Statement is denied.

The final matter addressed by the Court at the hearing was Debtor's motion to surcharge Manheim Services Corporation, d/b/a South Seattle Auto Auction and Auto Auction for amounts spent by Debtor to allegedly enhance the value of vehicles that were ultimately returned to South Seattle Auto Auction and Auto Auction. Auto Auction filed an objection to Debtor's motion on March 5, 2007, and noticed the matter for hearing. Counsel for South Seattle Auto Auction filed a tardy objection to Debtor's motion on March 20, 2007.

As noted by the Court at the hearing, Debtor's claims against Auto Auction and South Seattle Auto Auction were presumably released through the entry of Debtor's default on January 16, 2007, in Adversary Proceedings 06-119 and 06-120. In addition to sitting on its rights through the respective adversary proceedings, Debtor failed to appear at the March 20, 2007, hearing in proper prosecution of its motion. Thus, while the Court was inclined, at the hearing, to grant Debtor's motion as it related to South Seattle Auto Auction, the Court finds that Debtor's motion should be denied in its entirety.

Many of the allegations that have been made in this case are criminal in nature and are deeply troubling. This Court agrees with the UST's characterization of this case as a rudderless ship. The efforts in this case to preserve assets and maximize the value of Debtor's bankruptcy estate have been borne solely by counsel for the various creditors. Debtor's attorney has done virtually nothing to benefit either Debtor or its creditors and the Court sees this case as nothing more than an embarrassment to Debtor's counsel. In accordance with the foregoing,

IT IS ORDERED:

6

1. The Motion by Debtor Requesting this Court to Surcharge the Two Auto Auctions for the Debtor's Expenses Paid on Auto Auction Vehicles filed February 22, 2007, is DENIED.

2. Approval of Debtor's Amended Disclosure Statement filed March 19, 2007, is DENIED.

3. The hearing on the Motion to Convert this bankruptcy to Chapter 7 of the Bankruptcy Code filed by the United States Trustee on December 28, 2006, together with the joinder in said Motion filed by Hyundai Motor Finance Company on January 4, 2007, and the final hearing on Debtor's Emergency Motion to Approve the Contract for the Sale of Assets Pursuant to 11 USC Section 363 of the Bankruptcy Code and to Provide for Upset Bids filed January 7, 2007, are continued without date, but will be reset on shortened notice. In no event will the hearing on said matters be held later than Tuesday, April 3, 2007.

4. Counsel for Kia Motors America, Inc. shall provide the Court with daily status reports concerning the status of the sale between Debtor and Rimrock Chrysler, Inc. as reflected in the Asset Purchase Agreement dated December 29, 2006, which sale is presently scheduled to close today at 2:00 p.m., in the offices of Chicago Title Insurance Company.

>BY THE COURT
>
>/s/ Ralph B. Kirscher
>
>HON. RALPH B. KIRSCHER
>U.S. Bankruptcy Judge
>United States Bankruptcy Court
>District of Montana

**BAE SYSTEMS**
**Bankruptcy Noticing Center**
**2525 Network Place, 3rd Floor**
**Herndon, Virginia 20171-3514**

# CERTIFICATE OF SERVICE

```
District/off: 0977-2           User: kms                Page 1 of 1              Date Rcvd: Mar 21, 2007
Case: 06-60855                 Form ID: pdfogen         Total Served: 1

The following entities were served by first class mail on Mar 23, 2007.
db           +INCREDIBLE AUTO SALES LLC,   1832 KING AVE WEST,    BILLINGS, MT 59102-6459

The following entities were served by electronic transmission.
NONE.                                                                                           TOTAL: 0

             ***** BYPASSED RECIPIENTS *****
NONE.                                                                                           TOTAL: 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.
```

**I, Joseph Speetjens, declare under the penalty of perjury that I have served the attached document on the above listed entities in the manner shown, and prepared the Certificate of Service and that it is true and correct to the best of my information and belief.**

**First Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

**Date: Mar 23, 2007**                          Signature:  _Joseph Speetjens_