William L. Needler
William L. Needler and Associates
555 Skokie Blvd Ste 500
Northbrook, IL 60062
(847) 559-8330 ph
(847) 559-8331 fax
Bar ID 02025248
E-Mail: WilliamLNeedler@aol.com
    Attorneys for the Debtor
    Incredible Auto Sales LLC

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| IN RE: ) | |
| ) | |
| INCREDIBLE AUTO SALES L.L.C.) | Case No. 06-60855-RBK |
| ) | |
| ) | Judge Ralph B Kirscher |
| ) | |
| Debtor ) | A Chapter 11 Proceedings |
| ) | For Reorganization |
| ) | Converted to a Chapter 7 |

**MOTION OF WILLIAM L. NEEDLER OF THE LAW FIRM WILLIAM L. NEEDLER AND ASSOCIATES, ATTORNEY FOR THE DEBTOR AND REQUESTS THIS COURT TO MODIFY, AMEND, VACATE AND RECONSIDER ITS ORDER OF MAY 18, 2007 DENYING ATTORNEY FEES AND EXPENSES FOR DEBTOR'S ATTORNEY AND TO SET A REHEARING AND TRIAL**

NOW COMES the Debtor's Attorney, William L. Needler of William L. Needler and Associates and requests this Court to:

A.)     Modify, Amend, Vacate and Reconsider this Order of May 18, 2007, which:

    (1.)     Denied all fees and expenses requested except for $18,040 in fees and $4,610.89 in expenses, covered by the Pre Petition Retainer; and

(2.) Ordered the sum of #3,388.31 in moneys from a Pre Petition Third Party Retainer paid over to the Chapter 7 Trustee; and

(3.) Denied the award of the balance of $92,541.96 in fees and expenses from the First Interim Application and the Final Application for Allowance of Fees and Expenses of this Attorney and his Law Firm.

IN SUPPORT of this Motion by this Debtor's Attorney seeking relief from the Order of Disgorgement and additionally seeking approval of this $92,541.96 in fees and expenses from both the First Interim Application and Final Application for Allowance of Fees and Expenses both part of <u>Group Exhibit A</u> attached hereto, which were summarily denied, this Attorney states as follows:

1.) This Debtor, a franchised Kia Automotive Dealer, which was located at 1832 King Avenue West, Billings, Montana filed Chapter 11 on the 17th day of October 2006 before this Court seeking relief; and for this filing and pursuit of this Chapter 11 Relief the Debtor had employed William L. Needler and his Law Firm pre petition to represent it.

2.) It was the Debtor's contention on 10/17/06 that this filing was obviously the result of cash loses sustained to this Dealership Entity pre petition. Also, contributing to this cause, in the Debtor's belief , was the road construction project in front of this Dealer location, which limited and obstructed access to the Dealer Showrooms, and repair facilities for retail customers.

3.) Also, threats and attempts had been made to the Dealership recently by certain Montana Auto Auctions to seize vehicles because of non-payments was an additional precipitating cause.

4.) At the time of the filing, the Debtor also operated and staffed an additional location from which it showed, sold and closed used car sales to the Montana public. This location, which was at 2951 King Avenue West was a rental property and also located on the heavily traveled King Avenue in Billings, Montana (also called the Auto Row). This location developed large number of used car sales.

5.) On filing an Application to be employed was filed with the Petition and shortly thereafter on 10/19/06, this Application of Employment by this Attorney was granted.

6.) On 10/18/06, this Attorney filed his Motion Pro Hac Vice, which was later also granted on 10/19/06.

7.) These Applications set forth with Statement of Fees the exact retainer, the source of the retainer, the experience of this Attorney and his agreed to hourly rate.

8.) No objection to this employment of this Attorney's rate was ever raised.

9.) On or before filing, the Debtor assigned its lease of 2951 King Avenue to its related Company, Graham Staunton Chevrolet, which was located some 45 miles from here. This Entity was under management separate from the Debtor.

10.) At the time of filing, this Debtor had an inventory of 23 new vehicles with a value of $467,100.00 and 143 used vehicle with a value of $1,490,691.00 for a total value at Cash Collateral hearing, less some unpaid liens, of $1,425,566. (See <u>Exhibit C.</u>) (The used cars were re-evaluated on filing.)

11.) On filing, the total asset value of this Debtor in addition to the above vehicles was $2,779,.620.00 This value of assets did not however include the value of this Franchise. (See Exhibit C.)

12.) On filing, these assets were secured to Hyundai Motor Finance, under a secured floor plan, which had a claim estimated at $2,163,000.00. (See further Exhibit C.)

13.) The Debtor, under its Cash Collateral Emergency Motion had offered its Kia Franchise value to Hyundai Finance as further adequate protection. This franchise at the time had been valued by the Debtor at $800,000.00.

