William L. Needler
William L. Needler and Associates
555 Skokie Blvd Ste 500
Northbrook, IL 60062
(847) 559-8330 ph
(847) 559-8331 fax
Bar ID 02025248
E-Mail: WilliamLNeedler@aol.com
     Attorneys for the Debtor
     Incredible Auto Sales LLC

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| IN RE: | ) |
| | ) |
| INCREDIBLE AUTO SALES L.L.C.) | Case No. 06-60855-RBK |
| | ) |
| | ) Judge Ralph B Kirscher |
| | ) |
| Debtor | ) A Chapter 11 Proceedings |
| | ) For Reorganization |
| | ) Converted to a Chapter 7 |

## TRIAL BOOK WITH WITNESS LIST AND EXHIBIT LIST

## FOR HEARING ON REMAND

## SET FOR 9:00 A.M. ON AUGUST 30, 2007

## ON FIRST INTERIM, FINAL APPLICATION AND SUPPLEMENTAL APPLICATION

## FOR ALLOWANCE OF FEES AND EXPENSES FOR DEBTOR'S ATTORNEY

## WILLIAM L. NEEDLER AND ASSOCIATES

## Miscellaneous:

06-60855-RBK INCREDIBLE AUTO SALES LLC CASE CONVERTED on 04/10/2007

### U.S. Bankruptcy Court

### U.S. Bankruptcy Court, District of Montana

Notice of Electronic Filing

The following transaction was received from NEEDLER, WILLIAM L entered on 8/25/2007 at 3:56 PM MTN and filed on 8/25/2007
**Case Name:**       INCREDIBLE AUTO SALES LLC
**Case Number:**     06-60855-RBK
**Document Number:** 411

**Docket Text:**
List of Exhibits for Upcoming August 30, 2007 Hearing. Filed by INCREDIBLE AUTO SALES LLC. (NEEDLER, WILLIAM)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** F:\NEEDLER\902 INCREDIBLE KIA (MT 11)\902 HEARING REMAND FEES 8-25-07\902 LIST OF EXHIBITS Not SL 8-25-07.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=986323682 [Date=8/25/2007] [FileNumber=1170543-0] [a3740b4249d0a4111ce128d4d9c5d5b2d3e8d606904bc4ef0008fa42dff57d0be28d f7b7b64d2858af756d40d69dbb5ecd6666cf2b0ddbd769f70d448d356f61]]

**06-60855-RBK Notice will be electronically mailed to:**

CHRISTOPHER P BIRKLE    lovellaw@hotmail.com

ALAN C. BRYAN    abryan@crowleylaw.com

SHANE P. COLEMAN    spcoleman@hollandhart.com,
bbowler@hollandhart.com;mhauck@hollandhart.com;intaketeam@hollandhart.com

BRUCE F. FAIN    bruce@murphkirk.com, pam@murphkirk.com;amy@murphkirk.com

CHARLES W. HINGLE    chingle@hollandhart.com,
bbowler@hollandhart.com,mhauck@hollandhart.com,jritchie@hollandhart.com,pmoritz@hollandhart.cc

JEFFERY A. HUNNES    jhunnes@ghrtlawfirm.com

DOUG JAMES    james@moultonlawfirm.com, smarble@moultonlawfirm.com

NEAL G. JENSEN    Neal.G.Jensen@usdoj.gov

STEVEN M. JOHNSON    sjohnson@chjw.com, jhaney@chjw.com

JARED M LEFEVRE    jlefevre@crowleylaw.com

LANCE LOVELL    lovellaw@hotmail.com

DANIEL P. MCKAY    Dan.P.McKay@usdoj.gov

WILLIAM L NEEDLER    williamlneedler@aol.com

CHRISTIAN T. NYGREN    nygren@bigskylawyers.com, maul@bigskylawyers.com

OFFICE OF THE U.S. TRUSTEE    ustpregion18.gf.ecf@usdoj.gov

JAMES A. PATTEN    japatten@ppbglaw.com,
aschueler@ppbglaw.com;ESchoemer@ppbglaw.com;mberg@ppbglaw.com

JEFFREY N RICH    jrich@klng.com

ROSS P. RICHARDSON    rossrichardson@qwest.net,
henningsenvucuro@qwest.net;megha.nr@hotmail.com

JASON S RITCHIE    jritchie@hollandhart.com,
lsawatzke@hollandhart.com;bbowler@hollandhart.com

LISA SWAN SEMANSKY    semansky@bresnan.net

JOSEPH V. WOMACK    jwomack@jvwlaw.com,
kglock@jvwlaw.com;jwomack@ecf.epiqsystems.com;jjensen@jvwlaw.com;aanvik@jvwlaw.com

**06-60855-RBK Notice will not be electronically mailed to:**

NICK GUTIERREZ
,

HANSER'S AUTOMOTIVE AND WRECKER CO
,

TOYOTA MOTOR CREDIT CORPORATION
19001 South Western Avenue
PO Box 2958
Torrance, CA 90509

WFS FINANCIAL, INC
PO BOAX 25341
SANTA ANA, CA 92799-5341

I also hereby certify that it was served by facsimile on August 25, 2007 from the Attorneys offices.

/s/ William L. Needler

CHRISTOPHER P BIRKLE    lovellaw@hotmail.com

ALAN C. BRYAN    abryan@crowleylaw.com

SHANE P. COLEMAN    spcoleman@hollandhart.com,
bbowler@hollandhart.com;mhauck@hollandhart.com;intaketeam@hollandhart.com

BRUCE F. FAIN    bruce@murphkirk.com, pam@murphkirk.com;amy@murphkirk.com

CHARLES W. HINGLE    chingle@hollandhart.com,
bbowler@hollandhart.com,mhauck@hollandhart.com,jritchie@hollandhart.com,pmoritz
@hollandhart.com,lsawatzke@hollandhart.com,km_stephens@hollandhart.com

JEFFERY A. HUNNES    jhunnes@ghrtlawfirm.com

DOUG JAMES    james@moultonlawfirm.com, smarble@moultonlawfirm.com

NEAL G. JENSEN    Neal.G.Jensen@usdoj.gov

STEVEN M. JOHNSON    sjohnson@chjw.com, jhaney@chjw.com

JARED M LEFEVRE    jlefevre@crowleylaw.com

LANCE LOVELL    lovellaw@hotmail.com

DANIEL P. MCKAY    Dan.P.McKay@usdoj.gov

WILLIAM L NEEDLER    williamlneedler@aol.com

CHRISTIAN T. NYGREN    nygren@bigskylawyers.com, maul@bigskylawyers.com

OFFICE OF THE U.S. TRUSTEE    ustpregion18.gf.ecf@usdoj.gov

JAMES A. PATTEN    japatten@ppbglaw.com,
aschueler@ppbglaw.com;ESchoemer@ppbglaw.com;mberg@ppbglaw.com

JEFFREY N RICH    jrich@king.com

ROSS P. RICHARDSON    rossrichardson@qwest.net,
henningsenvucuro@qwest.net;megha.nr@hotmail.com

JASON S RITCHIE    jritchie@hollandhart.com,

lsawatzke@hollandhart.com;bbowler@hollandhart.com

LISA SWAN SEMANSKY       semansky@bresnan.net

JOSEPH V. WOMACK     jwomack@jvwlaw.com,
kglock@jvwlaw.com;jwomack@ecf.epiqsystems.com;jjensen@jvwlaw.com;aanvik@jvwl
aw.com

    I also hereby certify that this Notice was served by Facsimile Service on August
25, 2007.

                                        /s/ William L. Needler

Clarke B. Rice
Clarke B. Rice P.C.
1645 Ave D Suite B
Billings, Montana 59102
(406) 294-2525 fax

Nick Gutierrez
c/o Clarke B. Rice P.C.
1645 Ave D Suite B
Billings, Montana 59102
(406) 294-2525 fax
(406) 665-9047 fax

William L. Needler
William L. Needler and Associates
555 Skokie Blvd Ste 500
Northbrook, IL 60062
(847) 559-8330 ph
(847) 559-8331 fax
Bar ID 02025248
E-Mail: WilliamLNeedler@aol.com
        Attorneys for the Debtor
        Incredible Auto Sales LLC

## IN THE UNITED STATES BANKRUPTCY COURT

### FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| IN RE: ) | |
| ) | |
| INCREDIBLE AUTO SALES L.L.C.) | Case No. 06-60855-RBK |
| ) | |
| ) | Judge Ralph B Kirscher |
| ) | |
| Debtor ) | A Chapter 11 Proceedings |
| ) | For Reorganization |
| ) | Converted to a Chapter 7 |

### LIST OF EXHIBITS

### FOR HEARING ON REMAND

### SET FOR 9:00 A.M. ON AUGUST 30, 2007

NOW COMES William L. Needler, the Applicant and Debtor's Chapter 11

Attorney for Allowance of First Interim Fees and Expenses, Final Fees and Expenses

and a Supplemental Application filed herein on August 25, 2007 for this Hearing and his

Exhibits to be tendered to the Court:

### EXHIBIT LIST

The Exhibits expected to be offered are:

1.) Trial Exhibit 1:    Courts Order of April 10, 2007 at Docket # 353;

2.) Trial Exhibit 2:    Motion of Chapter 7 Debtor, Incredible Auto Sales L.L.C. to

Clarify the Record and Facts in this Case and to Request

Reconsideration in Modifying, Vacating and Amending

Various Findings set forth in the Court's Memorandum of

Decision of April 10, 2007, so as to make this Record Clear

and Accurate with Declaration and Exhibits filed at Docket #

364.

3.) Trial Exhibit 3:    Motion of William L. Needler of the Law Firm of William L.

Needler and Associates, Attorney for the Debtor and

Requests this Court to Modify, Amend, Vacate and

Reconsider its Order of May 18, 2007, Denying Attorney

Fees and Expenses for the Debtor's Attorney and to set a

Rehearing and Trial, with <u>Exhibits Group A,B,C,D,E,F, and</u>

<u>G.</u>

August 25, 2007

                                <u>/s/William L. Needler</u>
                        Attorney for the Chapter 11 Debtor and Applicant

## Miscellaneous:

<u>06-60855-RBK INCREDIBLE AUTO SALES LLC</u> CASE CONVERTED on 04/10/2007

### U.S. Bankruptcy Court

### U.S. Bankruptcy Court, District of Montana

Notice of Electronic Filing

The following transaction was received from NEEDLER, WILLIAM L entered on 8/25/2007 at 3:44 PM MTN and filed on 8/25/2007

**Case Name:**    INCREDIBLE AUTO SALES LLC
**Case Number:**    <u>06-60855-RBK</u>
**Document Number:** <u>410</u>

**Docket Text:**
Amended List of Witnesses for Upcoming August 30, 2007 Hearing. Filed by INCREDIBLE AUTO SALES LLC. (NEEDLER, WILLIAM)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** F:\NEEDLER\902 INCREDIBLE KIA (MT 11)\902 HEARING REMAND FEES 8-25-07\902 LIST OF WITNESSES AMENDED Not SL 8-25-07.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=986323682 [Date=8/25/2007] [FileNumber=1170540-0]
[18d0667d783296ee0b1737b0be8f6180fd8f063335e7f5be83f033e27dca98eb63c1
2cbdd04701cf325745815c8a491b13cdc6808551c831ab1c84d6cf02ccda]]

**06-60855-RBK Notice will be electronically mailed to:**

CHRISTOPHER P BIRKLE    lovellaw@hotmail.com

ALAN C. BRYAN    abryan@crowleylaw.com

SHANE P. COLEMAN    spcoleman@hollandhart.com,
bbowler@hollandhart.com;mhauck@hollandhart.com;intaketeam@hollandhart.com

BRUCE F. FAIN    bruce@murphkirk.com, pam@murphkirk.com;amy@murphkirk.com

CHARLES W. HINGLE    chingle@hollandhart.com,
bbowler@hollandhart.com,mhauck@hollandhart.com,jritchie@hollandhart.com,pmoritz@hollandhart.cc

JEFFERY A. HUNNES    jhunnes@ghrtlawfirm.com

DOUG JAMES    james@moultonlawfirm.com, smarble@moultonlawfirm.com

NEAL G. JENSEN    Neal.G.Jensen@usdoj.gov

STEVEN M. JOHNSON    sjohnson@chjw.com, jhaney@chjw.com

JARED M LEFEVRE    jlefevre@crowleylaw.com

LANCE LOVELL    lovellaw@hotmail.com

DANIEL P. MCKAY    Dan.P.McKay@usdoj.gov

WILLIAM L NEEDLER    williamlneedler@aol.com

CHRISTIAN T. NYGREN    nygren@bigskylawyers.com, maul@bigskylawyers.com

OFFICE OF THE U.S. TRUSTEE    ustpregion18.gf.ecf@usdoj.gov

JAMES A. PATTEN    japatten@ppbglaw.com,
aschueler@ppbglaw.com;ESchoemer@ppbglaw.com;mberg@ppbglaw.com

JEFFREY N RICH    jrich@klng.com

ROSS P. RICHARDSON    rossrichardson@qwest.net,
henningsenvucuro@qwest.net;megha.nr@hotmail.com

JASON S RITCHIE    jritchie@hollandhart.com,
lsawatzke@hollandhart.com;bbowler@hollandhart.com

LISA SWAN SEMANSKY    semansky@bresnan.net

JOSEPH V. WOMACK    jwomack@jvwlaw.com,
kglock@jvwlaw.com;jwomack@ecf.epiqsystems.com;jjensen@jvwlaw.com;aanvik@jvwlaw.com

### 06-60855-RBK Notice will not be electronically mailed to:

NICK GUTIERREZ

,

HANSER'S AUTOMOTIVE AND WRECKER CO

,

TOYOTA MOTOR CREDIT CORPORATION
19001 South Western Avenue
PO Box 2958
Torrance, CA 90509

WFS FINANCIAL, INC
PO BOAX 25341
SANTA ANA, CA 92799-5341

William L. Needler
William L. Needler and Associates
555 Skokie Blvd Ste 500
Northbrook, IL 60062
(847) 559-8330 ph
(847) 559-8331 fax
Bar ID 02025248
E-Mail: WilliamLNeedler@aol.com
        Attorneys for the Debtor
        Incredible Auto Sales LLC

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF MONTANA

IN RE:                              )
                                    )
INCREDIBLE AUTO SALES L.L.C.)           Case No. 06-60855-RBK
                                    )
                                    )       Judge Ralph B Kirscher
                                    )
                    Debtor    )           A Chapter 11 Proceedings
                                    )       For Reorganization
                                    )       Converted to a Chapter 7

## AMENDED

## LIST OF WITNESSES

## FOR HEARING ON REMAND

## SET FOR 9:00 A.M. ON AUGUST 30, 2007

NOW COMES William L. Needler, the Applicant and Debtor's Chapter 11

Attorney for Allowance of First Interim Fees and Expenses, Final Fees and Expenses

and a Supplemental Application filed herein on August 25, 2007 for this Hearing and

his List of Witnesses for this Hearing :

Witnesses expected to appear are:

1.) William L. Needler, Applicant Pro Se;

2.) Nick Gutierrez former President and owner of the Chapter 11 Entity;

3.) Clarke B. Rice, Billings, Montana Attorney, who was previously Co-Counsel for the Debtor Chapter 11.

August 25, 2007

/s/William L. Needler
Attorney for the Chapter 11 Debtor and Applicant

William L. Needler
William L. Needler and Associates
555 Skokie Blvd Ste 500
Northbrook, IL 60062
(847) 559-8330 ph
(847) 559-8331 fax
Bar ID 02025248
E-Mail: WilliamLNeedler@aol.com
      Attorneys for the Debtor
      Incredible Auto Sales LLC

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| IN RE: )<br>)<br>INCREDIBLE AUTO SALES L.L.C. )<br>)<br>)<br>)<br>Debtor )<br>)<br>)<br>) | Case No. 06-60855-RBK<br><br>Judge Ralph B Kirscher<br><br>A Chapter 11 Proceedings<br>For Reorganization<br>Converted to a Chapter 7 |

### TRIAL EXHIBIT 1

Courts Order of April 10, 2007 at Docket # 353

### FOR HEARING ON REMAND

### SET FOR 9:00 A.M. ON AUGUST 30, 2007

### ON FIRST INTERIM, FINAL APPLICATION AND SUPPLEMENTAL APPLICATION

### FOR ALLOWANCE OF FEES AND EXPENSES FOR DEBTOR'S ATTORNEY

### WILLIAM L. NEEDLER AND ASSOCIATES

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

INCREDIBLE AUTO SALES LLC,

Debtor.

Case No. **06-60855-11**

# MEMORANDUM of DECISION

At Butte in said District this 10th day of April, 2007.

In this Chapter 11 bankruptcy, the United States Trustee ("UST"), through counsel, filed a Motion to Convert on December 28, 2006, docket entry number 167, seeking to convert this case to Chapter 7 of the Bankruptcy Code. Hyundai Motor Finance Company ("Hyundai") filed a joinder in the UST's Motion on January 4, 2007, at docket entry number 170. Debtor, through counsel, filed an objection to the UST's Motion on January 11, 2007, and noticed the matter for hearing on January 23, 2007. In opposition to the UST's Motion, counsel for Debtor recites:

1.) This Debtor filed Chapter 11 on October 17, 2006, and since that date has been operating as Debtor-in-Possession.

2.) Since that date, all proceeds of all vehicle sales and repair sales have been deposited with approval of this Court and Hyundai Motor Finance (the "Secured Lender") into the Debtor's Trust Accounts.

3.) Reports on the contents of these Trust Accounts have been regularly provided to the Secured Lender without objection[.]

4.) As part of the Cash Collateral Usage Agreement, this Debtor early in this case has

1



EXHIBIT
TRIAL
1

changed the management structure of the operating Debtor as agreed with this Court and the Secured Lender as follows:

    a.)    Nick Gutierrez, the majority owner . . . no longer has check signing power under the Chapter 11.

    b.)    All Debtor-in-Possession Checks and Trust Account Transfers to be only handled and signed for by:

        1.)    Ken Cornelison the General Manager; and

        2.)    Zfaneeee Gutierrez, the wife of Nick Gutierrez;

5.)    Additionally, the Debtor had agreed with the Secured Lender and the Court that:

    a.)    They would not do any more wholesale sales to Graham Stanton, a Chevrolet Dealership owned by Nick Gutierrez, and

    b.)    That Nick Gutierrez would have no management say so or control.