14.) This value was the value placed on the Franchise at the time by the Debtor, not this Attorney. It was this value which the Broker was trying to realize by a sale prior to October 17, 2006.

15.) Prior to filing, the Debtor had committed to the hiring of William L. Needler and his Law Firm because of his extensive background and experience in representing over 30 Automotive Dealers in various successful Chapter 11s.

16.) The retainer agreed to pre petition was $25,000 and was agreed to be funded by a third party not a creditor – These were not Corporate Funds.

17.) This retainer and cost advance were paid by Nick Gutierrez's wife, Zaneece Gutierrez, from funds that this Attorney was assured were her own personal funds.

18.) This Attorney was assured that none of the $25,000 plus $1,039 filing fee wired to him came out of estate funds;

19.) Although this Attorney had been discussing the precarious nature of the Kia Dealer's financial condition long before 10/17/06, this Attorney was unable to get this Dealer to move to file this case until the very last minute – This delay was through no fault of this Attorney.

20.) As this Attorney recalls, at least more than 30 days prior to the 10/17/06, the Debtor agreed to file, send retainer and costs, send necessary papers, inventories, etc. - <u>this did not happen</u>.

21.) This Attorney, some 40 days before hand, had warned this Debtor that he would be attending his wife's Evanston, Illinois High School 55th Class Reunion in San Francisco, California over the weekend of October 15th etc. [This Attorney had agreed to this, since his wife had always faithfully attended his U.S. Merchant Marine Academy Class Reunions on the same yearly date for years – actually this Attorney missed his 1946 graduating class 60th Reunion at Kings Point, New York to attend his wife's function.]

22.) As events would have it – the Debtor chose this period to call on this Attorney to do the impossible and that was to prepare all the current papers and filing papers and get them filed from a hotel room in San Francisco.

23.) It has been unfair of this Court, which had prior notice of these events to criticize the somewhat delayed filing of the Debtor's Cash Collateral Motion and, yes, it was an Emergency.

24.) Needless to say, the vacation of this Attorney and his wife was not very enjoyable.

25.) This Court must be mindful, based on past experienced, that Debtor's do not file Chapter 11's except just before the business is about to "go over the cliff". Late or not, whether convenient or not – it was this Attorney's belief that this estate and the creditors must be protected - this Court must know that – this is what this Attorney did.

26.) Prior to filing, this Attorney spent considerable time explaining to the Debtor that normally the only successful result achieved for a Chapter 11 Debtor in the retail automotive business was the Sale of the Franchise so that creditors can be paid. Further that, at all times, normal Dealer operations must be maintained to protect this valuable asset, and to prevent a default under the Dealer Agreement.

27.) Actually at the date of this hearing on the First Interim Application for Fees, this Attorney had done exactly what he represented and committed to do, that was to protect this estate, keep the Franchise in tact, get the Franchise sold so that moneys would be available for creditors and the estate.

28.) This Court has been very critical of this Debtor's Attorney which this writer believes is unjustified since he has done exactly what he set out to do on 10/17/06- (a) He kept the Franchise in tact; (b) He kept the store operating against all odds and great resistance; (c) With the sale of assets and liquidation of the Franchise, these funds have more than covered the Hyundai claim (except for any 506 claims it may claim by Motion in this Court;) (See Exhibit D.)

29.) Additionally, now the Chapter 7 Trustee has additional assets to collect namely the lawsuit, dealer reserves and an additional receivable and warranty reserves; (See further <u>Exhibit D</u>.)

30.) This Attorney with all the road blocks thrown in his way by Creditors, and delays in this Court, this Attorney should be complimented and not condemned or penalized.

31.) The Debtor's Emergency Motion to Use Cash Collateral and offer of Adequate Protection was filed on October 26, 2006.

32.) It was sent to the Debtor to review before filing on October 23, 2006.

33.) This Court must remember the detail that was in this Emergency Cash Collateral Motion. Remember – (a) All new and used vehicles had to be re-evaluated; (b) The assets of the Dealership had to be exactly listed; (c) The Cash Collateral process of depositing funds, operating the Dealership under this proposed Cash Collateral Usage had to be put on paper, so this Debtor and his people had to fully understand the procedure. (Actually, this segregation of Accounts, valuation of inventory on filing, definition of new and used vehicles and Adequate Protection proposals is the same system this Attorney has used on over 30 cases since his first Automotive Chapter 11 in 1980 before Judge John Flowers, the Braniff Airlines Judge in Texas.) [It should be noted even in his First 1980 Chapter 11, the assets were sold with sufficient proceeds to paid off all creditors in full.]