6.)    Even though a long delay had occurred before this Court entered the Cash Collateral Order, the Debtor continues to operate and sell vehicles.

7.)    The Debtor has employed an Automotive Broker, Southwest Brokerage Company to sell the Kia Franchise and assets of the Dealership.

8.)    Contemporaneously herewith a Motion to approve a Sale Contract with Rimrock Chrysler, Inc. of Billings, Montana has been docketed and is being served.

9.)    The Debtor has requested the approval of a Notice for Upset bids, which has also been filed so that higher bids can be solicited.

10.)    As a result of this initial offer, a large ad has been placed by the Debtor in Crains Automotive News, which is read by almost all parties connected with the Retail

2

Automotive Business. This ad will run for at least two weeks and has a large National circulation.

11.)   Additionally, this Court has set a deadline of January 18, 2007, for the Debtor to file its Plan and Disclosure Statement.

12.)   The Debtor's proposal along with its sales efforts is toward confirming a Liquidating Plan to pay creditors.

13.)   It should be obvious to the Court and other Creditors that a conversion in this case to a Chapter 7 with the appointment of a Panel Trustee would not be in the best interests of this Debtor, this estate and its creditors.

14.)   In the first instance, to sell the Franchise and maximize the sale proceeds from a sale of assets, the Debtor needs to continue to operate the Dealership.

15.)   Key provisions of any vehicle franchise is that for this franchise to be viable and continue valid and enforceable and not subject to cancellation, the Dealer must maintain and continue to maintain an operating business.

16.)   This Debtor will continue an operating and viable business until the Franchise and assets are sold.

17.)   The provision of the Bankruptcy Code relating to dismissal and/or conversion is 11 USC Section 1112(b)(1) of the Bankruptcy Code.

18.)   This section as revised calls for the Court to determine whether conversion is in the best interests of creditors and the estate and the movant must establish "cause".

19.)   "Cause" includes under Section 1112(b)(4) the following:

3

* * *

20.)   No "cause" can be proven.

21.)   In particular there has been no mismanagement of this estate. All steps taken by the Debtor in this case have assured this Court and Creditors that mismanagement does not occur.

At the January 23, 2007, hearing, Debtor was represented by attorney William L. Needler of Northbrook, Illinois; Hyundai was represented by attorney Shane Coleman of Billings, Montana; Auto Auction Associates of Montana, Inc., d/b/a Auto Auction of Montana, a.k.a. Auto Auction of Billings ("Auto Auction") was represented by attorney Bruce F. Fain of Billings, Montana; Kia Motors America, Inc. ("Kia") was represented by attorney Alan C. Bryan of Billings, Montana; First Advantage Credco was represented by attorney Steven M. Johnson of Great Falls, Montana; Ernie and Leanne Dutton and the other co-tenant lessors were represented by attorney Jeffrey A. Hunnes of Billings, Montana; Rimrock Chrysler, Inc. ("Rimrock") was represented by attorney Rodd A. Hamman of Billings Montana; and the UST was represented by senior attorney/attorney Daniel P. McKay of Great Falls, Montana.  Ken Cornelison ("Cornelison"), the General Manager of Debtor, testified and Debtor's Exhibit 5 was admitted into evidence without objection.  After hearing comments from counsel for the UST and Hyundai, the Court agreed to continue the January 23, 2007, hearing to afford Debtor additional time to procure the sale of Debtor's assets.  The hearing on the UST"s Motion was thus continued to February 26, 2007.

At the February 26, 2007, continued hearing, counsel for Debtor and for the UST agreed to continue the matter to March 20, 2007.  At the March 20, 2007, hearing, no appearance was

4

made on behalf of Debtor, but Hyundai was represented by attorney Shane Coleman; Auto Auction was represented by attorney Bruce F. Fain; Kia was represented by attorney Alan C. Bryan; the UST was represented by attorney Daniel P. McKay; and attorney Gary Deschenes of Great Falls, Montana appeared on behalf of Nick Gutierrez, the majority shareholder of Debtor. The Court heard statements from counsel, but no testimony was presented and no exhibits were offered into evidence.

As explained in an Order entered March 21, 2007, on March 10, 2007, Debtor, through counsel, filed a motion to continue the March 20, 2007, hearing on the UST's motion to convert. Counsel for the UST originally indicated to counsel for the Debtor that the UST would not oppose Debtor's request for a continuance. However, upon learning that business records of the Debtor had been inappropriately removed from Debtor's business premises, the UST promptly filed an objection to Debtor's request for continuance. Based upon the serious allegation of missing business records, the Court denied Debtor's request for a continuance. Although no appearance was made at the hearing on behalf of Debtor, counsel for the UST indicated that he was not opposed to continuing the hearing on his motion for a short period of time. Counsel for the UST stated that he was satisfied that the United States Attorney's Office had the records it needed to further its investigation.[1] Additionally, counsel for the UST recognized that conversion of this case to Chapter 7 may derail the pending sale of Debtor's Kia franchise to Rimrock.

Interestingly, Debtor does not dispute in various pleadings that its business records have

---

[1] Counsel for the UST later reported to the Court that there were "certain electronic and paper records of the Debtor at the Debtor's place of business that [were] not in the custody and control of the U.S. Department of Justice."

5

been inappropriately removed from Debtor's business premises. Specifically, in a "Status Report of Debtor and its Liquidation" filed March 20, 2007, counsel for Debtor disclosed that Debtor had transferred its 2005 and 2006 records to the United States Department of Justice. However, as reflected on page 2 of the Status Report, Cornelison, the General Manager of Debtor and a minority shareholder of Debtor, admittedly deleted "all the financial records on the office computer located in the General Managers Office." As previously noted by this Court in its March 21, 2007, Order:

> This case cries for conversion. The prior Orders entered by this Court delineate many of the fraudulent activities that occurred in Debtor's operation pre-petition. The recent disappearance of business records appears to this Court to be nothing more than a continuance of Debtor's pre-petition activities. A trustee or some similar person needs to be brought into this case to preserve the few assets that appear to remain and to protect the interests of the creditors. Nevertheless, the Court also appreciates the effort that various creditors are making in an attempt to salvage the potential sales value left in Debtor's assets. Therefore, the Court will continue the hearing on the UST's request for conversion and on Debtor's emergency motion to sell assets.

* * *

> Many of the allegations that have been made in this case are criminal in nature and are deeply troubling. This Court agrees with the UST's characterization of this case as a rudderless ship. The efforts in this case to preserve assets and maximize the value of Debtor's bankruptcy estate have been borne solely by counsel for the various creditors. Debtor's attorney has done virtually nothing to benefit either Debtor or its creditors and the Court sees this case as nothing more than an embarrassment to Debtor's counsel.

Debtor has made no appearance in this case since the Status Report was filed on March 20, 2007, a period of three weeks. However, counsel for Kia did advise the Court in a "Notice of Final Approval of Assignment of Franchise Agreement" filed March 30, 2007, that Debtor's Kia franchise had been formally assigned from Debtor to Rimrock. The sale of Debtor's primary assets to Rimrock, the lack of activity by Debtor and the undisputed fact that Debtor's business

6

records were removed from Debtor's business premises, leaves this Court with the firm conviction that it is now time to convert this case to Chapter 7 of the Bankruptcy Code and put the Debtor in its final resting place.

Prior to enactment of BAPCPA, § 1112(b) provided that a court "may" convert or dismiss a Chapter 11 case for cause. Subsequent to the enactment of BAPCPA, it now appears that the Court's discretion with respect to conversion or dismissal has been somewhat circumscribed. This Court thus concludes that the UST has established cause for the dismissal or conversion of this case unless: (1) unusual circumstances establish that conversion or dismissal is not in the best interest of creditors and the estate, § 1112(b)(1); or (2) absent unusual circumstances, Debtor can: (a) show a reasonable likelihood that a Chapter 11 plan will be confirmed within a reasonable period of time; and (b) provide a reasonable justification for the deletion of business records by Debtor's General Manager and minority shareholder. The other alternative to conversion or dismissal is the appointment of a trustee if such appointment would be in the best interest of creditors and the estate. 11 U.S.C. §§ 1112(b)(1) and 1104(a)(3). As further explained in 7 COLLIER ON BANKRUPTCY, ¶ 1112.04[3] (15th ed. rev.):

> As amended in 2005, section 1112(b) provides further direction in guiding the court's discretion. To begin with, section 1112(b)(1) directs that the court must convert or dismiss the case if the movant establishes cause unless the court determines that unusual circumstances exist and the court enumerates the circumstances. Although section 1112(b) does not define the phrase "unusual circumstances," it clearly contemplates conditions that are not common in most chapter 11 cases. Although each chapter 11 case is to some extent unique, and unusual circumstances may exist in any particular case regardless of its size or complexity, the import of section 1112(b) is that, if cause exists, the case should be converted or dismissed unless unusual facts or circumstances demonstrate that the purposes of chapter 11 would be better served by maintaining the case as a chapter 11 proceeding.

7

In addition, section 1112(b)(1) directs that the court must convert or dismiss the case for cause unless the appointment of a chapter 11 trustee would be in the best interests of creditors and the estate. Under section 1104(a)(3), the court is directed to appoint a trustee if cause exists to convert or dismiss a chapter 11 case and doing so would be in the best interests of creditors and the estate. Notably, when sections 1104(a)(3) and 1112(b) are read together, it seems clear that the court *must* appoint a chapter 11 trustee rather than convert or dismiss the case if section 1104(a)(3) applies. Neither section 1104(a)(3) nor 1112(b) defines what constitutes the "best interests of creditors and the estate." This phrase, however, has long been used in section 1112 and courts have considered a number of factors in applying it.

Finally, section 1112(b)(2) creates an exception to section 1112(b)(1) by directing that, absent unusual circumstances, the court must *not* convert or dismiss the case if (1) there is a reasonable likelihood that a plan will be confirmed within the time frames specified in subsection 1112(b)(2), (2) the grounds for converting or dismissing the case include an act or omission by the debtor other than substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation and (3) there exists a reasonable justification for the act or omission, and the act or omission will be cured within a reasonable time fixed by the court. In establishing the time frames for confirmation of a plan, section 1112(b)(2) refers to sections 1121(e) and 1129(e), providing deadlines for the filing and confirmation of plans in small business cases. If the case is not a small business case, the time frame is designated as "a reasonable period of time." If the movant establishes cause to convert or dismiss the case for substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation, then section 1112(b)(2) does not apply. If the movant demonstrates cause to convert or dismiss the case for a reason other than substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation, then the court must consider whether there exists a reasonable justification for the act or omission constituting cause for conversion and dismissal, as well as whether the act or omission can be cured within a reasonable time fixed by the court. Yet if cause for conversion or dismissal exists because the debtor filed its chapter 11 case in bad faith, then section 1112(b)(2) would not apply because, by determining that the debtor filed the case in bad faith, the court would foreclose a reasonable justification for the filing. In addition, a bad faith determination would likely constitute "unusual circumstances" demonstrating that section 1112(b)(2) should not be applied. If the court declines to apply section 1112(b)(2) on the basis of the existence of unusual circumstances, the court must enumerate those circumstances.

As noted earlier, the UST has satisfied her burden by establishing cause, as defined in §

8

1112(b)(4)(B), for dismissal or conversion under § 1112(b)(1) on the basis of the gross

mismanagement of Debtor's business operations as outlined in numerous Memorandums and

Orders previously entered by this Court. For example, the Memorandum of Decision entered on

January 12, 2007, on Hyundai's Expedited Motion to Modify Stay, Alternative Motion for

Appointment of Trustee, recites the following:

> By way of background, Nick Gutierrez ("Gutierrez") owns 80% of the stock in Debtor. Gutierrez was also Debtor's President at the time Debtor's bankruptcy petition was filed. Gutierrez is also the majority shareholder of Graham-Staunton, Inc., d/b/a Incredible Chevrolet ("Graham-Saunton"). Ken Cornelison ("Cornelison") is a minority shareholder of both Debtor and Graham-Staunton and has been employed by Debtor since June 1, 2006.
>
> According to Cornelison, Gutierrez relinquished his title as an officer of Debtor a couple weeks prior to the December 5, 2006, hearing. At that same time, Cornelison assumed the position of Vice President and General Manager of Debtor and Gutierrez' wife, Zsaneece, became an officer and check signer of Debtor. Cornelison also testified that Gutierrez transferred his ownership interest in Debtor to Zsaneece. However, Debtor's counsel advised the Court at a hearing held December 19, 2006, that Gutierrez had not transferred his interest in Debtor to Zsaneece as previously represented. At the time of the change in officers, sometime in November of 2006, Gutierrez gave up his officer's salary. At the same time, Zsaneece began receiving an officer's salary of $5,000.00 per month. For her monthly salary, Zsaneece agreed to sign checks if Cornelison was not available, and agreed to review bills and financials.
>
> The evidence in this case overwhelmingly shows that someone in Debtor's organization has falsified certificates of title,[2] invoices and contracts. At a hearing held early on in this case, Gutierrez indicated that Davis was the person who falsified the certificates of title. Similarly, Cornelison testified at the December 5, 2006, hearing that two people were involved in the admitted fraud, Davis and "Jody". "Jody" apparently was and still is Debtor's office manager.

---

[2] A Memorandum of Decision entered by this Court on January 12, 2007, on the Motion for Relief from the Automatic Stay filed by Steve's discusses extensively the efforts Gutierrez undertook, on behalf of Debtor, to obtain copies of certificates of title and falsify such documents. The Court's Memorandum of Decision is incorporated by reference herein. Also, exhibit 23 admitted at the December 5, 2006, hearing, reflects both the true certificates of title and the falsified copies that Debtor submitted to Hyundai in order to obtain flooring advances.

9

In addition to falsified certificates of title, invoices and documentation of sales, the evidence in this case also shows that Debtor has double-floored inventory. Debtor's counsel explains in Debtor's objection to Hyundai's Motion that: "As to the 'Double Flooring' charge of Hyundai, this was a timing issue of vehicles who left one floor plan and went to another. This occurred over a holiday weekend and was inadvertent ad [sic] not intentional." Contrary to counsel's response, Hyundai's Exhibit 18 shows that at least 19 vehicles were double floored by Debtor, and the number of days that said vehicles were double floored with Hyundai and GMAC ranged from 1 day to 105 days, with all but one of the 19 vehicles double floored nine or more days; a period of time that is undeniably longer than a "holiday weekend". Evidence and testimony exists in the record showing that Debtor floored and sold a vehicle and then later allegedly refloored the vehicle to obtain more money from Hyundai.[3]

Debtor also concedes that it was "out of trust" on certain prepetition vehicles and further admits that it failed to payoff existing liens on vehicles that were taken in on trade. As set forth in Debtor's opposition to Hyundai's Motion:

21. The prepetition facts that unpaid liens exist and cars were sold out of trust is not new.

22. Every car dealer who files a Chapter 11 in this Country, has unpaid liens and out of trust sales on filing.

Debtor's above admissions offer no explanation as to why Debtor was $366,880.00 "out of trust" on Debtor's petition date. Moreover, Debtor failed to explain why the "out of trust" amount increased to $626,131.00 as of November 29, 2006.

Dale Ueno testified that it is not uncommon for a dealership to have a lien open for perhaps 20 to 30 days, yet Exhibit 21 shows that Debtor had liens on approximately 12 vehicles, that had been taken in on trade by Debtor, where the liens remained open for more than a month as of Debtor's petition date. Indeed, it appears from Exhibit 21 that Debtor took a 2004 Optima in on trade and sold the vehicle on April 17, 2006, and still had not paid off the previously existing lien as of Debtor's petition date of October 17, 2006. These people were most likely the consumer creditors who appeared at Debtor's § 341 Meeting of Creditors complaining that Debtor had not paid the liens on their trade-ins and that in some cases, the consumers were being forced to make multiple car

---

[3] The vehicle in issue is a 2003 Acura that was originally floored on August 2, 2006, and paid off on August 18, 2006. Debtor apparently refloored the same vehicle on September 5, 2006, and then paid it off a second time on October 5, 2006.

10

payments.

Dale Ueno's testimony also highlighted a few of the instances where someone in Debtor's organization had falsified sales documents. For instance, four vehicles: a 2005 KIA Sportage; 2005 Chevy Classic; 2004 Chevy Impala and 2005 Dodge Neon, had two deal jackets; one containing the correct information and one containing fabricated information. The information in the fabricated deal jacket for the 2005 KIA Sportage was altered to reflect that the vehicle was sold on September 23, 2006, when in fact the vehicle was wholesaled on September 14, 2006. Similarly, the falsified deal jacket for the 2004 Chevy Impala showed that the vehicle was sold on September 23, 2006, when in fact the vehicle was sold on August 29, 2006, and Debtor received funds for the sale on September 12, 2006. The fabricated deal jackets for the 2005 Chevy Classic and 2005 Dodge Neon show more of the same; that someone in Debtor's organization was falsifying documents.

Despite all the foregoing, particularly the serious allegations of fraud, Cornelison, as Vice President and General Manager of Debtor, has taken no steps to investigate any of the frauds, other than to ascertain whether a paper shredder existed on Debtor's premises.[4] Cornelison seemed totally unconcerned about the allegations, even though the two individuals implicated in the fraud are still employed by Debtor, or its sister organization, Graham-Staunton.

Equally troubling to the Court is the fact that Debtor has wholesaled at least three vehicles to Graham-Staunton postpetition. These wholesale transactions are troubling in three respects. First, Hyundai discovered that although Graham-Staunton had tendered checks to Debtor for each of the vehicles, none of the checks had been cashed by Debtor.[5] Second, the three vehicles at issue were apparently sold off of Debtor's secondary lot, referred to as

---

[4] While attempting to investigate the double flooring issue, which Hyundai learned about from GMAC and an anonymous tip, Dale Ueno had requested that Debtor produce various funding documents. Dale Ueno was advised by an employee or employees of Debtor that the funding documents had been shredded because neither Gutierrez nor "Jody" had any faith in the dates provided on the funding documents. Why Cornelison felt compelled to search for a paper shredder is a bit of a mystery because Gutierrez and Jody later produced the requested funding documents for Hyundai, explaining that they were found in the bottom of Jody's desk, and had not been shredded as previously indicated.