34.) If this Court will recall, this Motion to Use Collateral filed herein was so complete and detailed that consents with no exceptions to Use Collateral

were gotten and achieved from all Creditors present before this Court under oath at the November 6, 2006 hearing. All of the parties present under oath stood before this Court and agreed to all the Debtor's cash proposals and the steps to protect collateral and the valuations to be used for such a program.

35.) It was from that point forward that things fell apart and full Use of Collateral was not gotten until 12/21/06, some 47 days later at Docket #159. This delay cannot be laid at this Attorneys door step but was a purposeful delay caused by Hyundai and the Debtor was left without any formal Order or help from this Court. [Except for minimal grants of moneys, no full operational Use of Collateral was granted until 12/21/06.]

36.) The pleading as attached as Exhibit E entitled Debtor's Emergency Motion to Enter Order Approving Cash Collateral. This Motion dated 11/17/06 was filed by the Debtor with the Stipulation attached. It was signed by all creditors at Docket #68 on 11/17/06 except Hyundai. This Motion sets forth the true facts with regards to the continued delay as to Cash Collateral Use. (See Exhibit E.)

37.) Again 5 days later this Debtor on 11/23/06 without Use of any Cash Collateral except for two payrolls, filed this pleading at Docket #78 entitled Debtor's Response, Resistance and Objection to Motion of HMFC to Debtor's Use of Cash Collateral. (See Exhibit F.)

38.) Again on 12/3/06 at Docket #106 was filed Debtor's Additional Motion for Extended Use of Cash Collateral through February 28, 2007. (See Exhibit G

attached.) How in the world could this continued delay be blamed on William L. Needler?

39.) After more hearings, Cash Collateral Usage was finally granted 12/21/06 at Docket #159 – From the hearing and consents from all parties on 11/06/06 until 12/21/06, – 45 days went by.

40.) This Court should wonder what the total liquidation asset value of Debtor estate assets now shown on <u>Exhibit D</u> and now turned over to apply to the Hyundai claim would look like if Debtor's Cash Collateral Usage fully consented to by all parties on 11/06/06, but not ordered by this Court until 12/21/06 would have been made effective that date 11/06/06.

41.) Forty Five (45) days with no advertising, forty five (45) days with just a couple of payrolls and some insurance. In retrospect it is impossible to estimate the number and cost of the lost profitable retail sales. This delay certainly under good conscience and good sense can not be blamed on this Attorney.

42.) Remember with 137 used vehicles costed out at the then auction values, large numbers should have been sold in that period of time with large profits and large additions to Trust Account B. [Hyundai should be penalized for this!]

43.) It is incorrect to charge the Debtor and Debtor's Attorney with some type of neglect in not getting Hyundai to sign Cash Collateral Stipulation – can't this Court understand that Hyundai changed its mind after 11 /06-06 and was trying to "weasel out" of its promises to the Court of consent. Hyundai and its Attorneys on reflection after 11/06/06 tried to get their floor planned values

rammed down the Debtor – this was a much higher valuation and contrary to Bankruptcy filing rules.  <u>Failure to get consent was not Attorney Needler's fault.</u>

44.) The charge has wrongfully been leveled that the Sale Motion under 11 USC Section 363, to Sell the Franchise and assets was defective because it was not accompanied by an approved Disclosure Statement; and therefore this Attorney should again be penalized.  This charge is manifestly unfair and not based on present 363 dales in Bankruptcy Courts around the Country.

45.) This Court may not like it, but this Debtor Motion and Debtor procedure was in the same terms as filed a year earlier in West Suburban Volkswagen, A Chapter 11 pending before former Chief Bankruptcy Judge in Chicago of "K Mart Fame", Case No. 05 – 61043.  In this case the floor plan lenders complete $6,000,000 plus pre petition claim was paid in full and the franchise transferred to the New Buyer with only one bid.  Also this is the same procedure approved by the South Carolina U.S. Bankruptcy Court in sale of assets in Re: Ferneau Buick in Charleston, South Carolina, and Hixson Chevrolet before Judge John Flowers in Fort Worth, Texas where all creditors were paid in full.  In these cases, there was only one bidder as in this instant case.