[5] Dale Ueno testified that one check was dated October 26th and two were dated October 31st, and related to vehicles that were ultimately sold by Graham-Staunton on October 26th, November 4th and November 7th. The checks from Graham-Staunton to Debtor remained uncashed as of November 17, 2006.

11

New Beginnings. Cornelison testified that Debtor's New Beginnings lot is staffed by three Graham-Staunton employees, who were previously employed by Debtor on Debtor's petition date. One of the three employees is Davis. Third, while the vehicles were sold from Debtor's secondary lot by former employees of Debtor, Gutierrez and Cornelison were able to siphon the retail profits from the three sales by first wholesaling the vehicles to Graham-Staunton and then retailing the vehicles through Graham-Staunton, thereby avoiding the effects of the cash collateral restrictions imposed by Debtor's bankruptcy.

In addition to the above irregularities, Hyundai also discovered that Debtor was not remitting funds to Hyundai on a timely basis after vehicles were sold. When Hyundai was told by Debtor's employees that funding documents had been shredded, Hyundai took it upon itself to contact retail lenders. Hyundai learned from the retail lenders that many vehicles had indeed been funded, despite the representations of Debtor to the contrary. In fact, in at least one instance, it appears that Debtor may have not paid Steve's for a used vehicle that was floored by Hyundai. The vehicle was then sold, and payment was made to neither Steve's or Hyundai.

The facts in this case establish that Debtor's business operations were grossly mismanaged both pre-petition and post-petition. Accordingly, the Court's inquiry now turns to whether unusual circumstances show that dismissal or conversion is not in the best interest of creditors or the estate. As noted earlier, Debtor's counsel did not appear at the March 20, 2007, hearing. The actions, or inactions, of Debtor's counsel in this case preclude this Court from articulating unusual circumstances that show that either conversion or dismissal is not in the best interest of the creditors.

While dismissal of this case may not provide any advantage to Debtor's creditors, conversion to Chapter 7 of the Bankruptcy Code would allow for the appointment of a Chapter 7 Trustee who could liquidate Debtor's remaining assets in an expeditious manner. The conversion of this case to Chapter 7, as opposed to the appointment of a trustee under § 1112(b) and § 1104(a)(3), would also better serve the creditors in this case, where the Debtor no longer

12

has an ongoing business to preserve, in that the creditors would not be burdened with the higher fees associated with the administration of a Chapter 11 case.

Given the absence of unusual circumstances, the Court's final focus now shifts to whether Debtor has shown a reasonable likelihood that a Chapter 11 plan will be confirmed within a reasonable period of time; and has provided a reasonable justification for the disappearance of Debtor's business records. Approval of Debtor's disclosure statement was previously denied on the grounds that it was "woefully inadequate" and it appears, based upon Debtor's pathetic efforts in the past, highly unlikely that Debtor will be able to formulate a confirmable Chapter 11 plan at any time.

For the reasons discussed above, the Court finds that conversion of this case to Chapter 7 of the Bankruptcy Code, and appointment of a Chapter 7 trustee to administer the remaining assets of Debtor's bankruptcy estate, is in the best interest of Debtor's creditors. Thus, consistent with this Memorandum of Decision, the Court will enter a separate order providing as follows:

IT IS ORDERED that the Motion to Convert filed by the United States Trustee on December 28, 2006, is granted; and this case is converted to Chapter 7 of the Bankruptcy Code.

BY THE COURT

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

13

William L. Needler
William L. Needler and Associates
555 Skokie Blvd Ste 500
Northbrook, IL 60062
(847) 559-8330 ph
(847) 559-8331 fax
Bar ID 02025248
E-Mail: WilliamLNeedler@aol.com
     Attorneys for the Debtor
     Incredible Auto Sales LLC

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF MONTANA

IN RE:               )
                   )
   INCREDIBLE AUTO SALES L.L.C.)    Case No. 06-60855-RBK
                   )
                   )    Judge Ralph B Kirscher
                   )
           Debtor   )    A Chapter 11 Proceedings
                   )    For Reorganization
                   )    Converted to a Chapter 7

## TRIAL EXHIBIT 2

Motion of Chapter 7 Debtor, Incredible Auto Sales L.L.C. to   Clarify the Record
and Facts in this Case and to Request Reconsideration in Modifying, Vacating
and Amending Various Findings set forth in the Court's Memorandum of Decision
of April 10, 2007, so as to make this Record Clear and Accurate with Declaration
and Exhibits filed at Docket # 364.

## FOR HEARING ON REMAND

## SET FOR 9:00 A.M. ON AUGUST 30, 2007

## ON FIRST INTERIM, FINAL APPLICATION AND SUPPLEMENTAL APPLICATION

## FOR ALLOWANCE OF FEES AND EXPENSES FOR DEBTOR'S ATTORNEY

## WILLIAM L. NEEDLER AND ASSOCIATES

William L. Needler
William L. Needler and Associates
555 Skokie Blvd Ste 500
Northbrook, IL 60062
(847) 559-8330 ph
(847) 559-8331 fax
Bar ID 02025248
E-Mail: WilliamLNeedler@aol.com
        Attorneys for the Debtor
        Incredible Auto Sales LLC

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MONTANA

IN RE:                              )
                                    )
INCREDIBLE AUTO SALES L.L.C.)       )   Case No. 06-60855-RBK
                                    )
                                    )   Judge Ralph B Kirscher
                                    )
                    Debtor          )   A Chapter 11 Proceedings
                                    )   For Reorganization
                                    )   Converted to a Chapter 7

## MOTION OF CHAPTER 7 DEBTOR, INCREDIBLE AUTO SALES L.L.C.,

## TO CLARIFY THE RECORD AND FACTS IN THIS CASE AND TO REQUEST

## RECONSIDERATION IN MODIFYING, VACATING AND AMENDING VARIOUS

## FINDINGS SET FORTH IN THE COURT'S MEMORANDUM OF DECISION DATED

## APRIL 10, 2007 SO AS TO MAKE THIS RECORD CLEAR AND ACCURATE

NOW COMES the Debtor, Incredible Auto Sales L.L.C., now in a Chapter 7

Proceeding pursuant to the April 10, 2007 at Entry 353 and 354 – this was entered after

a prior Objection to the conversion of this case to a Chapter 7 was filed by the Debtor

herein on January 11, 2007 at Docket #180 and filed after this Debtor's Motion for



EXHIBIT
TRIAL

Continuance and Leave of its Counsel to Appear Telephonically were denied without explanation. The Debtor now requests:

    A.)    That this Court correct the Record and Remove the Various and certain Unfair Findings based on misinformation contained in its Order of April 10, 2007;

IN SUPPORT hereof, the Debtor states as follows:

1.)    This Debtor, a Retail Franchised Car Dealer with a Kia Franchise filed Chapter 11 on October 17, 2006;

2.)    At the time this Debtor filed Chapter 11, it acknowledged to all Creditors the U.S. Trustee and this Court that:

    A.)    It was "out of trust" with Hyundai Motor Finance on its pre petition Floor Plan; and

    B.)    That certain pre petition consumer liens on pre petition sales had not been paid.

3.)    No effort was made by the Debtor or Its Counsel to hide these facts – there was no cover-up of these facts.

4.)    The Court had in its Order of April 10, 2007 repeated verbatim the Debtor's Pleading filed on January 11, 2007.

5.)    This Debtor and his Attorney adopt these verbatim assertions in paragraphs (1) through (21) of that Pleading as being totally correct on the date this Debtor's Pleading entitled <u>Debtor's Response, Resistance, and Objection to the U.S. Trustee's Motion to Convert</u> was filed. [It should be noted this

Response had various <u>Exhibits</u> which were not attached or referred to in the April 10, 2007 Order, which are again adopted herein.]

6.) This pleading of January 11, 2007 at Docket #180 is adopted herein in further support of this Motion to Reconsider, Vacate, Amend and Modify.

7.) It seems to this Debtor that any misinformation here most likely has stemmed from three basic problems which unfortunately neither this Debtor nor its Counsel can fix – that is (a.) the pre petition "out of trusts" on the Debtor's Floor Plan, (b.) the unpaid pre petition liens on vehicles already sold and (c.) the unfair and inaccurate Report to this Court filed by the U.S. Trustee on 3/20/07 at Docket #337.

8.) No one has suggested at any time during the Chapter 11 how the pre petition problems in Paragraphs (a) and (b) above could have been cured post petition.

9.) The Bankruptcy Code when it was adopted in October 1947 basically recognized two distinct entities on filing: one – the pre petition entity and two – the post petition Debtor entity. There is little that the post petition entity could do to change or vary any of the pre petition events or cushion their affects.

10.) The Debtor-in-Possession did make efforts after filing to change its post petition operations to prevent any other missteps that were alleged to have occurred pre petition. The Debtor's management was changed at the bequest of this Court, Creditors and the Floor Plan Lenders. This was done voluntarily by the Debtor.

11.)   This Court seems to forget these management changes were part of the Agreed to Cash Collateral Order.  The Order with Hyundai Motor Finance, which was an Order not implemented by Hyundai or the Court for over 30 days.

12.)   The fact that General Manager, Ken Cornelison, may have proven later on to be untrustworthy should not be thrown around or used to support the U.S. Trustee's concept that this was a "rudderless ship". (See Docket entry #337)

13.)   This may have appeared as a "rudderless ship", when it was forced by Hyundai Financial to exist and operate for over 30 days without Use of Cash Collateral  Funds and with no advertising funds available.  It was stopped "dead in the water" through the fault of Hyundai Financial not the Debtor.

14.)   Has anyone stopped to calculate the operating losses to this Estate and to All Creditors in this Chapter 11 caused by this Hyundai's intentional actions in not approving a Stipulated Settlement made under oath in appearances before the Court?  It should be incumbent on the Chapter 7 Trustee, Joe Womack, to look at this aspect of the case as to the quantity of damages caused by Hyundai to this Estate through this purposeful inaction.

15.)   The U.S. Trustee's Objection to the Employment of Clarke B. Rice left the Debtor with no Co-Counsel.  Should this be blamed on the Debtor's Counsel who was told who to use and who inherited "The Out of Trust Pre Petition Sales" and the "unpaid pre petition consumer liens" on filing.

16.)   To blame these events on the Debtor's Counsel "as steering a rudderless ship" is very unfair.  He could do nothing about these alleged pre petition

events except to handle daily a myriad of post petition phone calls himself and refer these cloudy fact situations to the General Manager to attempt to sort out.

17.)   Daily throughout this case Debtor's Counsel conferred with the Debtor through its then Co-Counsel and General Manager as to the appropriate action to be taken as to daily happenings- most of these conferences concerned pre petition matters and unpaid liens.

18.)   This Court's Order fails to recognize that the Debtor and his Counsel have kept the U.S. Trustee totally informed as to the Status of the business records on the premises, which were generally as follows:

A.)   When a Subpoena was issued on Nick Gutierrez by the U.S. Justice Department as to certain Debtor-in-Possession files for the years 2005 and 2006, the Debtor through Counsel immediately tried to cooperate with the U.S. Justice Department and immediately contacted the U.S. Attorney and conferred with the U.S. Trustee in an attempt to:

(1.)   Arrive at a Stipulation between the parties to protect these D.I.P. records; and then

(2.)   At the same time notify this Court of this Agreement; and

19.)   As a result of these efforts, a Stipulation was prepared by the Debtor through its Counsel; and the terms of this Stipulation were agreed to by U.S. Attorney (See Exhibit A.) and then part of this Agreement was later avoided by an after hours voice mail; - the after hours voice mail to the Debtor's Counsel left by

the Justice Department was to the effect that the U.S. Justice Department did not believe that this U.S. Bankruptcy Court had any jurisdiction over these records and would not recognize that reference of the Debtor file issue to this Court was necessary; and  (See further <u>Exhibit B and C.)</u>

20.)  It was the Debtor's position and that of its Counsel that these records were property of the estate and could and should not be just given up without leave of Court.  This opinion was given to the U.S. Trustee again with little or no voice support given the Debtor to this position.

21.)  At that juncture the U.S. Trustee although fully informed as to the Government's attempts to seize these documents, the U.S. Trustee expressed little concern over the maintenance and protection of these files at the Debtor's office location or of Counsel's efforts to inform the Court.

22.)  The Debtor has also attached its Exhibits B and C in support of the continuing efforts and diligence of the "Rudderless Debtor" to protect its records.  At this date they are protected.

23.)  This Court at the top of page 6 of this April 10, 2007 Order, seems to be in a quandary as to the 2005 and 2006 records.  It should be made clear – the records that were missing were the Chapter 11 computer records that General Manager, Cornelison, had on his computer.  These related to all computer print outs used by the Debtor and his Counsel as to Exhibits filed in this Court.  His computer contained all the backup computer records relating to preparation of the Monthly U.S. Trustee Reports.  Cornelison did not take hard copy files relating to vehicle transactions for 2005 and 2006 or any other

Debtor transaction files. It was these records which the Debtor, his Counsel and the U.S. Attorney were laboring over. It was these records on which daily access was required for closing on current vehicle sales and liquidation of Hyundai assets underway at the time. This Court should recall that at this time, the Sale to Rimrock-Chrysler had been approved but the approval of the Kia Franchise transfer was still unanswered and unapproved by Kia Motors of America. It was these records which the Justice Department and the Debtor have now protected.

24.)  From the outset of this case, the Debtor's intent was to sell its Kia Franchise. The Debtor and its Counsel made every effort to maximize the assets sale and maximize this franchise value for the benefit of the Creditor..

25.)  The Creditors did not do this – the Debtor did this. The Debtor and his Counsel personally negotiated with Rimrock-Chrysler-no Creditor was present. It is wrong to believe that the Creditors in anyway contributed to the reduction of the debt due Hyundai. To the contrary, Creditors made every attempt to torpedo this ship at every turn. If this Court will remember, it was the Debtor's Attorney that pleaded with the Court to approve the sale of the Kia Franchise to Rimrock-Chrysler over Creditor objections. It was a Creditor who attempted to sink and abort the sale of assets of the "Rudderless Ship" – not the Debtor or his Counsel.

26.)  All the way through this asset liquidation process, it has been the Debtor and his Counsel attempting to maximize the recovery of assets and not otherwise. This Order also includes this language "the court appreciates the efforts

various creditors are making in an attempt to salvage potential sales value left in the Debtor's assets"  This Debtor and his Counsel are baffled by this comment, since no one has assisted in the sale of these assets so as to reduce Hyundai Claim.  (See further Sworn Declaration.)

27.)   Cornelison was let go to save the $10,000 per month where there was no blanket Use of Cash Collateral plus that Cornelison did little over the last 60 days of his employment failed to enhance and sell inventory at retail.  It was Cornelison who limited the hours of business of the Store during the week and he chose to close the Dealership on Saturdays and Sundays.  He was mindless and totally unaware that over 30 various customers came to the lot on these weekend days to see and view vehicles. (See Sworn Declaration.)

28.)   A number of his wholesale sales approved by Hyundai and Cornelison alone were not approved by others on the management team even though Cornelison had promised this team not to agree to any bulk sale or bulk wholesale sale prices with Hyundai without in-house approval.

29.)   This Debtor contrary to the U.S. Trustee's contention – was not a "rudderless ship" but a ship with a Debtor and his Counsel trying to maximize its asset values through liquidation.

30.)   The U.S. Trustee says that the Debtor's Counsel "has done virtually nothing to benefit the Debtor or its Creditors".  This is absolutely false! - the record of this case will prove this.

31.)   The Debtor's Counsel was instrumental in constantly prodding the pre petition
Sales Broker as to the franchise sales effort and contacting other interested
parties about this sale.

32.)   The Debtor's Counsel additionally supported Hyundai Finance in its
Adversary a defense action Defense so as to get the majority of the Auction
Cars and the funds related thereto credited to Hyundai Claim.

33.)   The Debtor's Counsel worked out the arrangement to have Clarke B. Rice
hold all the titles – this protective step has worked and no vehicles were ever
sold or transferred without moneys being deposited during the D.I.P. to the
Debtors or its Counsels knowledge.

34.)   The criticism of this Debtor-in-Possession and its Counsel in this Order is
without foundation and is based on a valueless unsubstantiated opinion of
one individual given to this Court.

35.)   The U.S. Trustee's Report to this Court at Docket # 337 critical of the Debtor's
Counsel is baseless, false and should be stricken. It is factually untrue.

36.)   The U.S. Trustee's Motion is critical that "Gutierrez did not transfer his
ownership interest" – this was not done because such an action would be an
express violation of the Franchise Agreement. This U.S. Trustee criticism is
without justification. (See Sworn Declaration attached.)

37.)   Also the U.S. Trustee Motion states that as of November 26, 2006 the "out of
trust" amount had increased to $626,131 from $366,880 – This allegation was
refuted by direct testimony in this Courts record since after October 17, 2006
filing date no vehicles were "sold out of trust". Any sales proceeds were

deposited in the Trust Account or became contracts in transit.- This U.S. Trustee allegation is false. No moneys were spent out of the Trust Accounts until after December 4, 2007. (See Sworn Declaration.)

38.) This Courts observations on page 6 – "that many of the allegations that have been made in this case are criminal in nature and deeply troubling" – on this Debtor's Counsel will agree. The Court should remember these types of allegations relate all to pre petition actions not post petition.

39.) The Court's comments also on page 6 "Debtor's Attorney has done virtually nothing to benefit either Debtor or its Creditors" – this statement should be vacated since it is unsupported by the record and is false.

40.) Three times in this Court's Order, this Court refers to the fact that on March 20, 2007, the Debtor's Counsel did not appear. This Court is aware that Counsel had at an earlier time informed this Court that he could not appear on this date – his Motion for Continuance requested he be granted leave to appear telephonically. The Order denying continuance was silent as to this request. (See Sworn Declaration.)