46.) This Court should remember and recall that at the time this Sale Motion was pending, this Bankruptcy Court had granted relief of Stay to Hyundai Motor Finance so that no stay protected the assets to be sold. On January 12, 2007, this Court granted Hyundai Relief from the Automatic Stay" to pursue its non-

bankruptcy remedies against the Debtor's new and used vehicles, parts inventory, equipment and fixtures." [Please note in this same Order, the Court found that there was little or no equity cushion to protect Hyundai.] Therefore, under this Sale Order, the only parties that had a stake in the Sale and in any "Bankruptcy Protections" were Hyundai and Kia. This Sale Order really affected no other creditors. Upon relief from stay on 1/12/07, Hyundai asked the Debtor if it would voluntarily surrender this collateral. The Debtor stated no, since it wanted to continue to protect its operations and its franchises until closing. The point here is that this was not the normal 363 sale. Here Hyundai had consented to the sale. The only objector was one Auto Auction with a "flimsy claim" that one dealer in Billings, Montana might be interested when in fact this Dealer had been contacted by the Broker over 9 times prior to the sale and had no interest. Here Kia of American, the Franchisor had agreed to the Sale subject to the Kia Home Office approval of the Buyer Rimrock Chrysler.

47.) No other creditor or interested party claimed there was a higher bid out there other than Rimrock Chrysler. Also it was confirmed that Rimrock did have the funds and the ability to close this sale.

48.) The sale of the franchise, $50,000 of good parts, certain Kia tools, signage and sales materials was proposed to net $465,000 without the purchase of any vehicles. Included in this sale to Rimrock Chrysler was the assumption of another $12,000 liability – the Court was correct to approve this sale. As this

Attorney stated to the Court "this is the only game in town" – there was no other bid.

49.) It is now unfair to penalize this Attorney for a sale in which this Attorney was instrumental and in which this Court and all Creditors had approved;

50.) This sale approved by this Court of this Kia Franchise should be applauded by the Court and U.S. Trustee since today numerous Kia Franchises in many markets more attractive than this one presently go begging – Kia Franchises can not even be given away.

51.) Closing of the Contract was a combination of the sincere efforts of the Broker, Jappy Dickson and his good work in spreading this sale all over the Country including a large Ad in Automotive News, extensive mailings by Nick Gutierrez's wife, Zaneece Gutierrez, to Automotive Dealers in 5 States and Nick Gutierrez's excellent negotiating skills and friendship with the Buyer. This Attorney will also take some credit because he sat in a couple of sessions with the Debtor and proposed Buyer and assured him that the Sale would go through without any hitches. (This Court must realize lots of buyers and their Attorneys are fearful of coming into a Bankruptcy Court because of the long expensive delays in the Article I Court sales).

52.) The U.S. Trustee has alleged that this Chapter 11 Debtor was only successful in reducing Hyundai claim because of this Court's help – this is true as in any Chapter 11 – if the Court does not approve Cash Collateral, Sale of Assets or other requests by the Debtor, then no Chapter 11 will be "a success" – <u>we acknowledge and do appreciate the Court's help here!</u>

53.) This Court must realize that the turndown of 110% of a Debtor Attorney's Fees and Expenses is unconscionable and also manifestly unfair.

54.) This Court must also be mindful of cases which say such actions are prohibited under the Code since such an Order provides an unearned windfall to creditors and the Code wants to recognize Attorneys who specialize in Chapter 11s.

55.) Even the U.S. Trustee didn't "go as far" as this Court. It recommended a cut of 1/3 to ½. This Order should be reconsidered based on equity and fairness.

56.) This Order if allowed to stand will be interpreted as a warning to all out of State Debtor's Counsel – don't come to the Montana District.

57.) This Court should give serious consideration to providing relief here based on these additional facts:

    (A.) The Final Application for Fees was never objected to nor ever set for hearing;

    (B.) The Order of disgorgement relates to a retainer and costs which source of funding was from "all personal funds"

    (C.) Under 11 USC Section 541 of the U.S. Bankruptcy Code these moneys were "not estate funds" – not property of the estate and not funds in which the Chapter 7 Trustee would have any estate interest.

58.) This Court should, if nothing else, schedule a re-hearing at some acceptable time table.

WHEREFORE the Debtor's Attorney William L. Needler and his Law Firm respectfully request that this Court:

A.) Modify, Amend, Vacate and Reconsider this Order of May 18, 2007, which:

1.) Denied all fees and expenses requested except for $18,040 in fees and $4,610.89 in expenses, covered by the Pre Petition Retainer; and

2.) Ordered the sum of #3,388.31 in moneys from a Pre Petition Third Party Retainer paid over to the Chapter 7 Trustee; and

3.) Denied the award of the balance of $92,541.96 in fees and expenses from the First Interim Application and the Final Application for Allowance of Fees and Expenses of this Attorney and his Law Firm, and

4.) Set and schedule a new hearing before this Court at a convenient time and date.

IN FURTHER SUPPORT this Attorney has attached Exhibits Group A, B, C, D, E, F and G. which are herein adopted as if set forth above.

ADDITIONALLY, this Debtor's Attorney will file a memorandum in Support hereof within the next 10 days.

May 29, 2007

/s/ William L. Needler
Debtor's Attorney