41.) This Order of April 10, 2007 fails to make clear that all these alleged actions whether criminal or otherwise occurred before October 17, 2006 except for the insider Hardin Staunton Chevrolet Trade. All these events had nothing to do with the post petition entity.

42.) Why is it that this post petition Debtor and its Counsel should be blamed for this events occurring prior to October 17, 2006.

43.) This Debtor and its Counsel agree with the Court, that the pre petition events, which left consumers with unpaid liens and debts is terrible and unforgivable and that is one reason frankly that all concerned with this Debtor organization have worked so hard to sell assets, pay off Hyundai and to collect and recover on the collection law suits still out there – <u>this is the only way to get these pre petition people paid.</u>

44.) This Court should look in the record and see who else has fought to collect the potential $387,200 plus due to the Debtor from the State Court Law Suit. Who else has stepped up to support these efforts to get these funds collected? (See <u>Exhibit E</u>.)

45.) The false findings and unsupported comments in the April 10th Order should be vacated and removed.

WHEREFORE for the reasons stated, this Debtor and its Counsel request this Court clarify the record and attempt to correct for what this Debtor and its Counsel believe are inaccuracies – these events, which they believe to be false and unsupported, should be corrected.

The Sworn Declaration attached hereto plus the Exhibits hereto are adopted herein as further support to this Motion to Reconsider.

April 20, 2007

<u>/s/ William L. Needler</u>
Debtor's Attorney

| Attention: | **WILLIAM AANEEDLER NC** | Date: | 8/25/2007 |
|---|---|---|---|

| Company: | | Number of Pages: | 21 |
|---|---|---|---|

| Fax Number: | 1-910-673-1821,902 |
|---|---|

Voice Number:

From:  **Linda Howard**

Company:

| Fax Number: | (941) 792-0073 |
|---|---|

| Voice Number: | (914) 792-0797 |
|---|---|

Subject:  20 pages Exhibits Incredible Doc # 364

**Comments:**

02/19/2085  02:15    3106731221                                         PAGE  02/02
04/20/2027  14:11    4002347025              CLARKE B RICE PC        PAGE  01/01

# HYUNDAI MOTOR FINANCE
## ESTIMATED BALANCE DUE

| TRANSACTION | PAYMENTS | BALANCE DUE |
|---|---|---|
| HMFC Flooring | | $2,275,375.82 |
| Court ordered payment 12-31-2006 | $90,000.00 | $2,176,375.82 |
| Court ordered payment 2-02-2007 | $276,686.08 | $1,899,689.74 |
| Rimrock franchise sale 3-27-2007 | $421,211.57 | $1,478,478.17 |
| New Vehicle Sales (19)- Rimrock 3-28-2007 | $371,527.00 | $1,106,951.17 |
| New Vehicle Sales (2)- IAS 3-27-2007 | $34,000.00 | $1,072,951.17 |
| Used Vehicle Wholesale sales (8) - Rimrock | $81,278.00 | $991,673.17 |
| Used Vehicle Wholesale sales (5)- Tonkin | $37,200.00 | $954,473.17 |
| Used Vehicle Wholesale sales (21)- Portland RV | $174,600.00 | $779,873.17 |
| Used Vehicle Wholesale sales (24)- Kallspell | $204,650.00 | $575,223.17 |
| Used Vehicle Wholesale sales (4)- IAS | $29,260.00 | $545,963.17 |
| Used Vehicle sent to CO auction (22) (est.) | $220,000.00 | $325,963.17 |
| Payment to HMFC 3-07-2007 | $75,000.00 | $250,963.17 |
| Payment to HMFC 3-31-2007 (IC Optima) | $11,395.00 | $239,568.17 |
| Stockman Bank  Trust Accounts 4-20-2007 | $19,700.00 | $219,868.17 |
| South Seattle Auto Auction (split) | $27,200.00 | $192,668.17 |
| Shop Equipment and Furniture (est.) | $56,880.00 | $135,788.17 |
| Landlord payment for fixtures | $5,000.00 | $130,788.17 |
| Remaining KIA parts inventory | $76,000.00 | $54,788.17 |
| Other parts | $4,750.00 | $50,038.17 |
| Auto Auction of Montana | $50,000.00 | $38.17 |

### OTHER ASSETS

| | |
|---|---|
| United Car Care 80% less loan | $387,200.00 |
| Outstanding dealer reserves | $24,509.13 |
| Receivables: Warranties, reserves, customers | $8,200.00 |
| Martin Feller claim | $13,100.00 |
| | |
| TOTAL | $433,009.13 |



EXHIBIT

William L. Needler
William L. Needler and Associates
555 Skokie Blvd Ste 500
Northbrook, IL 60062
(847) 559-8330 ph
(847) 559-8331 fax
Bar ID 02025245
E-Mail: WilliamLNeedler@aol.com

Attorneys for the Debtor
    Incredible Auto Sales LLC

Clarke B. Rice
Clarke B. Rice P.C.
2951 King Avenue West
Billings, Montana 59102
(406) 254-2500 ofc phone
(406) 294-2525 fax
Montana ID # 1289
E-Mail: Clarkerice@lmt.net

Co-Counsel for the Debtor
    Incredible Auto Sales LLC

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| IN RE: | |
| INCREDIBLE AUTO SALES L.L.C. | Case No. 06-60855-RBK |
| Debtor | Judge Ralph B Kirscher |
| | A Chapter 11 Proceedings For Reorganization |

**INCREDIBLE AUTO SALES L.L.C., DEBTOR**

**List of Debtor's Witnesses For Continued Emergency Cash Collateral
Hearing Scheduled for December 8, at 10 A.M.
In U.S. Bankruptcy Court, Butte, Montana**

The Debtor, Incredible Auto Sales L.L.C. will use the following as witnesses:

1.)     Ken Cornellson            General Manager and 10% Equity Owner
        1832 King Avenue West
        Billings, Montana 59102


December 3, 2006

                              /s/ William L. Needler
                              William L. Needler
                              Attorneys for the Debtor
                              Incredible Auto Sales LLC

02/18/2006  23:36    9106731821                                    PAGE  02/04
                                                                        p.01

# Incredible Kia
# Bank Accounts
# As of 12/03/06

| | | | |
|---|---|---|---|
| | DIP Account | $ | 36,737.01 |
| A | New Car Account | $ | 64,442.70 |
| B | Used Car Account | $ | 66,044.61 |
| C | Parts & Service Account | $ | 7,744.15 |
| D | Receivable Account | $ | 13.41 |
| F | Taxes | $ | 45.51 |
| | **Total** | **$** | **267,027.39** |

DEBTOR'S EXHIBIT 12



EXHIBIT
Debtors
D

PAGE  02/02

01/17/2006  23:54    5106731621                    (941) 792-0073         p.4

## Hyundai Motor Finance
## Estimated Balance Due

| | | | | Balance |
|---|---|---|---|---|
| Balance owed to Hyundai | | $ | 2,275,375.82 | |
| Court Ordered Payment | 12/31/06 | $ | 99,000.00 | 2,176,375.82 |
| Court Ordered Payment | 2/02/06 | $ | 276,686.08 | 1,899,689.74 |
| Ritenock Franchise Sale | 3/15/06 | $ | 465,000.00 | 1,434,689.74 |
| Kunrock New Car Inventory | 3/15/06 | $ | 371,527.00 | 1,063,162.74 |
| Used Vehicle Wholesale | 3/01–16/06 | $ | 264,360.00 | 798,902.74 |
| Used Car Inventory | Estimated | $ | 445,740.00 | 353,162.74 |
| Payment to Hyundai | 3/07/06 | $ | 75,000.00 | 278,162.74 |
| Stockman Bank Account | 3/19/06 | $ | 28,208.34 | 249,924.40 |
| South Seattle Auto Auction | Split | $ | 20,200.00 | 223,724.40 |
| Shop Equipment & Furniture | Estimated | $ | 50,000.00 | 172,754.40 |
| Remaining Kia Parts | | $ | 76,000.00 | 96,754.40 |
| Moskwa Auto Auction | | $ | 59,000.00 | 37,754.40 |
| Receivables: | | | | |
| Warranties, Customers, Reserves | | $ | 32,700.00 | 5,054.40 |
| | | | | |
| Balance | | | | 5,054.40 |

William L. Needler
William L. Needler and Associates
555 Skokie Blvd Ste 500
Northbrook, IL 60062
(847) 559-8330 ph
(847) 559-8331 fax
Bar ID 02025248
E-Mail: WilliamLNeedler@aol.com
    Attorneys for the Debtor
    Incredible Auto Sales LLC

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

IN RE:

| | | |
|---|---|---|
| INCREDIBLE AUTO SALES L.L.C. | ) | CASE NO 06-60855-RBK |
| | ) | |
| Debtor | ) | Judge Ralph B Kirscher |
| | ) | |

## EXHIBIT 3

## TO DISCLOSURE STATEMENT

## DEBTOR'S CURRENT ANALYSIS OF ASSETS SECURING HYUNDAI MOTOR FINANCE SECURED CLAIM WITH ESTIMATED SALE PROCEEDS AND LIQUIDATION PROCEEDS WHICH WILL APPLY TO THIS CLAIM. (3/19/07)

902 Exhibit A Title page

William L. Needler
William L. Needler and Associates
555 Skokie Blvd Ste 500
Northbrook, IL 60062
(847) 559-8330 ph
(847) 559-8331 fax
Bar ID 02025248
E-Mail: WilliamLNeedler@aol.com
   Attorneys for the Debtor
   Incredible Auto Sales LLC

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF MONTANA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| INCREDIBLE AUTO SALES L.L.C. | ) | CASE NO 06-60855-RBK |
| | ) | |
| Debtor | ) | Judge Ralph B Kirscher |
| | ) | |
| | ) | |

### NOTICE OF FILING

Please be advised that the attached *STATUS REPORT AND ITS LIQUIDATION* was

filed electronically with the above Bankruptcy Court, Billings, Montana on March 20,

2007.

March 20, 2007

                /s/ William L. Needler
                Attorney for the Debtor
                Incredible Auto Sales L.L.C.

### PROOF OF SERVICE

    William L. Needler, an Attorney, hereby certifies that the above and foregoing
was filed on March 20, 2007 with the Clerk of the Bankruptcy Court using the CM/ECF
system, which will electronically notify all persons listed with the Court.

902 Status Report
3-20-07
         4
         902 Incredible

CHRISTOPHER P BIRKLE    lovellaw@hotmail.com
ALAN C. BRYAN    abryan@crowleylaw.com
SHANE P. COLEMAN    spcoleman@hollandhart.com,
bbowler@hollandhart.com;vhenry@hollandhart.com;intaketeam@hollandhart.com
GREGORY W. DUNCAN    gd@mt.net, kg@mt.net
BRUCE F. FAIN    bruce@murphkirk.com, pam@murphkirk.com;amy@murphkirk.com
CHARLES W. HINGLE    chingle@hollandhart.com,
bbowler@hollandhart.com,mhauck@hollandhart.com,jritchie@hollandhart.com,pmoritz@hollandhart.com
,lsawatzke@hollandhart.com
JEFFERY A. HUNNES    jhunnes@ghrtlawfirm.com
DOUG JAMES    james@moultonlawfirm.com, smarble@moultonlawfirm.com
NEAL G. JENSEN    Neal.G.Jensen@usdoj.gov
DANIEL P. MCKAY    Dan.P.McKay@usdoj.gov
WILLIAM L NEEDLER    williamlneedler@aol.com
CHRISTIAN T. NYGREN    nygren@bigskylawyers.com,
becki@bigskylawyers.com;maul@bigskylawyers.com
OFFICE OF THE U.S. TRUSTEE    ustpregion18.gf.ecf@usdoj.gov
JAMES A PATTEN    japatten@ppbglaw.com,
aschueler@ppbglaw.com;ESchoemer@ppbglaw.com;mberg@ppbglaw.com
CLARKE B RICE    clarkerice@imt.net
JEFFREY N RICH    jrich@klng.com
ROSS P. RICHARDSON    rossrichardson@qwest.net, henningsenvucuro@qwest.net
JASON S RITCHIE    jritchie@hollandl hart.com , lsawatzke@hollandhart.com;bbowler@hollandhart.com
LISA SWAN SEMANSKY    semansky@bresnan.net


I also hereby certify that it was served by facsimile on March 20, 2007 from the
Attorneys offices.

/s/ William L. Needler

Incredible Auto Sales
Zsaneece Gutierrez
1832 King Avenue West
Billings, MT  59102
(406) 652-3297 new fax

Clarke B Rice
2951 King Avenue West
Billings, MT 59102
(406) 294-2525 fax

Saturday, August 25, 2007 10:46 AM      Linda Howard  (944) 792-0073

William L. Needler
William L. Needler and Associates
555 Skokie Blvd Ste 500
Northbrook, IL 60062
(847) 559-8330 ph
(847) 559-8331 fax
Bar ID 02025248
E-Mail: WilliamLNeedler@aol.com
      Attorneys for the Debtor
      Incredible Auto Sales LLC

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF MONTANA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| INCREDIBLE AUTO SALES L.L.C. | ) | CASE NO 06-60855-RBK |
| | ) | |
| Debtor | ) | Judge Ralph B Kirscher |
| | ) | |
| | ) | |

## STATUS REPORT OF DEBTOR AND ITS LIQUIDATION

The Debtor which is operating under its intent to liquidate all assets has filed with

its Disclosure Statement Exhibit 3 which is again attached hereto;

The Exhibit attempts to show the affect of the sale of assets and the present

progress toward the total liquidation of all assets.

Additionally, over the last 10 days or so discussions have been held with the U.S.

Justice Department over certain of the Debtor files, that this Department wanted

secured.

The following files have been transferred to the U.S. Justice Department with

consent and knowledge of the U.S. Trustee;                    

This transfer included also continued discussions and consent between the Debtor's Attorney and U.S. Assistant Kurt Alme at the U.S. Justice Department:

Three Large file cabinets are in the possession of the U.S. containing:

    A.)    2005 Records;

    B.)    2006 Records;

These cabinets cover Dealer Vehicle sales and transactions for the years 2005 and 2006.

The 60 plus Deal Jackets for this period relating to present inventory have been returned to the Debtor so it can complete its Title Work and to facilitate vehicle transfers on sold vehicles;

The Kia Sale to Rimrock Chrysler is not complete as of yet – Documents to facilitate this closing are being deposited in Escrow with Chicago Title and Trust in Billings, Montana;

Also reported to the U.S. Trustee and the Justice Department was the deletion by Ken Cornellson of all the financial records on the office computer located in the General Managers Office.

The General Manager who was employed by the Debtor at $10,000 a month was terminated near the beginning of the month. This was done with consent of the Debtor and Hyundai Financial and since continued Cash Collateral Usage is restricted.

A UPS demand was served upon this departed disgruntled employee with no response.

This Status Report is filed since the Debtor's Attorney has a conflict and cannot be physically present at the Hearing on March 20, 2007 at 9:00 A.M. in Billings,

Montana and even though prior notice was given to the Court this Attorney has not been:

A.)   Able to appear telephonically as requested;

B.)   Or been able to find a replacement; and

C.)   The Court is aware of these facts.

Should parties have questions as to this liquidation and its progress, they should call the Debtors Attorney at (910) 673-1820.


March 20, 2007


/s/ William L. Needler

Attorney for the Debtor

From: **Amy Weston**
U.S. Attorney's Office
2929 3rd Ave. N.
P.O. Box 1478
Billings MT  59103
Phone:  406-247-4621
FAX:  406-657-6058 (3rd Floor)



To:     William Needler

FAX #: 910-673-1821

Date: March 13, 2007

# Of Pages: 2

RE: GJ 06-BLG-147

Contents: Letter



EXHIBIT

03/13/07  10.51 FAX 406 657 8050        US ATTY - BLGS 3RD                    ☐ 002/003



U.S. Department of Justice

**United States Attorney**
**District of Montana**

KURT G. ALME
First Assistant U.S. Attorney

2929 3rd Avenue North, Suite 400
Billings, MT 59101                                               Phone: (406) 657-4101

March 13, 2007

*Via facsimile 910-673-1821*

William L. Needler
William L. Needler and Associates
555 Skokie Blvd., Suite 500
Northbrook, IL 60062

RE:   GJ-06-BLG-147

Dear Bill:

I received your fax dated March 12, 2007.

I understand that you are counsel to the corporate debtor. I further understand that the corporate debtor does not contest that the Grand Jury's subpoena, number GJ-06-BLG-147, was properly served on the debtor on March 2, 2007. I further understand that the corporate debtor is the custodian of the records requested in the subpoena and will continue to be the custodian even after the contemplated sale of business assets.

This office does not object to working with you to obtain the approval of the bankruptcy court to permit the debtor to provide us with the documents and files requested in the subpoena, provided: (1) the approval occurs and the requested documents are provided prior to the required date set forth in the subpoena; and (2) a process remains in place until that time, agreed to by this office, that assures the integrity of the documents. This office is also willing to work out an arrangement whereby your client retains access to the 60 Deal Jackets as long as that arrangement provides for the integrity of those records.

Please be aware that this office does not concede that approval of the bankruptcy court is required for the custodian to comply with the Grand Jury's subpoena. This office does not in any way waive enforcement of the subpoena if the custodian fails to fully and timely comply.

This office agrees with the process that I understand is currently in place whereby no one may have access to the records contained in the boxes and file cabinets taped closed last Friday without such access and any modifications to the records being personally monitored by Clarke Rice. From your initial phone call

yesterday and Mr. Woodward's phone call yesterday, I understand this process may cause problems for the corporate debtor. We are willing to work with you to modify the process, provided you do not implement any changes until we agree. For example, as I discussed with Mr. Woodward yesterday and discussed with both of you last Friday, this office would agree to have the records removed to a storage facility controlled by the corporate debtor, as long as only Mr. Rice has access to the records and any modifications to the records are personally monitored by Mr. Rice.

Please let me know if any of our understandings are incorrect. Please also let me know the names of the individuals you are representing in their capacity of administering the corporate debtor. I will await your call to discuss how you want to proceed to obtain the approval of the bankruptcy court, and to discuss any proposed changes to the process that is in place to protect the integrity of the documents.

Sincerely,

WILLIAM W. MERCER
United States Attorney

KURT G. ALME
First Assistant U.S. Attorney

cc:  Verne Woodward *via fax 406-245-6253*
     Tanya Dvarishkis *via fax 406-245-6253*
     Dan McKay *via fax 406-761-8895*

Tuesday, March 13, 2007 10:46 AM          Linda Howard  (941) 792-0073

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MONTANA

William L. Needler
William L. Needler and Associates
555 Skokie Blvd Ste 500
Northbrook, IL 60062
(847) 559-8330 ph
(847) 559-8331 fax
Bar ID 02025246
E-Mail: WilliamLNeedler@aol.com
    Attorneys for the Debtor
    Incredible Auto Sales LLC

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| INCREDIBLE AUTO SALES L.L.C. | ) | Case No. 06-60855-RBK |
| | ) | |
| | ) | Judge Ralph B Kirscher |
| | ) | |
| Debtor | ) | A Chapter 11 Proceedings |
| | ) | For Reorganization |

## STIPULATED AGREEMENT BETWEEN DEBTOR, U.S. TRUSTEE AND THE US JUSTICE DEPARTMENT AS TO CERTAIN DEBTOR FILES AND ORDER.

    The Debtor Incredible Auto Sales L.L.C. having entered into a Chapter 11

Reorganization before this Court on October 17, 2006; and

    This Court having exclusive jurisdiction over this Debtor's assets and all property

of this Estate; and

    The U.S. Justice Department (hereinafter "the USA") desiring to preserve certain

2006 transaction files of the Debtor; and to have these files under its control; and

    These files comprising approximately two large file drawers of documents now

sealed by the USA on the Debtor's premises at 1832 King Avenue West, Billings ,

Montana 59102; and

902 STIP AGREE DebUsTJustice
FL 3-13-07                                                    902 incredible

The USA desiring to move these files to their possession and custody; and

The Debtor requiring continuing access to an estimated 60 Deal Jackets representing the acquisition of vehicles in 2006 now in inventory for a period up to ____ days; and

These Deal Jackets being required for closing of sales presently pending to retail customers and wholsalers and further required for liquidation of inventory now on-going at the Kia Dealership; and

A Sale of the Kia Franchise together with all the Assets of the Debtor including its vehicle inventories previously approved by this Court which is now in the process of closing; and

The Parties desiring not to do anything or to take any steps to upset this Sale or the present marketing by the Approved Sale-Buyer of inventoried vehicles to the public so as to increase assets of this Estate; and the Parties desiring not to up-set the Sale of this Kia Franchise and the Closing thereof previously approved by this Court; and

In order to protect the sanctity of these sales and to prevent wide spread dissemination of information as to the USA involvement herein and all Parties desiring to protect this Estate and its liquidation so as to maximize assets for creditors; and

The Parties hereto, the Debtor, the U.S. Trustee and the USA Stipulate and Agree as follows:

1.) That the particular 2006 files previously sealed by prior agreement and now on the premises can be removed from the premises by the USA; and

2.) That the Debtor through the person of _ _ _  _____ may have access to these Deal Jackets as described above; and

3.)    That all efforts by the Parties shall be made by the Parties hereto to minimize

notice of this Stipulation and Order of Court to the Public or otherwise so as to

prevent public involvement and involvement by the Press and so as to prevent

damage to this Estate and to the on-going sale; and

4.)    That the Parties here to encourage this Court to also enter this Order "in

Camera" so as to protect these sales the Kia Franchise and its transfer and the

orderly liquidation process now underway.

Agreed to this ___ day of March 2007

                                       Incredible Auto Sales L.L.C.
                                            (the Debtor)

By _____  _____
           Its Attorney

           William L. Needler
           William L. Needler and Associates
           555 Skokie Blvd Ste 500
           Northbrook, IL 60062
           (847) 559-8330 ph
           (847) 559-8331 fax

           Dan McKay
           U.S. Trustee's Office
           Liberty Center Suite 204
           301 Central Ave
           Great Falls, MT 59401
           (406) 761-8777 phone
           (406) 761-8895 (fax)

By _____  _____
           Its Attorney

           United States (USA)

Tuesday, March 13, 2007 10:46 AM          Linda Howard  (941) 792-0073

2929 3rd Ave North 4th Floor
Billings, MT 59101
(406) 247-4669 phone
(406) 657-6989 (fax)

By _____
Kurt Alme
Asst U.S. Attorney

Ordered and Approved __ this Day of March 2007
At Butte, Montana

_____
U.S. Bankruptcy Judge

Tuesday, March 13, 2007 9:44 AM          Linda Howard  (941) 792-0073

## WILLIAM L. NEEDLER AND ASSOCIATES
### Attorneys at Law

| Illinois Office | Nebraska Office |
|---|---|
| 555 Skokie Blvd. | P.O. Box 177 |
| Suite 500 | Fuller Building Suite H |
| Northbrook, IL 60062 | 2 North Spruce Street |
| (847) 559-8330 | Ogallala, NE 69153 |
| (847) 559-8331 Fax | (308) 284-4505 |
| (910) 763-6900 Cell | (308) 284-3813 Fax |
| E-mail: | E-mail: |
| WilliamL.Needler@aol.com | wneedler@qwest.net |

### FACSIMILE TRANSMISSION SHEET

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND CONTAINS INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE (CALL COLLECT) AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ILLINOIS ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.

**DATE:**   March 13, 2007

**TO:**    Clarke B. Rice
Clarke B. Rice P.C.
2951 King Avenue West
Billings, Montana 59102
(406) 254-2500 ofc phone          (406) 294-2525 fax

Zaaneece Gutirrez          (406) 652-3297 fax
Incredible Auto Sales LLC
1832 Kings Avenue West
Billings, Montana 59102

**COPY:**   Verne Woodward
Tanya Dvarishkis
c/o Hendrickson, Everson Noennig & Woodward PC
208 North Broadway Ste 324
PO Box 2502
Billings, MT          (406) 245-6253 fax

**RE:**    In Re: Incredible Auto Sales LLC
Case No. 06-60844-RBK
          2006 and 2007 files

**CODE:**   902

**FROM:**   William L. Needler and Associates          (910) 673-1821 fax
          (910) 673-1820 phone

902 FAX Zaaneece Gutirrez CLARK
FL 3-13-07



Tuesday, March 13, 2007 9:44 AM                    Linda Howard (941) 792-0073

Had a message from Asst U.S. Attorney to go ahead and prepare Stipulation as to files.

Please read the attached and get back to me right away.

My proposal is this would be sent to the Court E-mail right away for an Order granting permission

Call me – do not delay please (910) 673-1820.

Thank you,

William L. Needler

| | | | |
|---|---|---|---|
| Attention: | **WILLIAM AANEEDLER NC** | Date: | 8/25/2007 |
| Company: | | Number of Pages: | 6 |
| Fax Number: | 1-910-673-1821,902 | | |
| Voice Number: | | | |

From:     **Linda Howard**

Company:

Fax Number:     (941) 792-0073

Voice Number:     (914) 792-0797

Subject:    Incredible Doc 364 Declaration

**Comments:**

William L. Needler
William L. Needler and Associates
555 Skokie Blvd Ste 500
Northbrook, IL 60062
(847) 559-8330 ph
(847) 559-8331 fax
Bar ID 02025248
E-Mail: WilliamLNeedler@aol.com
      Attorneys for the Debtor
      Incredible Auto Sales LLC

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MONTANA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| INCREDIBLE AUTO SALES L.L.C.) | | Case No. 06-60855-RBK |
| | ) | |
| | ) | Judge Ralph B Kirscher |
| | ) | |
| Debtor | ) | A Chapter 11 Proceedings |
| | ) | For Reorganization |
| | ) | Converted to a Chapter 7 |
| County of Moore | ) | |
| | )SS | |
| State of North Carolina | ) | |

### SWORN DECLARATION OF DEBTOR'S COUNSEL IN SUPPORT OF MOTION OF CHAPTER 7 DEBTOR TO RECONSIDER THE APRIL 10, 2007 ORDER OF THIS COURT AND A REQUEST TO MAKE THIS RECORD CLEAR AND ACCURATE

William L. Needler on oath subject to the charge of perjury states as follows:

1.)    This Declarant is a licensed attorney from the State of Illinois and is also a

member of the Bar for the District of Columbia, Washington D.C.

2.)    This Attorney and Declarant herein having been licensed since 1952 also

spent some 23 plus years in business as an entrepreneur before returning to

the active practice of Law in 1947 in Chicago, Illinois.

3.)     Since that date, Declarant has handled and represented well over 300 Chapter 11 Debtors in all States and Districts in this Country except for Vermont, Maine, Alabama, Louisiana, Oregon and Washington.

4.)     During this period in representing Chapter 11 Debtors, he has appeared before the U.S. Supreme Court in Norwest Bank Worthington vs Ahlers 108, Sup Crt 963 (1988) relating to the Absolute Priority Rule under the Bankruptcy Code, participated and filed three other Writs before this Court with one granted without appearance, appeared in other Chapter 11 Appeals in the 2nd, 4th, 5th, 7th, 8th, 9th and 10th Circuits of the United States besides testifying before the Judiciary Committee of the U.S. Senate in 1985.

5.)     Declarant can state of the Chapter 11s he pursued well over 60% were farmers, and over 35 of these Chapter 11s were for retail car dealers.

6.)     Declarant can state that he was initially contacted by this Debtor in this case some 12 months prior to October 17, 2006 and after various initial discussions he never heard from the Debtor again until sometime around September 2006.

7.)     This Declarant on filing this case was aware of the out of trusts that had occurred but doesn't recall the exact volume of the out of trusts prior to filing.

8.)     Declarant stands by his prior comments made before this Court earlier that all his prior filings in Chapter 11 for Car Dealers included substantial out of trusts and also large number of unpaid pre petition unpaid liens.

9.)     Declarant has had numerous Chapter 11 Car Dealer cases where through the sale of the franchise and assets of the Dealership, all creditors were paid.

10.) The Declarant can state that with only one or two exceptions was his system of Cash Collateral Usage used in this case not adopted by the other Courts to account for Cash Collateral.

11.) Declarant believes that the U.S. Trustee's remarks in this case in its Report to this Court is unfortunate and also without much validity.

12.) Declarant can state that perhaps this Order of April 10, 2007 would have been different had he been permitted to appear on March 20, 2007.

13.) Declarant can state that he filed a Motion to Continue the U.S. Trustee's Motion to Convert to which continuance this U.S. Trustee had previously agreed.

14.) Declarant in the Motion to Continue requested leave to Appear Telephonically because he had commitment to the 8th Circuit U.S. Court of Appeals to have an Appellant Brief filed within that period or shortly thereafter.

15.) Declarant was not informed by this Court's Clerk until late the day before the hearing that he could only appear by video. (Further at that time he knew of no such video facilities here in North Carolina.)

16.) Declarant can state that this refusal to allow his appearance prevented any proper evidence from being presented by the Debtor or even for the Debtor to be able to Respond - unlike other courts even a temporary replacement was not even permitted by this Court.

17.) Declarant after Clarke Rice's resignation because of the U.S. Trustee's resistance, never sought out a Co-Counsel replacement because of the lack of funds of the Debtor.

18.)   Declarant has filed a First Application for Interim Fees and Expenses in which his detailed time is listed – this time record details the time and tasks on which  Declarant was employed  – a look at these time slips should convince one that indeed this Counsel did work diligently in this case for the Debtor.

19.)   Declarant would ask this Court and U.S. Trustee what is it that Declarant did not do or should have done – certainly he can't be made responsible for the Debtor's post petition personnel or the pre petition "out of trust" or unpaid liens.

20.)   Declarant was aware and discussed the severance of the General Manager and recalls even calling Hyundai to tell them about this.

21.)   Declarant does know that the Debtor elicited promises from Cornelison that the computer in question would not be changed or harmed in any way.

22.)   The Declarant can state that this allegation that "out of trusts continued" after October 17, 2007 is false.  No vehicles to Declarant's knowledge were sold without funds going into the Trust Accounts.

23.)   Declarant had furnished Exhibit D hereto , which was an accurate listing of the Trust Account balances on 12/03/06 with $267,027.30 on hand – allegations of "out of trust" sales post petition can not be proven since they did not happen.

24.)   Declarant has attached Exhibit E here to which lists the claim of Hyundai and the entries showing sales proceeds against this pre petition claim.

25.)   Declarant has no knowledge of any creditor who has participated in the collection of any of these funds. (See Exhibit E.)

26.)    Declarant can state that the statements made in the Motion to Reconsider
and in this Declaration he believes to be true and correct to the best of
Declarant's knowledge and belief and he would so state before this Court
under oath.

/s/ William L. Needler

April 20, 2007

William L. Needler
William L. Needler and Associates
555 Skokie Blvd Ste 500
Northbrook, IL 60062
(847) 559-8330 ph
(847) 559-8331 fax
Bar ID 02025248
E-Mail: WilliamLNeedler@aol.com
    Attorneys for the Debtor
    Incredible Auto Sales LLC

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| IN RE: ) | |
| ) | |
| INCREDIBLE AUTO SALES L.L.C.) | Case No. 06-60855-RBK |
| ) | |
| ) | Judge Ralph B Kirscher |
| ) | |
| Debtor ) | A Chapter 11 Proceedings |
| ) | For Reorganization |
| ) | Converted to a Chapter 7 |

### TRIAL EXHIBIT 3

Motion of William L. Needler of the Law Firm of William L. Needler and
Associates, Attorney for the Debtor and Requests this Court to Modify, Amend,
Vacate and Reconsider its Order of May 18, 2007, Denying Attorney Fees and
Expenses for the Debtor's Attorney and to set a Rehearing and Trial, with
Exhibits Group A,B,C,D,E,F, and G.

### FOR HEARING ON REMAND

### SET FOR 9:00 A.M. ON AUGUST 30, 2007

### ON FIRST INTERIM, FINAL APPLICATION AND SUPPLEMENTAL APPLICATION

### FOR ALLOWANCE OF FEES AND EXPENSES FOR DEBTOR'S ATTORNEY

### WILLIAM L. NEEDLER AND ASSOCIATES

William L. Needler
William L. Needler and Associates
555 Skokie Blvd Ste 500
Northbrook, IL 60062
(847) 559-8330 ph
(847) 559-8331 fax
Bar ID 02025248
E-Mail: WilliamLNeedler@aol.com
    Attorneys for the Debtor
    Incredible Auto Sales LLC

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| INCREDIBLE AUTO SALES L.L.C. | ) | Case No. 06-60855-RBK |
| | ) | |
| | ) | Judge Ralph B Kirscher |
| | ) | |
| Debtor | ) | A Chapter 11 Proceedings |
| | ) | For Reorganization |
| | ) | Converted to a Chapter 7 |

### MOTION OF WILLIAM L. NEEDLER OF THE LAW FIRM WILLIAM L. NEEDLER

### AND ASSOCIATES, ATTORNEY FOR THE DEBTOR AND

### REQUESTS THIS COURT TO MODIFY, AMEND, VACATE AND RECONSIDER

### ITS ORDER OF MAY 18, 2007 DENYING ATTORNEY FEES AND EXPENSES FOR

### DEBTOR'S ATTORNEY AND TO SET A REHEARING AND TRIAL

NOW COMES the Debtor's Attorney, William L. Needler of William L. Needler

and Associates and requests this Court to:

    A.)    Modify, Amend, Vacate and Reconsider this Order of May 18, 2007, which:

        (1.)    Denied all fees and expenses requested except for $18,040 in fees and

        $4,610.89 in expenses, covered by the Pre Petition Retainer; and



EXHIBIT

(2.)   Ordered the sum of #3,388.31 in moneys from a Pre Petition Third Party Retainer paid over to the Chapter 7 Trustee; and

(3.)   Denied the award of the balance of $92,541.96 in fees and expenses from the First Interim Application and the Final Application for Allowance of Fees and Expenses of this Attorney and his Law Firm.

IN SUPPORT of this Motion by this Debtor's Attorney seeking relief from the Order of Disgorgement and additionally seeking approval of this $92,541.96 in fees and expenses from both the First Interim Application and Final Application for Allowance of Fees and Expenses both part of <u>Group Exhibit A</u> attached hereto, which were summarily denied, this Attorney states as follows:

1.)   This Debtor, a franchised Kia Automotive Dealer, which was located at 1832 King Avenue West, Billings, Montana filed Chapter 11 on the 17th day of October 2006 before this Court seeking relief; and for this filing and pursuit of this Chapter 11 Relief the Debtor had employed William L. Needler and his Law Firm pre petition to represent it.

2.)   It was the Debtor's contention on 10/17/06 that this filing was obviously the result of cash loses sustained to this Dealership Entity pre petition. Also, contributing to this cause, in the Debtor's belief , was the road construction project in front of this Dealer location, which limited and obstructed access to the Dealer Showrooms, and repair facilities for retail customers.

3.)   Also, threats and attempts had been made to the Dealership recently by certain Montana Auto Auctions to seize vehicles because of non-payments was an additional precipitating cause.

4.)     At the time of the filing, the Debtor also operated and staffed an additional location from which it showed, sold and closed used car sales to the Montana public.  This location, which was at 2951 King Avenue West was a rental property and also located on the heavily traveled King Avenue in Billings, Montana (also called the Auto Row).  This location developed large number of used car sales.

5.)     On filing an Application to be employed was filed with the Petition and shortly thereafter on 10/19/06, this Application of Employment by this Attorney was granted.

6.)     On 10/18/06, this Attorney filed his Motion Pro Hac Vice, which was later  also granted on 10/19/06.

7.)     These Applications set forth with Statement of Fees the exact retainer, the source of the retainer, the experience of this Attorney and his agreed to hourly rate.

8.)     No objection to this employment of this Attorney's rate was ever raised.

9.)     On or before filing, the Debtor assigned its lease of 2951 King Avenue to its related Company, Graham Staunton Chevrolet, which was located some 45 miles from here.   This Entity was under management separate from the Debtor.

10.)    At the time of filing, this Debtor had an inventory of 23 new vehicles with a value of $467,100.00 and 143 used vehicle with a value of $1,490,691.00 for a total value at Cash Collateral hearing, less some unpaid liens, of $1,425,566. (See Exhibit C.) (The used cars were  re-evaluated on filing.)

11.)    On filing, the total asset value of this Debtor in addition to the above vehicles was $2,779,.620.00  This value of assets did not however include the value of this Franchise. (See Exhibit C.)

12.)    On filing, these assets were secured to Hyundai Motor Finance, under a secured floor plan, which had a claim estimated at $2,163,000.00. (See further Exhibit C.)

13.)    The Debtor, under Its Cash Collateral Emergency Motion had offered Its Kia Franchise value to Hyundai Finance as further adequate protection.   This franchise at the time had been valued by the Debtor at $800,000.00.

14.)    This value was the value placed on the Franchise at the time by the Debtor, not this Attorney.  It was this value which the Broker was trying to realize by a sale prior to October 17, 2006.

15.)    Prior to filing, the Debtor had committed to the hiring of William L. Needler and his Law Firm because of his extensive background and experience in representing over 30 Automotive Dealers in various successful Chapter 11s.

16.)    The retainer agreed to pre petition was $25,000 and was agreed to be funded by a third party not a creditor – These were not Corporate Funds.

17.)    This retainer and cost advance were paid by Nick Gutierrez's wife, Zaneece Gutierrez, from funds that this Attorney was assured were her own personal funds.

18.)    This Attorney was assured that none of the $25,000 plus $1,039 filing fee wired to him came out of estate funds;

19.)   Although this Attorney had been discussing the precarious nature of the Kia
       Dealer's financial condition long before 10/17/06, this Attorney was unable to
       get this Dealer to move to file this case until the very last minute – This delay
       was through no fault of this Attorney.

20.)   As this Attorney recalls, at least more than 30 days prior to the 10/17/06, the
       Debtor agreed to file, send retainer and costs, send necessary papers,
       inventories, etc. -  this did not happen.

21.)   This Attorney, some 40 days before hand, had warned this Debtor that he
       would be attending his wife's Evanston, Illinois High School  55th Class
       Reunion in San Francisco, California over the weekend of October 15th etc.
       [This Attorney had agreed to this, since his wife had always faithfully attended
       his U.S. Merchant Marine Academy Class Reunions on the same yearly date
       for years – actually this Attorney missed his 1946 graduating class 60th
       Reunion at Kings Point, New York to attend his wife's function.]

22.)   As events would have it – the Debtor chose this period to call on this Attorney
       to do the impossible and that was to prepare all the current papers and filing
       papers and get them filed from a hotel room in San Francisco.

23.)   It has been unfair of this Court, which had prior notice of these events to
       criticize the somewhat delayed filing of the Debtor's Cash Collateral Motion
       and, yes, it was an Emergency.

24.)   Needless to say, the vacation of this Attorney and his wife was not very
       enjoyable.

25.) This Court must be mindful, based on past experienced, that Debtor's do not file Chapter 11's except just before the business is about to "go over the cliff". Late or not, whether convenient or not – it was this Attorney's belief that this estate and the creditors must be protected - this Court must know that – this is what this Attorney did.

26.) Prior to filing, this Attorney spent considerable time explaining to the Debtor that normally the only successful result achieved for a Chapter 11 Debtor in the retail automotive business was the Sale of the Franchise so that creditors can be paid.  Further that, at all times, normal Dealer operations must be maintained to protect this valuable asset, and to prevent a default under the Dealer Agreement.

27.) Actually at the date of this hearing on the First Interim Application for Fees, this Attorney had done exactly what  he represented and committed to do, that was to protect this estate, keep the Franchise in tact, get the Franchise sold so that moneys would be available for creditors and the estate.

28.) This Court has been very critical of this Debtor's Attorney which this writer believes is unjustified since he has done exactly what he set out to do on 10/17/06- (a) He kept the Franchise in tact; (b) He kept the store operating against all odds and great resistance; (c) With the sale of assets and liquidation of the Franchise, these funds have more than covered the Hyundai claim (except for any 506 claims it may claim by Motion in this Court;)  (See Exhibit D.)

29.) Additionally, now the Chapter 7 Trustee has additional assets to collect namely the lawsuit, dealer reserves and an additional receivable and warranty reserves; (See further Exhibit D.)

30.) This Attorney with all the road blocks thrown in his way by Creditors, and delays in this Court, this Attorney should be complimented and not condemned or penalized.

31.) The Debtor's Emergency Motion to Use Cash Collateral and offer of Adequate Protection was filed on October 26, 2006.

32.) It was sent to the Debtor to review before filing on October 23, 2006.

33.) This Court must remember the detail that was in this Emergency Cash Collateral Motion. Remember – (a) All new and used vehicles had to be re-evaluated; (b) The assets of the Dealership had to be exactly listed; (c) The Cash Collateral process of depositing funds, operating the Dealership under this proposed Cash Collateral Usage had to be put on paper, so this Debtor and his people had to to fully understand the procedure. (Actually, this segregation of Accounts, valuation of inventory on filing, definition of new and used vehicles and Adequate Protection proposals is the same system this Attorney has used on over 30 cases since his first Automotive Chapter 11 in 1980 before Judge John Flowers, the Braniff Airlines Judge in Texas.)  [It should be noted even in his First 1980 Chapter 11, the assets were sold with sufficient proceeds to paid off all creditors in full.]

34.) If this Court will recall, this Motion to Use Collateral filed herein was so complete and detailed that consents with no exceptions to Use Collateral

were gotten and achieved from all Creditors present before this Court under oath at the November 6, 2006 hearing. All of the parties present under oath stood before this Court and agreed to all the Debtor's cash proposals and the steps to protect collateral and the valuations to be used for such a program.

35.) It was from that point forward that things fell apart and full Use of Collateral was not gotten until 12/21/06, some 47 days later at Docket #159. This delay cannot be laid at this Attorneys door step but was a purposeful delay caused by Hyundai and the Debtor was left without any formal Order or help from this Court. [Except for minimal grants of moneys, no full operational Use of Collateral was granted until 12/21/06.]

36.) The pleading as attached as Exhibit E entitled Debtor's Emergency Motion to Enter Order Approving Cash Collateral. This Motion dated 11/17/06 was filed by the Debtor with the Stipulation attached. It was signed by all creditors at Docket #68 on 11/17/06 except Hyundai. This Motion sets forth the true facts with regards to the continued delay as to Cash Collateral Use. (See Exhibit E.)

37.) Again 5 days later this Debtor on 11/23/06 without Use of any Cash Collateral except for two payrolls, filed this pleading at Docket #78 entitled Debtor's Response, Resistance and Objection to Motion of HMFC to Debtor's Use of Cash Collateral. (See Exhibit F.)

38.) Again on 12/3/06 at Docket #106 was filed Debtor's Additional Motion for Extended Use of Cash Collateral through February 28, 2007. (See Exhibit G

attached.)  How in the world could this continued delay be blamed on William L. Needler?

39.)   After more hearings, Cash Collateral Usage was finally granted 12/21/06 at Docket #159 – From the hearing and consents from all parties on 11/06/06 until 12/21/06, – 45 days went by.

40.)   This Court should wonder what the total liquidation asset value of Debtor estate assets now shown on Exhibit D and now turned over to apply to the Hyundai claim would look like if Debtor's Cash Collateral Usage fully consented to by all parties on 11/06/06, but not ordered by this Court until 12/21/06 would have been made effective that date 11/06/06.

41.)   Forty Five (45) days with no advertising, forty five (45) days with just a couple of payrolls and some insurance.  In retrospect it is impossible to estimate the number and cost of the lost profitable retail sales.  This delay certainly under good conscience and good sense can not be blamed on this Attorney.

42.)   Remember with 137 used vehicles costed out at the then auction values, large numbers should have been sold in that period of time with large profits and large additions to Trust Account B.  [Hyundai should be penalized for this!]

43.)   It is incorrect to charge the Debtor and Debtor's Attorney with some type of neglect in not getting Hyundai to sign Cash Collateral Stipulation – can't this Court understand that Hyundai changed its mind after 11 /06-06 and was trying to "weasel out" of its promises to the Court of consent. Hyundai and its Attorneys on reflection after 11/06/06 tried to get their floor planned values

rammed down the Debtor — this was a much higher valuation and contrary to Bankruptcy filing rules.  <u>Failure to get consent was not Attorney Needler's fault.</u>

44.)   The charge has wrongfully been leveled that the Sale Motion under 11 USC Section 363, to Sell the Franchise and assets was defective because it was not accompanied by an approved Disclosure Statement; and therefore this Attorney should again be penalized.  This charge is manifestly unfair and not based on present 363 dales in Bankruptcy Courts around the Country.

45.)   This Court may not like it, but this Debtor Motion and Debtor procedure was in the same terms as filed a year earlier in West Suburban Volkswagen, A Chapter 11 pending before former Chief Bankruptcy Judge in Chicago of "K Mart Fame", Case No. 05 – 61043.  In this case the floor plan lenders complete $6,000,000 plus pre petition claim was paid in full and the franchise transferred to the New Buyer with only one bid.  Also this is the same procedure approved by the South Carolina U.S. Bankruptcy Court in sale of assets in Re: Ferneau Buick in Charleston, South Carolina, and Hixson Chevrolet before Judge John Flowers in Fort Worth, Texas where all creditors were paid in full.  In these cases, there was only one bidder as in this instant case.

46.)   This Court should remember and recall that at the time this Sale Motion was pending, this Bankruptcy Court had granted relief of Stay to Hyundai Motor Finance so that no stay protected the assets to be sold. On January 12, 2007, this Court granted Hyundai Relief from the Automatic Stay" to pursue its non-

bankruptcy remedies against the Debtor's new and used vehicles, parts inventory, equipment and fixtures." [Please note in this same Order, the Court found that there was little or no equity cushion to protect Hyundai.] Therefore, under this Sale Order, the only parties that had a stake in the Sale and in any "Bankruptcy Protections" were Hyundai and Kia. This Sale Order really affected no other creditors. Upon relief from stay on 1/12/07, Hyundai asked the Debtor If It would voluntarily surrender this collateral. The Debtor stated no, since it wanted to continue to protect its operations and its franchises until closing. The point here is that this was not the normal 363 sale. Here Hyundai had consented to the sale. The only objector was one Auto Auction with a "flimsy claim" that one dealer in Billings, Montana might be interested when in fact this Dealer had been contacted by the Broker over 9 times prior to the sale and had no interest. Here Kia of American, the Franchisor had agreed to the Sale subject to the Kia Home Office approval of the Buyer Rimrock Chrysler.

47.)   No other creditor or interested party claimed there was a higher bid out there other than Rimrock Chrysler. Also it was confirmed that Rimrock did have the funds and the ability to close this sale.

48.)   The sale of the franchise, $50,000 of good parts, certain Kia tools, signage and sales materials was proposed to net $465,000 without the purchase of any vehicles. Included in this sale to Rimrock Chrysler was the assumption of another $12,000 liability – the Court was correct to approve this sale. As this

Attorney stated to the Court "this is the only game in town" – there was no other bid.

49.) It is now unfair to penalize this Attorney for a sale in which this Attorney was instrumental and in which this Court and all Creditors had approved;

50.) This sale approved by this Court of this Kia Franchise should be applauded by the Court and U.S. Trustee since today numerous Kia Franchises in many markets more attractive than this one presently go begging – Kia Franchises can not even be given away.

51.) Closing of the Contract was a combination of the sincere efforts of the Broker, Jappy Dickson and his good work in spreading this sale all over the Country including a large Ad in Automotive News, extensive mailings by Nick Gutierrez's wife, Zaneece Gutierrez, to Automotive Dealers in 5 States and Nick Gutierrez's excellent negotiating skills and friendship with the Buyer. This Attorney will also take some credit because he sat in a couple of sessions with the Debtor and proposed Buyer and assured him that the Sale would go through without any hitches.  (This Court must realize lots of buyers and their Attorneys are fearful of coming into a Bankruptcy Court because of the long expensive delays in the Article I Court sales).

52.) The U.S. Trustee has alleged that this Chapter 11 Debtor was only successful in reducing Hyundai claim because of this Court's help – this is true as in any Chapter 11 – if the Court does not approve Cash Collateral, Sale of Assets or other requests by the Debtor, then no Chapter 11 will be "a success" – we acknowledge and do appreciate the Court's help here!

53.)   This Court must realize that the turndown of 110% of a Debtor Attorney's Fees and Expenses is unconscionable and also manifestly unfair.

54.)   This Court must also be mindful of cases which say such actions are prohibited under the Code since such an Order provides an unearned windfall to creditors and the Code wants to recognize Attorneys who specialize in Chapter 11s.

55.)   Even the U.S. Trustee didn't "go as far" as this Court. It recommended a cut of 1/3 to ½. This Order should be reconsidered based on equity and fairness.

56.)   This Order if allowed to stand will be interpreted as a warning to all out of State Debtor's Counsel – don't come to the Montana District.

57.)   This Court should give serious consideration to providing relief here based on these additional facts:

    (A.)   The Final Application for Fees was never objected to nor ever set for hearing;

    (B.)   The Order of disgorgement relates to a retainer and costs which source of funding was from "all personal funds"

    (C.)   Under 11 USC Section 541 of the U.S. Bankruptcy Code these moneys were "not estate funds" – not property of the estate and not funds in which the Chapter 7 Trustee would have any estate interest.

58.)   This Court should, if nothing else, schedule a re-hearing at some acceptable time table.

WHEREFORE the Debtor's Attorney William L. Needler and his Law Firm respectfully request that this Court:

    A.)   Modify, Amend, Vacate and Reconsider this Order of May 18, 2007, which:

        1.)   Denied all fees and expenses requested except for $18,040 in fees and $4,610.89 in expenses, covered by the Pre Petition Retainer; and

        2.)   Ordered the sum of #3,388.31 in moneys from a Pre Petition Third Party Retainer paid over to the Chapter 7 Trustee; and

        3.)   Denied the award of the balance of $92,541.96 in fees and expenses from the First Interim Application and the Final Application for Allowance of Fees and Expenses of this Attorney and his Law Firm, and

        4.)   Set and schedule a new hearing before this Court at a convenient time and date.

IN FURTHER SUPPORT this Attorney has attached Exhibits Group A, B, C, D, E, F and G. which are herein adopted as if set forth above.

ADDITIONALLY, this Debtor's Attorney will file a memorandum in Support hereof within the next 10 days.

May 29, 2007

                        /s/ William L. Needler
                        Debtor's Attorney

William L. Needler
William L. Needler and Associates
555 Skokie Blvd., Ste 500
Northbrook, IL 60062
(847) 559-8330 ph
(847) 559-8331 fax
Bar ID 02025248
E-Mail: WilliamLNeedler@aol.com
Attorneys for the Debtor
Incredible Auto Sales LLC

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

IN RE:                                )
Incredible Auto Sales L.L.C.          )        Case No.  06-60855-RBK
                                      )
              Debtor                  )        A Chapter 11 Proceeding
                                      )        for Reorganization
                                      )
                                      )        Judge Ralph B. Kirscher
                                      )

## COVER SHEET FOR FIRST INTERIM APPLICATION FOR ALLOWANCE OF PROFESSIONAL COMPENSATION AND FEES

**Name of Applicant:**              William L. Needler and Associates

**Authorized to Provide
Professional Services to**:         Incredible Auto Sales L.L.C.

### First Interim Application for
### Fees and Expenses Sought in Chapter 11

**Date of Order
Authorizing Chapter 11
Employment:**                       October 19, 2006

**Period for which**

902 Fee Cover Sheet                       - 1 -              902 Incredible Auto Sales LLC.
FL 3-8-07



**Compensation in
Chapter 11 is Sought:**          September 15, 2006 through February 18, 2007

**Amount of Chapter 11
Attorney's Fee Sought:**         $90,475.00

**Amount of Expense
Reimbursement Sought:**          $10,481.71

**Total Fees and
Expenses Sought:**               $100,956.71

**Less Retainer and Costs
Received:**                      -$26,039.00

**Total Listed in
Application:**                   $74,917.71

**AWARD REQUESTED
AT THIS TIME:**                  $74,917.71

**PAYOUT REQUESTED:**            $74,917.71

Dated:  March 8, 2007

_____/s/ William L. Needler_____
Attorney for the Debtor

William L. Needler
William L. Needler and Associates
555 Skokie Blvd., Ste 500
Northbrook, IL 60062
(847) 559-8330 ph
(847) 559-8331 fax
Bar ID 02025248
E-Mail: WilliamLNeedler@aol.com
Attorneys for the Debtor
Incredible Auto Sales LLC

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

IN RE:                                )
Incredible Auto Sales L.L.C.          )     Case No. 06-60855-RBK
                                      )
                          Debtor      )     A Chapter 11 Proceeding
                                      )     for Reorganization
                                      )
                                      )     Judge Ralph B. Kirscher
                                      )

## COVER SHEET FOR FINAL APPLICATION FOR
## PROFESSIONAL COMPENSATION

**Name of Applicant:**        William L. Needler and Associates

**Authorized to Provide
Professional Services to:**      Incredible Auto Sales L.L.C.

### Final Application for
### Fees and Expenses Sought in Chapter 11

**Date of Order
Authorizing Chapter 11
Employment:**            October 19, 2006

**Period for which
Compensation in
Chapter 11 is Sought:**      February 28, 2007 through April 10, 2007

Amount of Chapter 11
Attorney's Fee Sought:
in this period                      $13,750.00

Amount of Expense
Reimbursement Sought:          $    486.14

Total Fees and
Expenses Sought:                 $14,236.14

Less Retainer
Received:                         -$00          (Detail on First Interim Application)

Total Fees and Expenses on
First Fee Application:            $74,917.71

Total Listed in
Application:                      $89,153.85


AWARD REQUESTED
AT THIS TIME:                     $89,153.85

PAYOUT REQUESTED:            $89,153.85   (Gross Amount requested after
                                          Deduction for Retainer and Costs
                                          received.)

Dated:  May 13, 2007


                        _____/s/ William L. Needler_____
                             Attorney for the Debtor

## EXHIBIT B

### INCREDIBLE AUTO SALES L.L.C.

### Recap of Attorney Fees and Expenses Requested

|  | CHARGES | | TOTAL | | | |
|  | FEES | EXPENSES | | | APPROVED | PAYMENTS |
|---|---|---|---|---|---|---|
| Third Party Retainer Paid | | | | | | $ 26,039.00 |
| 1st Application | $ 90,475.00 | $ 10,481.71 | $ | 100,956.71 | | |
| Final Application | $ 13,750.00 | $ | 486.14 | $ 14,236.14 | | |
| TOTALS | $ 104,225.00 | $ | 10,967.85 | $ 115,192.85 | | |

INCREDIBLE AUTO SALES LLC
Chapter 11 06-60855-RBK

**EXHIBIT 1**
Analysis of Assets
Under Liens to
Hyundai Motor Finance
Securing Claim of
$2,163,000 on Filing

1

| | | |
|---|---|---|
| New Vehicles | | $ 467,100.00 |
| (See List A) | | |
| | | |
| Used Vehicles | $ 1,490,691.00 | |
| (See List B) | $ (65,125.00) | |
| Less lien payoffs of $65,125.00 | $ 1,425,566.00 | $ 1,425,566.00 |
| | | |
| Parts and Supplies | | $ 153,510.00 |
| | | |
| Machinery and Fixtures | | $ 42,352.00 |
| | | |
| Signage and Lease Hold Improvements | | $ 25,000.00 |
| | | |
| Receivables | | |
| Vehicles Receivables | $ 10,280.00 | |
| Parts, Service & Body Shop | $ 100,621.06 | |
| Hold Backs | $ 33,300.00 | |
| Incentives | $ 13,599.00 | |
| Warranty Receivables | $ 5,892.36 | |
| | $ 163,692.42 | $ 163,692.42 |
| | | $ 502,400.00 |
| Misc Law Suit Receivable: | | |
| 80% x 628.00 | | |
| Nick Gutierrez, Incredible Auto | | |
| Sales LLC vs United Car Care | | |
| Case No 0-v-05-0575 | | |
| State of Montana | | |
| | | |
| Total of Valued Assets in | | $ 2,779,620.42 |
| Support of Hyundai Motor | | |
| Finance Claim | | |



EXHIBIT
C

HYUNDAI MOTOR FINANCE
ESTIMATED BALANCE DUE

| TRANSACTION | PAYMENTS | BALANCE DUE |
|---|---|---|
| HMFC Flooring | | $2,275,375.82 |
| Court ordered payment 12-31-2006 | $99,000.00 | $2,176,375.82 |
| Court ordered payment 2-02-2007 | $276,686.08 | $1,899,689.74 |
| Rimrock franchise sale 3-27-2007 | $421,211.57 | $1,478,478.17 |
| New Vehicle Sales (19)- Rimrock 3-28-2007 | $371,527.00 | $1,106,951.17 |
| New Vehicle Sales (2)- IAS 3-27-2007 | $34,000.00 | $1,072,951.17 |
| Used Vehicle Wholesale sales (8) - Rimrock | $81,278.00 | $991,673.17 |
| Used Vehicle Wholesale sales (5)- Tonkin | $37,200.00 | $954,473.17 |
| Used Vehicle Wholesale sales (21)- Portland RV | $174,600.00 | $779,873.17 |
| Used Vehicle Wholesale sales (24)- Kalispell | $204,650.00 | $575,223.17 |
| Used Vehicle Wholesale sales (4)- IAS | $29,260.00 | $545,963.17 |
| Used Vehicles sent to Colorado auction (22) (est.) * | $220,000.00 | $325,963.17 |
| Payment to HMFC 3-07-2007 | $75,000.00 | $250,963.17 |
| Payment to HMFC 3-31-2007 (IC Optima) | $11,395.00 | $239,568.17 |
| Stockman Bank  Trust Accounts 5-23-2007 * | $12,538.05 | $227,030.12 |
| South Seattle Auto Auction (split) | $27,200.00 | $199,830.12 |
| Shop Equipment and Furniture (est.) * | $56,880.00 | $142,950.12 |
| Remaining KIA parts inventory (est.) * | $76,000.00 | $66,950.12 |
| Other parts (est.) * | $4,750.00 | $62,200.12 |
| Auto Auction of Montana judgment | $50,000.00 | $12,200.12 |
| Proceeds from GMAC -  2000 Chev 211272 ** | $5,113.00 | $7,087.12 |
| Pre-petition refund from MT State Fund - Worker's Comp ** | $10,718.50 | ($3,631.38) |

| OTHER POTENTIAL ASSETS | | |
|---|---|---|
| United Car Care 80% less loan | $387,200.00 | |
| Outstanding dealer reserves | $24,509.13 | |
| Receivables: Warranties, reserves, customers | $8,200.00 | |

| TOTAL | $419,909.13 | |

\* unpaid to HMFC as of this date. Proceeds expected.
\*\* to be deposited in appropriate DIP trust accounts

May 24, 2007



EXHIBIT

William L. Needler
William L. Needler and Associates
555 Skokie Blvd Ste 500
Northbrook, IL 60062
(847) 559-8330 ph
(847) 559-8331 fax
Bar ID 02025248
E-Mail: WilliamLNeedler@aol.com

Attorneys for the Debtor
        Incredible Auto Sales LLC

Clarke B. Rice
Clarke B. Rice P.C.
2951 King Avenue West
Billings, Montana 59102
(406) 254-2500 ofc phone
(406) 294-2525 fax
Montana ID # 1289
E-Mail: Clarkerice@imt.net

Co-Counsel for the Debtor
        Incredible Auto Sales LLC

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA**

| | |
|---|---|
| **IN RE:** | |
| INCREDIBLE AUTO SALES L.L.C. | Case No. 06-60855-RBK |
| Debtor | Judge Ralph B Kirscher |
| | A Chapter 11 Proceedings For Reorganization |

## DEBTOR'S EMERGENCY MOTION

## TO ENTER ORDER

## APPROVING CASH COLLATERAL STIPULATION



EXHIBIT
E

NOW COMES the Debtor, Incredible Auto Sales LLC (hereinafter "Incredible") by and through its Attorneys and requests that:

A.) The Cash Collateral Order as attached approving the Stipulation as to Use of Cash Collateral under 11 USC Section 363 and Offer Adequate Protection under 11 USC Section 361 be entered as of today on an expedited basis; and/or in the alternative, that;

B.) The Separate Order as to the payment of the Debtor's Payroll due today for the Employees of Incredible be entered today on an expedited basis.

IN SUPPORT hereof, the Debtor Incredible states as follows:

1.) This Chapter 11 for the protection of creditors was filed 31 days ago today.

2.) Since that time, hearings have been held based on the Debtor's Emergency Motion to Use Cash Collateral and Offer of Adequate Protection.

3.) At these hearings consents to the entry of a Cash Collateral Order based on these hearings and the Debtor's proposal to Use Cash Collateral were solicited.

4.) At the end of these hearings, after consents were obtained, given and placed specifically on the record, by all before the Court, the Debtor was instructed to draft a Stipulation and Order, which it completed and circulated early on November 8, 2006 to all interested parties.

5.) It was not until Friday, November 10, 2006 that Hyundai rejected the Stipulation and submitted a Hyundai version of that Stipulation.

6.) This Hyundai Stipulation was such a radical departure from anything agreed to in the hearings that Incredible's Bankruptcy Attorney had to drop everything and at extra cost to this estate return to Billings, Montana for the hearing date of November 14, 2006.

7.)   At Judge Kirscher's instructions at this hearing on November 14, 2006, the Debtor ordered the disk from the prior weeks hearings from the Court and had them rushed to Billings, Montana.

8.)   Again after reviewing the hearing on the disk, the Debtor's Attorneys submitted a revised draft of the Stipulation on 11/15/06.

9.)   In the revised Stipulation, the Debtor included various requests by Hyundai not on the disk and included in its prior draft.

10.)  As of last night, November 16, 2006, the Revised Stipulation Exhibit A, hereto was also rejected by Hyundai by adding other and new extraneous provisions harming the basic Debtor operation of the Cash Collateral to Hyundai's benefit.

11.)  The Stipulation as attached Exhibit A hereto is not signed by Hyundai but has been signed off by all Attorney Representatives for the Auto Auctions and the Debtor.

12.)  The Debtor requests that the Court execute the Order attached approving the Stipulation so that the Debtor may get on with its business.

13.)  The Debtor does not believe that any of the interested parties hereto realize how critical the entry of this Order is to the Debtor's future.

14.)  Hyundai does understand that continued delay here will doom the Debtor. The Debtor cannot let this happen.

15.)  As a last resort, the Debtor has included an alternative Order here, for this Court to sign relating to the Payroll only.

16.)  This is only an alternative – the main Order should be signed today.

17.)  The Debtor's payroll is due.  It is $40,000 – the last payroll of $40,000 approved by the Court last week was only used to the extent of only $28,000.

18.)   The Employees cannot be delayed again as they were last time.

19.)   Relief from this Court here is critical.

WHEREFORE, for the reasons stated, the Debtor requests:

A.)   The Cash Collateral Order as attached approving the Stipulation as to Use of Cash Collateral under 11 USC Section 363 and Offer Adequate Protection under 11 USC Section 361 be entered as of today on an expedited basis; and/or in the alternative, that;

B.)   The Separate Order as to the payment of the Debtor's Payroll due today for the Employees of Incredible be entered today on an expedited basis.

November 17, 2006

/s/ William L. Needler

Incredible Auto Sales L.L.C.

William L. Needler
William L. Needler and Associates
555 Skokie Blvd. Suite 500
Northbrook, IL 60062
(847) 559-8330 ph
(847) 559-8331 fax
Bar ID 02025248
Email: WilliamLNeedler@aol.com

Attorney for the Debtor
        Incredible Auto Sales, LLC

Clarke B. Rice
Clarke B. Rice, P.C.
2951 King Avenue West
Billings, Montana 59102
(406) 254-2500 office
(406) 294-2525 fax
Montana ID #1289
Email: clarkerice@imt.net

Co-Counsel for the Debtor
        Incredible Auto Sales, L.L.C.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| **IN RE:** | ) |
| | ) |
| INCREDIBLE AUTO SALES, L.L.C. | ) Case No.: 06-60855-RBK |
| | ) |
| | ) Judge Ralph B. Kirscher |
| | ) |
| Debtor | ) A Chapter 11 Proceedings |
| | ) For Reorganization |
| | ) |
| | ) |

## STIPULATION AS TO THE USE OF COLLATERAL UNDER 11 U.S.C. SECTION 363 AND ADEQUATE PROTECTION UNDER 11 U.S.C. SECTION 361 OF THE BANKRUPTCY CODE (Revised 11/15/06)

The parties to this matter and the hearings as to use of cash collateral before this Court in hearings on November 6 and November 7, 2006 were as follows:

1.    The Debtor, Incredible Auto Sales, L.L.C.

2.    Hyundai Motor Finance Company

3.    Auto Auction Associates of Montana, Inc. d/b/a Auto Auction of Montana

4.    Manheim Services Corporation d/b/a South Seattle Auto Auction.

5.    Steve's Auto Sales, Inc.

These parties having appeared in Court and each party have appeared and consulted to the terms specifically, and the Court having approved the use of cash collateral on the following terms:

1.    That the Debtor shall be granted authority to use cash collateral in substantial conformance with budgeted expenses for the months of November and December 2006 as set forth in the Proforma and Budget, Debtor's Exhibit 4, page 7 attached.  These are specifically $166,194 for November and $170,493 for December 2006.

2.    That the Cash Collateral Stipulation and Order as revised shall have an expiration or duration for a period of 45 days from this date November 6, 2007 to

December 21, 2006 unless specifically continued either by agreement of the parties or by further Court order.

3.   That since the Debtor's Proforma and Budget did not have any budgeted items for the 14 days in the month of October 2006 and this Chapter 11 case was filed on October 17, 2006 the Debtor may budget for November 2006 and December 2006 for the time period October 17, 2006 to December 21, 2006 in such amounts as are in substantial conformance with the Proformas.

4.   That unless consent is granted by the parties and/or a future order of the Court is issued the use of cash collateral will automatically cease on December 21, 2006, unless renewed at that time, if no consent is reached, the Debtor may re-notice a request for an additional Emergency Hearing on an expedited basis.

5.   That the deposit of funds in the established trust accounts A, B, C, D and E shall continue as described previously in the hearings, the exhibits and the pleadings filed with the Court.

6.   That Debtor's profit as shall be transferred from Trust Accounts A, B, C, or back to Debtor-in-Possession Account –two times per week.  Factory receivables shall reimburse Account A or Account C when received.  Profit shall be defined as the difference between the total sales proceeds (cash, loan and/or trade-in) received for each vehicle transaction less the particular October 17, 2006 inventory valuation

and any additional cost associated with the sale of the vehicle. Moneys received by the Debtor from Dealer incentives, co-ops and other receivables shall be deposited in the D.I.P. Account.

7.    That Hyundai Motor Finance (hereinafter "Hyundai") shall be paid as soon as this Stipulation is executed and approved by the Court the sum of $99,000.00 to apply to the claims of $2,163,000.00 thus reducing its claim to $2,064,000.00 from the following sources:

A.    The monies held by KIA Motors America for receivables up to September 30, 2006 which are alleged to be $49,000.00 shall be paid to Hyundai. (If these pre-petition receivables prove to be in excess of this amount, for this period up to September 30, 2006, any excess shall also be paid to Hyundai. Receivables due after September 30, 2006 shall be collected by the Debtor and deposited into the Debtor-in-Possession Account ;)

B.    Funds held by Hyundai as of the filing date from the Debtor's pre-petition consumer funding (Martens) in the amount of $23,551.00 shall be applied to the debt by Hyundai, as part of this $99,000 amount.

C.   After the removal of the Debtor's profit from Trust Account A on November 5, 2006 estimated at $10,000.00, the remainder sum shall be paid over and transferred to the Debtor-in-Possession Account and the balance treated as follows:

1)   $23,000.00 to pay off additional lien on Martens transaction and

2)   the remainder of Trust Account A at estimated at $62,000.00 less $10,000.00 as stated above and $23,000.00 in paragraph (1) above will be paid to Hyundai, or $27,000.00 for a total of $99,000.00.

8.   Additionally as ordered by the Court, the approximate estimated amount of $10,000.00 profit in Trust Account B shall be removed and transferred to the Debtor-in-Possession Account to fund the previously approved November 5, 2006 payroll estimated at $35,000.00 and the insurance estimated at $6,000.00. These payroll reimbursement amounts shall be included in the November 2006 and December 2006 budgeted amounts and are not in addition to the budgeted amounts.

9.   After the above transactions are completed, Trust Account A and Trust Account B shall continue to be operated to purchase replacement inventory as previously described in the Hearings, the Exhibits and Pleadings filed with the Court.

13.     Transfer of Title, certificates of title and MSOs for all vehicle Inventory, including Trade-ins, Replacements, shall be delivered to and held in trust by Debtor's Local Counsel, Clarke B. Rice ("Local Counsel").  Debtor shall provide Hyundai with such information regarding each proposed sale of vehicle Inventory, Trade-ins and Replacements as may require, including, without limitation, a completed deal sheet in form filed with the Court and Hyundai and evidence that the purchase price has been actually received and has been deposited in good funds in the Trust Account designed for receipt of such proceeds as set forth in the Procedure sheet as attached.  Such information shall be transmitted by facsimile or electronic mail to Mr. Dale Ueno at (714) 965-7012 or dueno@hmausa.com4 or, in his absence, Mr. Caleb Cottam at (714) 965-3374 or ccottam@hmausa.com.  Alternatively, such documents may be hand-delivered to Mr. Ueno or Mr. Cottam.  Local Counsel is authorized to release titles or MSOs in connection wit proposed sales only upon Hyundai's written approval thereof which Hyundai shall use its best efforts to transmit to the Manager by facsimile or electronic mail within four (4) business hours of receipt of Debtor's request.

14.     Debtor shall provide Hyundai each of the following items of information and reports during the pendency of this Case.

    A.    When Hyundai deems it necessary, in its sole discretion and without prior notice, Debtor shall provide access to Debtor's places of business in billings, Montana, at any time during

10.    Post-Petition Security Interest, Hyundai has and shall continue to have a security interest in all inventory, equipment, fixtures, accounts and general intangibles and the proceeds thereof, acquired by Debtor during the pendency of this Case, including, without limitation, all Inventory, all Replacements, all Trade-ins, the Dealer Agreement, the proceeds of sale of Debtor's interest in the Franchise, and Trust Accounts A, B, C and D, which security interest shall be effective from and after the date of Bankruptcy.  The security interest granted herein shall be identical to and shall enjoy the same priority as that security interest granted to Hyundai under the terms of the Loan Agreement and shall be evidenced by this Order and the Loan Agreement; provided, that the Debtor shall execute and Hyundai may file such motions, notices, additional security agreements, control agreements and financing statements as Hyundai deems necessary to fully comply with 11 U.S.C. section 552(b) and Mont. Code Ann. Section 30-9-11, *et seq.,* during the pendency of this Case.

11.    Additionally, the Profits as previously defined in paragraph (6) above shall continue to be transferred and deposited as previously outlined.

12.    All Trust Accounts shall have the signatories only of Kenneth C. Cornelison and Zsaneece Gutierrez who shall also sign all Debtor-in-Possession checks for the Debtor-in-Possession approved expenses.

normal business hours during the pendency of this Case, (i) for physical inventories of Hyundai's collateral, and (ii) for review of all "deal jackets", sources, amounts of funding and other information as permitted by the Loan Agreement.  Nothing herein shall obligate Hyundai to conduct any inspection and/or audit of such inventory and/or documents.

B.  Debtor shall provide Hyundai daily by electronic mail with records of its sales, bank deposits slips and cash payments and with such additional records as may be reasonably requested by Hyundai in writing, or orally, whether in person or by telephone.

C.  Debtor shall provide Hyundai, during the pendency of this Case, with copies of all financial reports and/or statements required to be filed with the Court or served on any creditor, including but not limited to, all income and expense or profit and loss statements, all balance sheets, updated monthly inventories, all listings of account receivable and/or accounts payable as listed on page (1) of the Debtor's Financial Statement, including, without limitation, any prior liens and amounts owed on sold vehicles or Trade-ins, and all statements relating to employee

compensation and/or payroll, taxes paid or held as listed on
page (2) of the Debtor's Financial Statement.

D.    Debtor shall promptly upon receipt provide to Hyundai copies of
all bonafide offers to purchase the Debtor or Debtor's assets
outside the ordinary course of business.

E.    Hyundai shall have the right to inspect, as it deems necessary
and upon reasonable notice to Debtor and with the capability of
the Debtor's personnel, all of Debtor's accounting records to
verify the accuracy of Debtor's accounting information and
practices, and not to harass or confound Debtor.

F.    Debtor shall immediately provide to Hyundai information on all
per petition and post petition and unpaid liens on Trade-ins, as
of November 6 and November 7, 2006 including the names of
the buyers and lien holders and the amounts of the unpaid
liens.

15.    Ken C. Cornelison ("Manager") shall serve as general manager of the
Debtor.  Manager and Zsaneece L. Gutierrez shall be the only persons authorized
to sign checks on behalf of the Debtor during the pendency of this Case.  R. Nick
Gutierrez shall not participate in the management of the Debtor during the

pendency of this Case except with regard to assessment of offers to purchase the Debtor or its assets outside the ordinary course of business. This includes the right to accept or reject such purchase offers. This provision shall not prevent the continued payment of Nick Gutierrez's salary and/or benefits.

16.     Additionally, Hyundai shall have reasonable access to the deal jackets and to be able to do flooring checks on a reasonable basis.

17 .     Every month approximately on the 15th day, a printed recap of the monthly expenses for that previous period shall also be forwarded to Hyundai and to the auction creditors.

18.     The auction cars which are on List B (some 24 vehicles) shall continue to be held segregated and not sold, transferred or further encumbered as provided for in the prior stipulations subject to a separate agreement of the parties hereto or sale as ordered by the Court in the appropriate adversary proceeding. The replacement lien or additional rights granted to Hyundai under this stipulation or any cash collateral order shall not apply to the auction cars.

19.     The Court shall set a hearing date for cash collateral status or continued hearing for a December date closely before December 21, 2006 so that approved cash payments are not unduly interrupted.

APPROVED by the parties this __ day of November, 2006.

WILLIAM L. NEEDLER and ASSOCIATES

By:   /s/ William L. Needler
      WILLIAM L. NEEDLER
      Attorney for Debtor

HOLLAND & HART, LLP

By:   _____
      SHANE COLEMAN

      Attorney for Hyundai Motor
      Finance Company

CLARKE B. RICE, P.C.

By:   /s/ Clarke B. Rice
      CLARKE B. RICE
      Co-Counsel for Debtor
      (406) 254-2500 phone
      (406) 294-2524 fax

MURPHY, KIRKPATRICK & FAIN, P.L.L.P.

By:   /s/ Bruce F. Faim
      BRUCE F. FAIN
      Attorney for Auto Auction Associates
      Sales, of Montana, Inc
      (406) 256-9700 phone
      (406) 256-9755 fax

PATTEN, PETERMAN,
BEKKEDAHL & GREEN, P.L.L.P

By:   /s/ James A. Patten
      JAMES A. PATTEN
      Attorney for Steve's Auto Inc.
      (406) 252-8500 phone
      (406) 294-9500 fax

LOVELL LAW FIRM, P.C.

By:   /s/ Christopher P. Birkle
      CHRISTOPHER P. BIRKLE
      ▮▮▮▮▮▮▯▮ ▮▮▮ ▮▮▮▮▮▮▮▮ ▮ ▮▮▮▮▮▮ ▮ ▮▮▮▮▮▮▮▮
      d/b/a South Seattle Auto Auction
      (406) 256-9300 phone
      (406) 256-9301 fax

William L. Needler
William L. Needler and Associates
555 Skokie Blvd Ste 500
Northbrook, IL 60062
(847) 559-8330 ph
(847) 559-8331 fax
Bar ID 02025248
E-Mail: WilliamLNeedler@aol.com

Attorneys for the Debtor
        Incredible Auto Sales LLC

Clarke B. Rice
Clarke B. Rice P.C.
2951 King Avenue West
Billings, Montana 59102
(406) 254-2500 ofc phone
(406) 294-2525 fax
Montana ID # 1289
E-Mail: Carkerice@imt.net

Co-Counsel for the Debtor
        Incredible Auto Sales LLC

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| IN RE: | |
| INCREDIBLE AUTO SALES L.L.C. | Case No. 06-60885-RBK |
| Debtor | Judge Ralph B Kirscher |
| | A Chapter 11 Proceeding For Reorganization |

## DEBTOR'S RESPONSE, RESISTANCE AND OBJECTION TO MOTION OF HMFC AS THE DEBTOR'S USE OF CASH COLLATERAL AND OTHER RELIEF

NOW COMES Incredible Auto Sales LLC (the Debtor) and Responds, Resists

and Objects to the Motion filed by Hyundai Motor Finance Company (hereinafter

Hyundai) on November 13, 2006 and respectfully requests this Court pursuant to Notice

EXHIBIT
F
tabbies®

to set a hearing date on this matter for the next scheduled hearing date which is 12/5/06 at 9:00 A.M. in Billings, Montana.

IN SUPPORT of this Response, Resistance and Objection, the Debtor, Incredible Auto Sales L.L.C. states as follows:

1.) The Debtor, an Automotive Retailer located in Billings, Montana, did file Chapter 11 on October 17, 2006.

2.) Subsequently, thereto, hearings have been held as to the Debtor's Emergency Requests to Use Cash Collateral and specifically for the permission to pay post petition payroll.

3.) Two Orders have been entered thus far as to the payment of these two payrolls.

4.) Even though at the hearings before this Court all of the Debtor's Exhibits were admitted with the exception of a few pages without objection. The Trial Exhibits, which among other things showed the values of the collateral held as security for Hyundai Motor Finance, all the values of new vehicles, all the values of used vehicles of the Debtor, all receivables, parts, machinery and fixtures, and its Kia Motor Franchise and before hearing ended Hyundai Motor Credit unqualifiedly approved the Debtor's Use of Collateral.

5.) Now Hyundai Motor Finance through an Attorney who did not attend the hearing, who to the Debtor's knowledge did not even order the transcript of proceeds, has continually objected to further Use of Collateral.

6.) Additionally, this Non-Attending Attorney has charged the Debtor with "unwillingness to negotiate in good faith". <u>Nothing could be further from the truth.</u>

7.) This charge has prompted the Debtor's Attorney to call the Non-Attending Attorney and requested pursuant to the "safe harbor" provisions of Rule 9011 to withdraw these false charges.

8.) This Debtor and his principals have spent literally hours since filing talking to the Non-Attending Attorney with little or no results.

9.) The bad faith of Hyundai should be evident to this Court.

10.) The simple proposition is that Hyundai has consented along with the various Auto Auctions to the proposed Cash Collateral proposed usage by the Debtor – with budgets attached and discussed with the Court.

11.) After this Court's last hearing on Tuesday, November 14, 2006 at which Debtor's Counsel was required to travel all the way to Billings, Montana to protect the Debtor's Interests, Hyundai still refused to sign the Cash Collateral Stipulation.

12.) At this Court's direction the Debtor's Attorneys William L. Needler and Local Counsel Attorney Clarke B. Rice at extreme expense have read and carefully reviewed the Disk of the hearing held and decided with consent.

13.) All Attorneys except Hyundai have signed the Stipulation Cash collateral Order.

14.) Hyundai is guilty of false charges, bad faith and intentional efforts to "weasel out" of legitimate findings and consents by this Court.

15.) The Debtor, Incredible Auto Sales L.L.C. should be reimbursed for this intentional affront to this Court and should pay damages for these intentional continuing falsehoods.

16.) Bankruptcy Rule 9011 provides for penalties for foisting such falsehoods on the Court.

WHEREFORE the Debtor, Incredible Auto Sales Responds, Resists and Objects to the false motion filed by Hyundai Motor Finance.

Additionally, this Debtor requests this Court pursuant to Bankruptcy Rule 9011 provide for a hearing on sanction and a hearing on this Motion at the next hearing date.

The Debtor's Attorney has attached a Sworn Declaration hereto in further support hereof.

November 23, 2006

/s/ William L. Needler

Debtor Incredible Auto Sales L.L.C

William L. Needler
William L. Needler and Associates
555 Skokie Blvd Ste 500
Northbrook, IL 60062
(847) 559-8330 ph
(847) 559-8331 fax
Bar ID 02025248
E-Mail: WilliamLNeedler@aol.com

Attorneys for the Debtor
    Incredible Auto Sales LLC

Clarke B. Rice
Clarke B. Rice P.C.
2951 King Avenue West
Billings, Montana 59102
(406) 254-2500 ofc phone
(406) 294-2525 fax
Montana ID # 1289
E-Mail: Carkerice@imt.net

Co-Counsel for the Debtor
    Incredible Auto Sales LLC

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA**

| | |
|---|---|
| **IN RE:** | |
| INCREDIBLE AUTO SALES L.L.C. | Case No. 06-60885-RBK |
| Debtor | Judge Ralph B Kirscher |
| | A Chapter 11 Proceeding For Reorganization |

County of Union   )
               ) SS
State of New Jersey)

**SWORN DECLARATION OF ATTORNEY IN SUPPORT OF
DEBTOR'S RESPONSE, RESISTANCE AND OBJECTION
AND REQUEST FOR SANCTIONS**

William L. Needler subject to charge of perjury, under oath declares as follows:

1.)     The Declarant is the Attorney for this Debtor and familiar with the facts herein.

2.)     Declarant on the 14th and/or 15th of November 2006, while he was in the Billings, Montana offices of Clarke B. Rice, who was present, called Attorney Chuck Hingle and left a message on his phone that the charges in Hyundai's Instant Motion were false and that this Motion should be withdrawn.

3.)     Declarant stated to Mr. Hingle's voice mail that the charges in his Motion that the Debtor was guilty of bad faith and failure to cooperate were false and should be withdrawn – Declarant stated this to be a "safe harbor" warning under Bankruptcy Rule 9011.

4.)     Declarant has never heard from Mr. Hingle since then.

5.)     The statements in this Response, Resistance and Objection and in this Sworn Declaration are true and correct to the best of Declarant's opinion and knowledge and he would so state under oath before this Court.

November 23, 2006

/s/ William L. Needler

Declarant

William L. Needler
William L. Needler and Associates
555 Skokie Blvd Ste 500
Northbrook, IL 60062
(847) 559-8330 ph
(847) 559-8331 fax
Bar ID 02025248
E-Mail: WilliamLNeedler@aol.com

Attorneys for the Debtor
    Incredible Auto Sales LLC

Clarke B. Rice
Clarke B. Rice P.C.
2951 King Avenue West
Billings, Montana 59102
(406) 254-2500 ofc phone
(406) 294-2525 fax
Montana ID # 1289
E-Mail: Clarkerice@imt.net

Co-Counsel for the Debtor
    Incredible Auto Sales LLC

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| IN RE: | |
| INCREDIBLE AUTO SALES L.L.C. | Case No. 06-60855-RBK |
| Debtor | Judge Ralph B Kirscher |
| | A Chapter 11 Proceedings For Reorganization |

**DEBTOR'S ADDITIONAL MOTION TO BE EXTENDED TO REQUEST THAT THE STIPULATION AS TO USE OF CASH COLLATERAL PREVIOUSLY FILED WITH THE COURT BE APPROVED AND CASH USAGE INCLUDE BUDGETED EXPENDITURES THROUGH FEBRUARY 28, 2006.**

NOW COMES the Debtor, Incredible Auto Sales LLC as listed above and

respectfully requests this Court to issue two Orders as follows:

EXHIBIT

tabbies®

G

A.)     Order approving Cash Collateral Usage by the Debtor pursuant to the Stipulation as previously filed with this Court, and

B.)     Order that Cash Collateral Usage be extended to include the Budgeted Expenditures through February 28, 2007; and

C.)     Such other and further relief as is ordinary and necessary to implement the above.

IN SUPPORT hereto, the Debtor Incredible auto Sales L.L.C. States as follows:

1.)     This Debtor, a new and used car dealer which owns a Kia Franchise located at 1832 King Avenue, Billings, Montana filed a Chapter 11 on 10/17/06.

2.)     Shortly after filing, an Emergency Motion to Use Cash Collateral was filed with the Court and Noticed to All Creditors and Interested Parties.

3.)     Hyundai Motor Finance, the Pre petition Floor Plan Lender to this Debtor (hereinafter Hyundai) holds a first lien claim on all the assets of this Debtor.

4.)     These assets are fully detailed on Debtor's Exhibit 3, attached hereto [This Exhibit was previously filed with the Court and admitted without objection in this Court's initial hearing on this Motion.]

5.)     This Exhibit 3, shows the claim of Hyundai at $2,163,000. This claim amount was also used in the hearing and again without any objection by Hyundai. [At this juncture, apparently Hyundai claims this amount to be $100,000 higher – obviously Hyundai can submit their higher figure in their Proof of Claim and the Stipulation to Use Collateral will not prevent this.]]

6.)     The assets securing this Hyundai claim exceed the Hyundai claim by over $1,000,000.

7.)     This large excess of collateral held by Hyundai gives Hyundai an equity cushion in excess of 60%.

8.)     By all Court decisions in this Country, a 60% cushion is more than adequate to protection to Use Cash Collateral.

9.)     These Cash Collateral matters with Exhibits together with the Hyundai objections and those of the Auto Auction Parties present were all heard in Billings, Montana by this Court on November 6, 2006 and November 7, 2006.

10.)    As a result of these hearings the Court entered the following docket entry.

11/07/2006          Minutes of Hearing Held ON 11/06 AND 11/07/06; WILLIAM L
                    NEEDLER AND CLARKE B RICE, ATTORNEY FOR INCREDIBLE
                    AUTO SALES LLC, BRUCE F. FAIN, ATTORNEY FOR AUTO
                    AUCTION ASSOCIATES OF MONTANA, INC, SHANE COLEMAN,
                    ATTORNEY FOR HYUNDAI MOTOR FINANCE CO, JAMES A.
                    PATTEN, ATTORNEY FOR STEVE'S AUTO SALES INC, SHANE P.
                    COLEMAN, ATTORNEY FOR HYUNDAI MOTOR FINANCE CO
                    AND CHRISTOPHER P BIRKLE, ATTORNEY FOR MANHEIM
                    SERVICES CORPORATION. WITNESSES: WILLIAM O'CONNOR,
                    NICK GUTIERREZ, DALE UENO. 1) MOTION FOR USE OF CASH
                    COLLATERAL IS AGREED TO BY THE PARTIES AND MONIES
                    TO BE DISBURSED FOR PAYROLL AND INSURANCE
                    EFFECTIVE TODAY; 2) AS TO THE BALANCE, NEEDS TO BE
                    SUBMITTED IN WRITING AND FILED WITH PROPOSED ORDER
                    BY MONDAY, NOVEMBER 13, 2006; 3) REGARDING CARS IN
                    ADVERSARY, AUCTION PARTIES AND DIP TO MEET AND FILE
                    A REPORT TO THE COURT BY NOVEMBER 14, 2006. (Myers,
                    Lynn) (Entered: 11/07/2006)

11.)    Even though Hyundai had through its Attorney Shane Coleman and its representative Dale Ueno consented to this Cash collateral Usage as set

forth above, Hyundai's Attorneys have still steadfastly refused to sign the Stipulation. (See Exhibit 1 attached hereto.)

12.)   All parties except for Hyundai have signed off.

13.)   To date, this Court has refused to enter an Order approving a Use of Collateral except for two payrolls and an expenditure for insurance.

14.)   It is now 47 days since the Debtor filed Chapter 11 and although moneys have been paid over to Hyundai to reduce its pre petition claim, daily reports have been filed with Hyundai and the management of the Debtor has been changed – Hyundai refuses to sign the Stipulation.

15.)   Worse than this the Court has not issued any Orders implementing the consents given on 11/07/06 docket entry to allow the Debtor to operate on a normal basis.

16.)   The Debtor filed Exhibits contemporaneously with this Court showing Cash in Bank of over $267,000.00; (See New Exhibit 12, filed 12/3/06), and Profit and Loss Statement for October 17 to November 30th showing a negative $17,200; ( See Exhibit 10 filed 12/3/06.)

17.)   Such a loss in the Chapter 11 is diminimous considering that no moneys were made available by this Court for Advertising and that employee payrolls have been approved a couple of days late each time and now the Monday payroll will itself also be late.

18.)   These actions tie the hands of the Debtor and its employees unfairly and can lead to such losses that the sale of the franchise could be made impossible.

19.) The current revised budgetary needs of the Debtor are attached as Debtor's Exhibit 11. This is revised for November to $48,576 and includes December for $154,116 and expenses for January and February also.

20.) It is extremely costly to the Debtor to be required to continually return to Court on a matter which was previously consented to.

21.) It should be obvious to this Court, that the immediate issuance of Order as to the revised Use of Collateral for November, December and January and February would be in the best interests of the Debtor, all the Creditors and also Hyundai Financial.

22.) Further delay just costs money.

WHEREFORE, the Debtor requests this Court to issue two Orders as follows:

A.) Order approving Cash Collateral Usage by the Debtor pursuant to the Stipulation as previously filed with this Court, and

B.) Order that Cash Collateral Usage be extended to include the Budgeted Expenditures through February 28, 2007; and

C.) Such other and further relief as is ordinary and necessary to implement the above.

December 3, 2006

/s/ William L. Needler
William L. Needler
Attorneys for the Debtor
Incredible Auto Sales LLC